## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **COMMERCIAL COIN LAUNDRY SYSTEMS., an Illinois general partnership,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **FILED: MARCH 31, 2008** |
| **v.** | ) ) | No. 08CV1853         TG |
| | ) | JUDGE DOW |
| **PARK P, LLC, an Indiana limited liability Company, d/b/a Park P Place Apartments,** | ) ) ) | MAGISTRATE JUDGE DENLOW |
| **Defendant.** | ) | |

### NOTICE OF REMOVAL OF
### ACTION UNDER 28 U.S.C. § 1332(a)
### (DIVERSITY JURISDICTION)

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant Park P, LLC by its undersigned counsel, is

filing this Notice of Removal of this cause from the Cook County Circuit Court, Case No. 2008

L 002126, where it is now pending, to the United States District Court for the Northern District

of Illinois, and for grounds in support hereof, state as follows:

1.     Defendant in the referenced civil action, which was filed on or about February 26,

2008, was served on March 5, 2008.  Therefore, this Petition is timely filed pursuant to 28 U.S.C.

§ 1446(b).

2.     The documents attached hereto as Exhibit A comprise all of the process and

pleadings served upon Defendant to date.

3.     This action is removable to this Court pursuant to 28 U.S.C. §1332(a) because

Plaintiff's claims involve diversity jurisdiction.

4.     Plaintiff, Commercial Coin Laundry Systems, is a citizen of Illinois, as it is a

general partnership registered in the state of Illinois and its principal place of business is in

Chicago, Illinois.  Defendant, Park P, LLC, is a citizen of Indiana, as it is a registered limited

liability corporation in the state of Indiana, and its principal place of business is in Kokomo,

Indiana.

     5.     The amount in controversy involved in this case is listed on the Plaintiff's

complaint as $28,868.00, along with "other damages."  However, on June 1, 2005, Plaintiff

wrote a demand letter to Defendant citing losses of $177,660.00.  On June 21, 2007, Plaintiff

wrote a demand letter to Defendant citing losses of $274,446.02.  Therefore, the actual amount in

controversy for this case, from the Plaintiff's perspective, exceeds $75,000.00.  *See Exhibit B,*

demand letters*; Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 541-42 (7th Circ. 2006).

     Respectfully Submitted,

     _____

     s/ Dayna Wheatley
     Attorney for Defendant

Dayna Wheatley, LLC
201 W. Washington St.
West Chicago, IL  60185
Telephone:  630-639-5203
Fax:  630-639-5207

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **COMMERCIAL COIN LAUNDRY** | ) | |
| **SYSTEMS., an Illinois general partnership,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.** |
| | ) | |
| **PARK P, LLC, an Indiana limited liability** | ) | |
| **Company, d/b/a Park P Place Apartments,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROOF OF SERVICE**

TO:    Russel G. Winick, Esq.
       Russel G. Winick & Associates
       1220 Iroquois, #100
       Naperville, IL  60563

        I, Dayna Wheatley, an attorney, hereby certify that I am over the age of 18 years and not a party to the foregoing action.

        On March 31, 2008, I electronically served the Defendant's Notice to Adverse Party of Removal to Federal Court upon the plaintiff, in accordance with the Code of Civil Procedure, section 1013, and then by placing a true and correct copy thereof enclosed in a sealed envelope, with correct postage, in a United States mailbox in the city of Chicago, Illinois.

        I declare under penalty of perjury under the laws of the State of Illinois and the United States of America that the foregoing is true and correct.


                                    _____
                                    s/ Dayna Wheatley
                                    Attorney for Defendant


Dayna Wheatley, LLC
201 W. Washington St.
West Chicago, IL  60185
Telephone:  630-639-5203

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-10M-1-07-05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____LAW_____ DIVISION

(Name all parties)

COMMERCIAL COIN LAUNDRY SYSTEMS, an
Illinois general partnership,

v.

PARK P. LLC, an Indiana limited liability
company, d/b/a Park Place Apartments

No. _____

## SUMMONS

**PLEASE SERVE:** Park P. LLC, c/o Gabriel Naranjo, agent, 1025 Bloomfield Ave., 2-A
To each Defendant: West Caldwell, NJ 07006

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____801_____, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

| | |
|---|---|
| Atty. No.: 13044 | WITNESS,_____, _____ |
| Name: Russel G. Winick | |
| Atty. for: Commercial Coin Laundry Systems | _____ |
| Address: 1220 Iroquois Avenue, Suite 100 | Clerk of Court |
| City/State/Zip: Naperville, IL 60563 | Date of service: _____, _____ |
| Telephone: (630)548-5800 | (To be inserted by officer on copy left with defendant or other person) |

Service by Facsimile Transmission will be accepted at: _____
(Area Code)    (Facsimile Telephone Nun

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLI**

A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

**COMMERCIAL COIN LAUNDRY**  )
**SYSTEMS**, an Illinois general  )
partnership,  )
        )
      Plaintiff,  )
        )
      v.  )    Case No.
        )
**PARK P. LLC,** an Indiana  )
limited liability company, d/b/a  )
Park Place Apartments,  )
        )
      Defendant.  )

## COMPLAINT AT LAW

The Plaintiff, COMMERCIAL COIN LAUNDRY SYSTEMS ("Commercial Coin"), by its

attorneys, Russel G. Winick & Associates, P.C., for its Complaint At Law against the Defendant,

Park P. LLC d/b/a Park Place Apartments, alleges as follows:

1. Commercial Coin is an Illinois general partnership, with a principal place of business

located in Chicago, Cook County, Illinois.

2. Commercial Coin is engaged in the business of installing and maintaining commercial

laundry equipment in leased premises of multiple unit apartment and condominium buildings for the

use of the residents therein.

3. On or about February 24, 2000, Commercial Coin, as lessee, entered into a written real

estate lease agreement, consisting of a one-page, legal-size lease (the "Lease"), and a one- page,

letter-size Rider to Laundry Room Lease (the "Rider"), with Cliff LeCleir, as agent for Home

Apartment Development, a prior owner and/or manager of the  approximately 254-unit apartment

rental property commonly known as 1901 S. Park, Kokomo, Indiana (the "Property"), as lessor, for the purpose of Commercial Coin installing and maintaining commercial laundry equipment in the two (2) laundry rooms (collectively, the "Demised Premises") at the Property. Copies of the Lease and Rider are attached hereto and incorporated herein as Exhibits "A" and "B," respectively.

4. The Lease provided for, among other things, an initial term of ten (10) years, commencing on March 6, 2000.

5. Commercial Coin installed twenty-three (23) large, commercial washing machines and twenty-two (22) large, commercial dryers at the Demised Premises on or about March 6, 2000, pursuant to the terms and conditions of the Lease.

6. At all times since March 6, 2000, Commercial Coin has had affixed, to each of its forty-five (45) units of laundry equipment at the Demised Premises, conspicuous notices, which contain Commercial Coin's name, office telephone number, and a 24-hour service line, and which state that the laundry machines are owned by Commercial Coin, and are operated pursuant to a written lease for the Demised Premises.

7. At all times since March 6, 2000, the same information has been conveyed on large signs which Commercial Coin prominently installed on the walls of both of the laundry rooms comprising the Demised Premises.

8. On April 10, 2000, Commercial Coin recorded a Lease Memorandum against the Property

9. Paragraph 4 of the Lease stipulates that it is binding upon the Lessor and all future owners of the Property..

10. On or about April 1, 2005, Defendant purchased the Property.

11. Defendant's purchase of the Property triggered the termination of the Rider pursuant to

2

Paragraph 7 of the Lease, which stated in pertinent part that:

> "Lessor...further acknowledges that any rider, addendum, or codicil
> to Lease shall terminate upon change of ownership or change of
> managing agent or change of management company or sale of
> property or transfer or assignment of this Lease..."

12. Thereafter, the Lease, unmodified by the Rider, commenced to govern the relationship between Commercial Coin and the Defendant.

13. On June 1, 2005, Commercial Coin sent to Defendant, by certified mail, a copy of the Lease.

14. On June 9, 2005, Defendant, through it owner Gabriel Naranjo, notified Commercial Coin that it was Defendant's "intention to honor the agreement that you made with the previous owner until the end of your contract."

15. The Lease provides, in Paragraph 8, for an additional period of ten (10) years, unless Commercial Coin terminates the Lease at the expiration of the initial term.

16. A similar "automatic renewal clause" exists in the vast majority of the thousands of other laundry room leases that Commercial Coin has entered into during its fifty (50) year history, and Commercial Coin has never exercised its right to terminate a lease at the expiration of its initial term, as opposed to allowing the lease to automatically renew for an additional term.

17. At all times since negotiating and entering into the lease agreement, Commercial Coin has not intended to terminate the Lease at the expiration of its initial term.

18. Commercial Coin's omitting to terminate the Lease effective at the expiration of its initial term would result in the Lease extending for an additional period of ten (10) years, commencing March 6, 2010.

3

19. The Lease remains in full force and effect at the present time.

20. From the onset of the Defendant's ownership of the Property, a series of circumstances have been discovered, each of which constituted either a breach, or a material breach, of the Defendant's obligations under the Lease.

21. Commercial Coin discovered that privately owned washers and dryers were installed, or continued to be installed, in certain individual apartment units at the Property

22. The presence of said privately owned washers and dryers constitutes a breach of Paragraph 5 of the Lease, which stipulates in pertinent part as follows:

> "Lessor covenants and agrees that Lessor will not install
> or operate, nor permit any person, firm or corporation (other
> than Lessee) to install or operate, in said premises, or elsewhere
> in said building(s), any laundry equipment, at any time during
> the period that this Lease shall continue in full force and
> effect..."

23. Although Commercial Coin has repeatedly informed Defendant of this breach of the Lease, Defendant has never taken any actions to comply with its contractual obligation to ensure that all laundry machines other than those owned by Commercial Coin are removed from the Property.

24. Commercial Coin discovered that a serious mold problem had been allowed by Defendant to form in one of the laundry rooms, in violation of the Lessor's warranty in Paragraph 5 of the Lease that no building code violations would interfere with Commercial Coin's laundry service operations in the Demised Premises.

25. Defendant failed to remedy said mold problem for several years, and its presence made the subject laundry room extremely unappealing, and resulted in the Property's residents refraining from using that facility or Commercial Coin's machines therein.

4

26. Defendant allowed the floor drains and stand pipes in one of the laundry rooms to become clogged, which caused water to back up onto the laundry room floor.

27. Said drainage problem was a code violation, which interfered with the laundry services, in breach of Defendant's obligations under Paragraph 5 of the Lease.

28. After Defendant purchased the Property, Commercial Coin discovered that six (6) washer hoses were connected to one small drain, and that five (5) other washers were connected to another small drain.

29. Such mass connections of laundry machines constitutes highly inadequate drainage, which causes periodic leakage and flooding in the subject laundry room when multiple washers are in use simultaneously.

30. Defendant has failed to rectify the inadequate drainage, despite numerous requests by Commercial Coin that Defendant do so.

31. The inadequate drainage is a code violation which interferes with Commercial Coin's laundry services, in violation of Defendant's obligations under Paragraph 5 of the Lease.

32. For a long period of time, one or both of the laundry rooms at the Property had inadequate venting for the laundry machines, in violation of the Lessor's warranty in Paragraph 5 of the Lease that the Demised Premises have "property venting."

33. For a long period of time, Defendant closed one or both of the laundry rooms as early as 4:00 p.m. or 5:00 each weekday.

34. For a period of time, one of both of the laundry rooms was kept closed on weekends.

35. Defendant's early closure and limited hours of the laundry room(s) constituted a breach of Defendant's obligation under Paragraph 1 of the Lease to allow the Property's residents "free and

5

unobstructed access" to the Demised Premises "during reasonable hours" for the purpose of using Commercial Coin's laundry equipment therein.

36. On numerous occasions since Defendant purchased the Property, one or more of Commercial Coin's laundry machines had been burglarized, vandalized with graffiti, or otherwise damaged.

37. Said burglaries and vandalism constituted a breach of Defendant's obligation under Paragraph 10 of the Lease to "provide adequate security" for the Demised Premises and for Commercial Coin's laundry machines therein.

38. In addition to the vandalism referred to above, on September 26, 2005, Commercial Coin discovered that the coin boxes on several of its laundry machines in the main laundry room at the Property had been vandalized with "crazy glue," and had to be drilled out and replaced.

39. This further incident of vandalism constituted another breach by Defendant of its obligation under Paragraph 10 of the Lease to provide adequate security for the Demised Premises and for Commercial Coin's laundry equipment therein.

40. For approximately two (2) years after Defendant purchased the Property, one of the laundry rooms was totally neglected by Defendant, and did not have proper heat, cooling, or lighting, and had missing floor tiles, peeling paint, dirty walls, holes in the ceiling, and had developed mold as aforestated, and was completely inhospitable, and thus virtually unused.

41. The longstanding poor condition of said laundry room constituted a violation of Defendant's obligation under Paragraph 5 of the Lease to provide proper utilities for the Demised Premises.

42. Said inhospitable laundry room also constituted a violation of Defendant's obligation

6

under Paragraph 5 of the Lease to provide all janitorial and housekeeping services for the Demised Premises.

43. Commercial Coin recently discovered that the coin boxes on all forty-five (45) of its laundry machines at the Demised Premises had been glued.

44. Two different types of glue had been used, and some coin boxes had been glued twice.

45. The gluing of the coin boxes required Commercial Coin to have to replace all forty-five (45) coin boxes.

46. The replacement of the coin boxes cost Commercial Coin the sum of $1,347.17.

47. The gluing of the forty-five (45) coin boxes was a repeated act of vandalism of Commercial Coin's machines, which constituted another failure by Defendant to fulfill its security obligations under Paragraph 10 of the Lease.

48. Defendant has refused to accept any responsibility for said vandalism, just as Defendant has refused to accept any responsibility for any of the other breaches of Commercial Coin's lease that have occurred as above alleged since Defendant purchased the Property.

49. As a result of the Defendant's multiple, ongoing, and unrepentant breaches of the Lease, the laundry revenues generated at the Demised Premises have been very low since Defendant purchased the Property, and are far lower than they were during the tenure of the Property's previous owner.

50. The low laundry revenues were exacerbated by the fact that Defendant kept laundry room "B" at the Property closed for a long period of time, in order to Defendant to finally begin to rectify some of the code violations which Defendant had allowed to occur therein.

51. Paragraph 3 of the Lease provides for payment of rent in a sum equal to twenty-five

7

percent (25%) of the gross laundry revenues, subject to a minimum compensation guarantee for Commercial Coin, which states as follows:

> "Lessor guarantees, however, that Lessee shall receive as minimum compensation hereunder the cash equivalent, per day, of the price of one washing and drying cycle per installed washer and dryer, and Lessor agrees that Lessee shall deduct rent otherwise due, if necessary, to attain said compensation."

52. As a result of the low revenues generated at the Property due to the Defendant's breaches of the Lease as above alleged, not only has Commercial Coin had to withhold all of the rent which would otherwise have been owed to Defendant, but also Commercial Coin has experienced a considerable shortfall in the "minimum compensation" which Defendant has contractually guaranteed its receipt of.

53. Said shortfall, calculated from the date of Defendant's acquisition of ownership of the Property, to the date of the preparation of this Complaint, totals the sum of $ 27,521.57.

54. The total shortfall will increase substantially if Defendant continues to breach the Lease in the same and/or new ways in the future.

55. Although not required to do so under the terms of the Lease, Commercial Coin has repeatedly offered to allow Defendant to attend and audit some or all of the collections of laundry revenues at the Demised Premises, free of charge.

56. Defendant never accepted any such offers by Commercial Coin.

57. Paragraph 4 of the Lease states as follows:

> "...Lessor further warrants...that this Agreement shall be governed by the laws of the State of Illinois, with the courts of Cook County having sole and exclusive jurisdiction, and Lessor shall be liable for all costs, including attorney's fees, incurred by Lessee in enforcing this Lease."

8

STATE OF ILLINOIS    )
                     )
COUNTY OF COOK       )

SAUL SILVERSTEIN, being first duly sworn upon oath, deposes and certifies on behalf of

Plaintiff, under penalties as provided by law pursuant to 735 ILCS 5/1-109, that the statements set

forth in this instrument are true and correct, except as to matters therein stated to be upon

information and belief, and as to such matters, that he verily believes the same to be true.

_____
SAUL SILVERSTEIN

SUBSCRIBED and SWORN to

before me this 21st day of

February, 2008.

_____
Notary Public

"OFFICIAL SEAL"
RUSSEL G. WINICK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1/10/2009

Russel G. Winick
Russel G. Winick & Associates, P.C.
1220 Iroquois Avenue
Suite 100
Naperville, Illinois 60563
(630) 548-5800
Attorney Number 13044

This Lease made this ___24TH___ day of ___FEBRUARY___, ___2000___ at Chicago, Illinois between

COMMERCIAL COIN LAUNDRY SYSTEMS hereinafter called Lessee, and

CLIFF LECLEIR/AGENT
HOME APARTMENT DEVELOPMENT
709 CASS STREET
LACROSSE, WI 54601

hereinafter called Lessor.

Witnesseth, that Lessor, for and in consideration of the covenants and agreements hereinafter contained, does hereby demise and lease to the Lessee for use only by the Lessee, the laundry room(s) or laundry area(s) in the building(s) commonly known as:

1901 S. PARK (PARK LACHAUTEAU)

KOKOMO, INDIANA ___ containing ___254___ apartments,
(A further description or drawing of the laundry room(s) or laundry area(s) may be attached hereto as Schedule "A") and legally described as:
(Either party hereto reserves the right to insert the correct legal description of said Premises at any time hereafter by attaching a rider hereto.)

For the following purposes:

A. For Lessee to install, place and operate on said premises commercial laundry equipment for the use by the residents of said premises;

B. For Lessee to use and occupy said space in close proximity to the plumbing, gas, electrical and sewer fixtures and facilities in said laundry room(s) or laundry area(s) for the efficient operation of said equipment;

C. For Lessee to connect said equipment to and through the electric, water, heat, gas and sewer lines in said premises;

D. For Lessor to furnish, and for Lessee to use, Lessor's electricity, gas, heat, hot and cold water, which may be necessary for the efficient operation of said equipment, all at Lessor's expense, and to maintain the premises in adequate physical condition for the uses contemplated hereinabove.

E. To Have and to Hold the Same, for and during a term of ten years commencing MARCH 6, 2000

In consideration of said demise and the covenants and agreements hereinafter expressed, it is covenanted and agreed as follows:

1. The Lessor agrees that the residents of the building(s) described above, shall have free and unobstructed access to the demised premises during reasonable hours for the purpose of using such laundry equipment installed therein.

2. Lessor agrees that Lessee shall have exclusive control and possession of the demised premises. Lessee does hereby give and grant to Lessor the right to use the demised premises for any purpose essential for the operation of the building(s) in which the demised premises are located, provided that such use does not interfere with the Lessee's maintenance and operation of its laundry equipment. The terms and conditions of this Lease are to be strictly construed.

3. Lessee shall pay to Lessor as rent for the demised premises and for the privileges, services and utilities aforesaid, a sum equal to twenty-five per cent of the dollar amount of Lessee's coin receipts from the aforesaid laundry equipment during the period that this Lease shall continue in full force and effect. The aforesaid payments shall be made to the Lessor at least semi-annually. Lessor guarantees, however, that Lessee shall receive as minimum compensation the cash equivalent, per day, of the price of one washing and drying cycle per installed washer and dryer, and Lessor agrees that Lessee shall deduct rent otherwise due, if necessary, to attain said compensation. The charges to be made to the residents of said premises for the use of said equipment, and the frequency of collections shall be determined solely by Lessee.

4. Lessor represents and warrants that Lessor is the owner, beneficial owner, contract purchaser, lessee, or duly-authorized managing agent of the aforesaid premises, and that Lessor has good right and lawful authority to enter into and execute this Lease under all of the terms and provisions herein set forth, and that this Lease will be binding upon Lessor and all future owners, and their heirs, executors, and assigns of the Lessor. It is the intention of the parties hereto that this Lease run with the land and buildings hereinabove described. Lessor further warrants that there is no other Lease or Agreement in effect regarding the demised premises or regarding installation and operation of laundry equipment upon the demised premises and this Agreement shall be governed by the laws of the State of Illinois, with the courts of Cook County having sole and exclusive jurisdiction and Lessor shall be liable for all costs, including attorneys fees, incurred by Lessee in enforcing this Lease.

5. Lessor covenants and agrees that Lessor will not install or operate, nor permit any person, firm or corporation (other than Lessee) to install or operate, in said premises, or elsewhere in said building(s), any laundry equipment, at any time during the period that this Lease shall continue in full force and effect. Lessor warrants that the premises have adequate utilities and proper venting and there will be no building code violation which adversely affects the ability of Lessee to install, operate or maintain its laundry equipment. All taxes, license fees, and similar charges imposed by any governmental body upon the laundry services at the demised premises shall be borne by Lessor. Lessor shall be responsible for all janitorial and housekeeping services for the laundry room and equipment.

6. Lessee covenants to equip the laundry room with commercial washing and drying equipment and to operate said laundry equipment in said premises, for use by the residents of said premises, during the period that this Agreement shall continue in full force and effect as herein provided; and during said period, to maintain said equipment on said premises in reasonably good working order for the prudent use thereof, except when unable to do so during necessary repairs or replacements or for any other

reasons beyond Lessee's reasonable control or prevention. In the event Lessor requests the replacement of at least fifty percent or more of Lessee's laundry equipment during any term of this Lease, Lessee may replace said equipment. The initial term, the additional term and subsequent terms, if any, of this Lease shall then be extended for a period of time equal to the initial term. The type, style and quantity of laundry equipment installed shall be at the sole discretion of the Lessee.

7. Lessee acknowledges that title to the aforesaid laundry equipment (including fixtures, wiring, plumbing and accessories, supplied or installed by Lessee) shall at all times remain vested solely in Lessee and not the Lessor, and further acknowledges that any rider, addendum, or codicil to Lease shall terminate upon change of ownership or change of managing agent or change of management company or sale of property or transfer or assignment of this Lease, notwithstanding anything to the contrary set forth in this Lease or in any such rider, addendum, or codicil to Lease. Lessee acknowledges that the original parties hereto shall have all of the rights, benefits and privileges, both substantive and procedural, granted to the original parties hereto in any rider, addendum, or codicil that may be attached to this Lease and thereby made a part of Lease Agreement, if applicable.

8. It is further understood and agreed by and between the parties hereto that this Lease shall be extended for an additional period of ten years from the date of its expiration unless Lessee gives to Lessor notice in writing by United States Certified Mail at least 60 days prior to the end of the initial term herein of Lessee's intention not to extend this Lease. At the expiration of the additional period herein, this Lease shall continue for subsequent ten year terms unless terminated by either Lessee or Lessor effective at the expiration date of the additional period or any subsequent term herein, by notice in writing strictly conforming to the provisions hereof by United States Certified Mail, to the other party's main office (not any regional office), one to the other, not less than three hundred sixty-five days and not more than three hundred ninety-five days prior to the end of said additional period or any such subsequent term herein. Time is of the essence with respect to this lease. If property is sold or management is changed subsequent to any written notice provided herein and prior to the end of Lessee's tenancy, then said notice shall be null and void, and shall be considered rescinded.

9. Upon termination of this Lease, Lessor will not enter into any new Lease for said premises with any third party, without first sending Lessee, by Certified Mail, return receipt requested, a copy of any bona fide offer, and giving Lessee sixty days thereafter to meet the terms of such offer. The notice of termination set forth in paragraph eight shall be null and void and shall be considered rescinded unless Lessor sends to Lessee by Certified Mail, return receipt requested, a copy of any bona fide offer as aforestated, not more than one hundred and eighty days after Lessee's receipt of said notice of termination, and thereafter gives Lessee said right of first refusal.

10. Lessee agrees to procure and carry public liability insurance coverage (in liability limits of not less than $500,000.00/$500,000.00) insuring against all claims for personal injuries and property damage arising out of the use of said equipment. Lessor shall provide adequate security for the Laundry Room(s) or Laundry Area(s) and for Lessee's laundry equipment therein. In the event of a breach hereof, rent otherwise payable hereunder may be withheld until Lessee is reimbursed for any losses resulting therefrom.

11. This Lease shall not take effect until accepted by Lessee at office of Lessee in Chicago, Illinois.

LESSEE
COMMERCIAL COIN LAUNDRY SYSTEMS

LESSOR CLIFF LECLEIR/AGENT

_____ (SEAL)     _____ (SEAL)
(SEE ATTACHED RIDER TO LEASE)

EXHIBIT
A

10/31/2006  10:23 FAX  11732830125       CCLS COIN LAUNDRY       → RUSS       ⊠008/008

RIDER TO THE LAUNDRY ROOM LEASE DATED FEBRUARY 24, 2000
BETWEEN COMMERCIAL COIN LAUNDRY SYSTEMS, 3750 N. CICERO
AVENUE, CHICAGO, ILLINOIS 60641 AS LESSEE AND CLIFF
LECLEIR/AGENT, HOME APARTMENT DEVELOPMENT, 709 CASS
STREET, LACROSSE, WISCONSIN, 54601 AS LESSOR THE
PROPERTY COMMONLY KNOWN AS PARK LACHAUTEAU, 1901 S.
PARK, KOKOMO, INDIANA

A.   LESSEE SHALL GIVE TO LESSOR THE SUM OF $41,000.00, WHICH SUM
     IS TO REIMBURSE FOR IMPROVEMENTS MADE OR TO BE MADE BY
     LESSOR TO THE LAUNDRY ROOM PREMISES LEASED HEREIN.

B.   THE FIRST TWO SENTENCES OF PARAGRAPH #3 ARE HEREBY MODIFIED
     BY THE FOLLOWING:

     "LESSEE SHALL PAY TO LESSOR AS RENT FOR THE DEMISED PREMISES
     AND FOR THE PRIVILEGES, SERVICES AND UTILITIES AFORESAID, A
     SUM EQUAL TO 50% OF THE DOLLAR AMOUNT OF LESSEE'S RECEIPTS
     FROM THE AFORESAID EQUIPMENT DURING THE PERIOD THAT THIS
     LEASE SHALL CONTINUE IN FULL FORCE AND EFFECT. THE AFORESAID
     PAYMENTS SHALL BE ISSUED TO THE LESSOR QUARTERLY."

C.   LESSOR MAY TERMINATE THE LEASE AND RIDER IN THE EVENT LESSEE
     FAILS TO PERFORM ANY OF ITS OBLIGATIONS UNDER THE LEASE AND
     RIDER, INCLUDING, BUT NOT LIMITED TO SERVICE OF THE
     EQUIPMENT, WITH 30 DAYS NOTICE BY U.S. CERTIFIED MAIL,
     PROVIDED LESSEE HAS 30 DAYS FROM RECEIPT OF SAID NOTICE TO
     CURE SAID DEFECT AS STATED IN SAID NOTICE.

LESSOR:                          LESSEE:

CLIFF LECLEIR/AGENT              COMMERCIAL COIN LAUNDRY SYSTEMS
HOME APARTMENT DEVELOPMENT

EXHIBIT

B



# *COIN LAUNDRY SYSTEMS*

3750 North Cicero Avenue  •  Chicago, Illinois 60641  •  Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

June 1, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

08CV1853        TG
JUDGE DOW
MAGISTRATE JUDGE DENLOW

Re:   1901 S. Park Road
      Kokomo, Indiana

Dear Mr. Naranjo:

Enclosed is a copy of the laundry room lease agreement for the above referenced property, which has been highlighted for your convenience. This lease runs with the land and is binding upon all future owners of the property, regardless of whatever the previous owner may have informed you. This lease was properly recorded with Howard County Indiana.

We are sympathetic to your predicament, and we will work with you as much as legally possible, without prejudicing our leasehold rights.

We have a legal right to uninterrupted tenancy at our leased premises.

If you intend to permanently close <u>one</u> laundry room, our projected losses would total approximately **$177,660.00**. We would of course expect to be compensated for our projected losses.

In response to your phone call of May 23, 2005, Commercial Coin Laundry Systems awaits your written correspondence regarding the overall condition of the above referenced property and your plans for renovations, particularly with the laundry rooms.

If you have any questions, or if we can be of any assistance, please do not hesitate to contact our office.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km
enc.

cc: Russel Winick, Attorney at Law

Certified Mail # 7001 2510 0006 7157 9935



# COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue  •  Chicago, Illinois 60641  •  Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

June 21, 2007

David A. Cox
Bayliff, Harrigan, Cord, Maugans & Cox
123 N. Buckeye Street
P.O. Box 2249
Kokomo, IN 46904-2249

Re:    1901 S. Park Road
Kokomo, Indiana

Dear Mr. Cox:

I wrote to you on May 9, 2007 regarding the above referenced property.

I have not heard from you or Mr. Naranjo.

As we have discussed, your client is in breach of the laundry room lease agreement for allowing the use of privately owned washers and dryers.

This matter must be addressed.

We have estimated that our losses through the life of the lease, <u>due to your clients breach,</u> totals approximately <u>$274,446.02</u>.

I must hear from you no later than <u>July 6, 2007</u> regarding this matter.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein
SS:km

06-389