## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **COMMERCIAL COIN LAUNDRY** | ) | |
| **SYSTEMS**, an Illinois general | ) | |
| partnership, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08CV1853 |
| | ) | Judge Dow |
| **PARK P, LLC, an Indiana limited liability** | ) | Magistrate Judge Denlow |
| **company, d/b/a Park P Place Apartments,** | ) | |
| | ) | |
| Defendant. | ) | |

### RESPONSE TO DEFENDANT PARK P, LLC'S MOTION TO DISMISS FOR IMPROPER VENUE, TO DISMISS FOR PERSONAL JURISDICTION UNDER RULE 12(B) AND, ALTERNATIVELY, TO TRANSFER VENUE

The Plaintiff, COMMERCIAL COIN LAUNDRY SYSTEMS ("Commercial Coin"), by its attorneys, Russel G. Winick & Associates, P.C., for its Response to the Motion to Dismiss for Improper Venue, to Dismiss for Personal Jurisdiction under Rule 12(b) and, Alternatively, to Transfer Venue ("Motion to Dismiss"), filed by Defendant, Park P, LLC, d/b/a Park P Place Apartments ("Defendant"), states as follows:

### INTRODUCTION

Defendant's Motion to Dismiss ignores each of the following facts: (1) Defendant voluntarily decided to purchase the subject property, despite constructive notice that its laundry rooms were subject to a lease that contained Illinois forum selection and Illinois choice of law clauses which were applicable to any new owner of the property, (2) Defendant knowingly and intentionally honored, partially performed, and benefitted from, a lease substantially connected with Illinois, and (3) Defendant knew that a breach of that lease would affect Commercial Coin's economic interests in Illinois, and might subject Defendant to a lawsuit in Illinois. Defendant thus

is subject to personal jurisdiction in Illinois, pursuant to both the Lease's forum selection clause, and sections (a) and (c) of the Illinois Long Arm Statute, 735 ILCS 5/2-209, and venue is proper in the U.S. District Court for the Northern District of Illinois.

## BACKGROUND

Commercial Coin's Complaint arose out of Defendant's multiple breaches of the written lease (the "Lease") for the laundry facilities (the "Demised Premises") at the property commonly known as 1901 S. Park, Kokomo, Indiana (the "Property").[1]  Commercial Coin entered into the Lease on February 24, 2000 with an entity that was the Defendant's predecessor as owner and/or manager of the Property.  Copies of the Lease, and of the original Rider to the Lease, which terminated upon the sale of the Property to Defendant, are attached hereto as Group Exhibit "A." Pursuant to the Lease, Commercial Coin installed its laundry equipment at the Demised Premises on March 8, 2000 for the purpose of operating and maintaining its equipment therein.

Since the installation of its laundry equipment at the Demised Premises, Commercial Coin had placed large, conspicuous signs on the walls of both laundry rooms comprising the Demised Premises, and further affixed prominent labels on each of its forty five (45) large laundry machines installed therein.  Said signs and labels featured bright blue ink against a white background, and contained Commercial Coin's name and logo, and both its office telephone number, and its 24-hour toll-free service telephone number, and further stated that the laundry machines were operated by Commercial Coin "PURSUANT TO A WRITTEN LEASE FOR THESE PREMISES..."  A copy

---

[1]
Commercial Coin filed its Complaint in the Circuit Court of Cook County, Illinois. On March 31, 2008, Defendant removed the action to the U.S. District Court for the Northern District of Illinois.

of the labels, which is also a reduced copy of said signs, is attached hereto and incorporated herein as Exhibit "B." Commercial Coin also recorded a Lease Memorandum against the Property on April 10, 2000, which is attached hereto and incorporated herein as Exhibit "C."

Paragraph 4 of the Lease provides that it runs with the land and buildings, and is binding upon all future owners, and all assigns of the original lessor. The Lease remains in full force and effect until at least March 6, 2020. Paragraph 4 of the Lease further provides as follows:

> "Lessor further warrants that...this Agreement shall be governed by the laws of the State of Illinois, with the courts of Cook County having sole and exclusive jurisdiction."

Defendant purchased the Property on or about April 29, 2005. On May 2, 2005, the Defendant's agent telephoned Commercial Coin and requested that it remove its machines so that Defendant could close one of the laundry rooms due to mold. A copy of Commercial Coin's memorandum of said message is attached hereto and incorporated herein as Exhibit "D." On May 4, 2005, Commercial Coin sent to Defendant a letter, which referred to the rent that was to be paid to Defendant as Commercial Coin's "landlord" at the Property, and requested certain information. Rather than deny that it was indeed Commercial Coin's "landlord," Defendant instead immediately filled out, executed, and returned the letter to Commercial Coin the same day. Said letter is attached hereto and incorporated herein as Group Exhibit "E." Moreover, on June 9, 2005, Defendant, through its owner, Gabriel Naranjo, notified Commercial Coin that it was Defendant's "**intention to honor the agreement that you made with the previous owner until the end of your contract.**" A copy of said letter is attached hereto and incorporated herein as Exhibit "F."

Defendant owned the Property for more than two years prior to the commencement of this action. During the 2+ year period, Defendant accepted the laundry services provided by

3

Commercial Coin pursuant to the Lease. Defendant also furnished, at its sole expense, all of the utilities required for the operation of Commercial Coin's laundry equipment in one of the laundry rooms comprising the Demised Premises, as required by the Lease.

### Any Factual Disputes Must Be Resolved in Commercial Coin's Favor

All of the factual allegations set forth above, and in the attached Affidavit of Kristianne Tomazin, must be taken as true for the purposes of Defendant's Motion to Dismiss. To the extent that Defendants' Motion to Dismiss or the Affidavit attached to it raise any factual disputes, such disputes must be resolved in Commercial Coin's favor as a matter of law: "In deciding a motion to dismiss for lack of personal jurisdiction, the court may consider any affidavits submitted by either side, but all factual disputes are to be resolved in favor of the party seeking jurisdiction." *Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd.*, 776 F.Supp. 1271, 1274 (N.D.Ill. 1991).

### ARGUMENT

### From the United States Supreme Court On Down, The Courts Have Upheld Contractual Forum Selection Clauses As Constituting Consent to and Creating Personal Jurisdiction in a Foreign State

Personal jurisdiction is a waivable right that a party can consent to through a forum selection clause. *Heller Financial, Inc. v. Shop-A-Lot, Inc.*, 680 F.Supp. 292, 294 (N.D. Ill, 1988). The courts which have reviewed forum selection clauses, from the United States Supreme Court to the Illinois appellate courts, have upheld them in all but the most narrow and inequitable circumstances. The U.S. Supreme Court in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907 (1971), held forum selection clauses to be binding upon the parties, unless the challenger could meet the "heavy burden of showing that its enforcement would be unreasonable, unfair, or unjust." Twenty years later, the United States Supreme Court expanded the *Bremen* holding, in *Carnival Cruise Lines, Inc.*

*v. Eulala Shute*, 499 U.S. 585, 111 S.Ct. 1522 (1991), by finding that a forum selection clause printed on the reverse side of a cruise ticket was valid and enforceable in a personal injury action against a cruise line. The Court held that Shute had not met the "heavy burden" required by *Bremen* to set aside such a provision.  The Court found that the cruise line had a legitimate, good faith interest in selecting the Florida forum, because it dealt with passengers from all over the country, and that its principal place of business was in Florida. The Court made this finding despite the facts that the forum selection clause was in fine print on the back of the cruise ticket, and Shute had no opportunity to negotiate it.

The Court in *Carnival Cruise Lines* stated that Shute could have rejected the ticket outright if she had an objection to the forum selection clause. The Court also emphasized that the cruise line did not operate in bad faith so as to deny potential litigants their day in court, but merely fixed the litigation forum for numerous legitimate business reasons. The Court also noted that the choice of forum clause permitted the cruise line to operate at a lower cost, and to therefore reduce ticket prices - which benefitted Shute and other passengers.

In addition to conferring a court's personal jurisdiction over a defendant, forum selection clauses can also be used to determine which federal district court will preside over the case.  As the Seventh Circuit explained in *IFC Credit Corporation v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 608 (C.A.7 (Ill). 2006), "federal courts are friendly to the use of forum selection clauses to determine which federal district court shall host a case."  The court held that "a forum selection clause is enforceable to the same extent as the usual terms of a contract, which mainly means unless it was procured by fraud or related misconduct." *Id.* at 610.

Illinois law governing forum selection clauses is found in *Calanca v. D & S Manufacturing*

Co.,157 Ill.App.3d 85, 89 (1987). In *Calanca*, as in the Supreme Court rulings cited above, forum selection clauses were upheld as *prima facie* valid and enforceable, absent a showing that enforcement would be unreasonable under the circumstances. The *Calanca* Court considered six (6) factors to be relevant to a determination of whether a forum selection clause is reasonable:

> (1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance; (4) the location of the parties and witnesses participating in the litigation; (5) the inconvenience of the parties of any particular location; and (6) whether the clause was equally bargained for.

*Calanca* was closely followed by the Appellate Court in *Dace International, Inc. v. Apple Computer, Inc.*, 275 Ill.App.3d 234 (1 Dist. 1995). Citing Calanca, the Court in Dace ruled that the party opposing enforcement of a forum selection clause "is required to show that litigation in the contractual forum will be so burdensome that there will be no real opportunity to litigate the issues in a fair manner and that enforcement of the clause is tantamount to depriving the [complaining party] of access to the courts." *Id*. at 239. The Dace Court further noted that "while Dace is clearly able to show that it would be inconvenienced by a California forum, relative inconvenience has been routinely rejected as a basis for voiding forum selection clauses..." *Id.*

The Illinois courts have repeatedly held that forum selection clauses in contracts, alone, are sufficient to confer personal jurisdiction over non-residents in the state referenced in the clauses, and that such conference of jurisdiction does not offend due process. "A forum selection clause in a given agreement has been held sufficient to constitute consent to personal jurisdiction in a foreign State." *ETA Trust v. Recht*, 214 Ill. App. 3d 827, 834 (1991). See also, *Nat'l Equipment Co v. Polyphasic Health Sys.*, 141 Ill. App. 3d 343, 347 (1986).  In *Nat'l Equipment*, the Court held that the contractual consent to jurisdiction provided the minimum contacts needed for personal jurisdiction.

6

*Id.* See also, *Heller Financial v.  Shop-a-Lot*, 680 F. Supp. 292, 294 (N.D. Ill. 1988).

Defendant's reliance on *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997),

*Glass v. Kemper Corporation*, 930 F. Supp. at 338, *International Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945), and *Beveridge v. Mid-West Management, Inc.*, 78 F.Supp 2d 739, 743 (N.D. Ill.

1999), is misplaced in that these cases did not contain a contractual forum selection clause, as does

the Lease in the matter at bar. In fact, the court in *RAR, Inc.* itself made note of the significance of

this distinction, observing that "[t] he consequence of our holding is mitigated by the fact that

personal jurisdiction is waivable and that the parties can, through forum selection clauses and the

like, easily contract around any rule we promulgate." *RAR, Inc.*, 107 F.3d at 1280.

Applying the facts of the instant case to the principles enunciated in the U.S. Supreme Court

and Illinois authorities cited above, it is clear that the forum selection clause in the subject Lease

is valid and enforceable.  Unlike the forum selection clause in *Carnival Cruise Lines*, the clause in

Commercial Coin's Lease was written on the front page of the agreement, in the same font and size

of print as 99% of the rest of the pre-printed portion of the Lease.  And like the cruise line in

*Carnival Cruise Lines*, Commercial Coin has a substantial interest in litigating in Illinois.

Commercial Coin is headquartered in Illinois, but doing business throughout the Midwest. Only its

collectors and repair persons work substantially outside of its Chicago offices. All of Commercial

Coin's administrators, clerical staff, and sales representatives work at its Chicago offices.

Commercial Coin's legal counsel is located near Chicago. The forum selection clause is designed to

ensure that Commercial Coin will not be required to hire and educate legal counsel in, and send its

administrators and sales representatives as witnesses to, every one of the numerous counties and

states where it provides laundry services. That would be a very expensive burden for Commercial

Coin. The ability to conduct any and all legal action arising out of its leases in Cook County provides Commercial Coin with significant benefits in terms of efficiency and economy. The forum selection clause is particularly crucial to Commercial Coin, given the duration of its leaseholds, and the possibility of dealing with new, perhaps hostile, owners at any particular property.

Defendant has not alleged that it is unable to litigate this action in the Northern District of Illinois, or that it cannot afford to hire counsel to represent its interests herein - as it obviously has already done so. Defendant would not be unduly burdened by litigating this action in Chicago, in that Chicago is not that much farther than Indianapolis. In its Motion to Dismiss, Defendant represented that it has filed a cause of action against Commercial Coin in the District Court in the Southern District of Indiana.[2] (Motion, par. 24). Defendant's owner's willingness to travel from New Jersey to Indianapolis weakens Defendant's argument that Chicago is too inconvenient. (Motion, par. 24). Moreover, Defendant would be required to come to Chicago only once or twice during the entire course of this litigation. Any inconvenience that might be alleged by the Defendant has, as the Courts in *Calanca* and *Dace* confirm, routinely been rejected as a basis for invalidating a contractual forum selection clause.

Since the courts - from the United States Supreme Court on down - have upheld the enforceability of such contractual forum selection clauses, Commercial Coin has a right to rely upon the enforcement of this clause in its contracts. Defendant's Motion to Dismiss entirely ignores the massive body of law, from both the Federal courts and the Illinois courts, which has upheld the enforceability of contractual forum selection clauses, and instead relies heavily upon case law which

---

[2] As of June 16, 2008, Commercial Coin has not been served with process in such action.

8

does not involve forum selection clauses.  Defendants' attempt to evade that law, and ignore the

facts, should fail.

### The Contractual Choice of Law Clause Further Supports Illinois Jurisdiction

As many courts have observed, of additional significance to the issue of jurisdiction is the

Lease's choice of law clause.  For instance, in *Payne v. AHFI Netherlands, B.V.*, 482 F.Supp. 1158,

1161-62 (N.D. Ill. 1980), the Court stated that:

> "In Illinois, when determining the essential fairness of an exercise of personal
> jurisdiction over a nonresident defendant, one factor that weighs heavily is whether
> such defendant, through his activities, voluntarily invoked the benefits and
> protections of the state's laws.  In agreeing that their overseas employment
> relationship with AHFI and AHSC was to be governed by Illinois law,
> counterdefendants Lee and Edwards  clearly availed themselves of the protections
> and benefits of the present forum's laws.  In view of that fact, it appears clear that
> personal jurisdiction over said counterdefendants properly lies under Illinois law, and
> accordingly in this court." [citations omitted]

See also, *Sky Valley Ltd. Partnership*, *supra*, ("The fact that the contract at issue here specifies

Illinois law is also a factor which supports a finding of personal jurisdiction").  776 F.Supp. at 1275.

### Legal Standards for Determining *In Personam* Jurisdiction Under the Long Arm Statute

The Illinois Long Arm Statute, 735 ILCS 5/2-209, confers jurisdiction upon the Illinois

courts where any person or entity, whether or not a citizen or resident of Illinois, either in person or

through an agent, does any of the specific acts enumerated in Section (a) of the Statute, for a cause

of action arising from the doing of such acts.  *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d

1209, 1216 (7th Cir. 1984).  The doing of any such acts furnishes the "minimum contacts" with

Illinois necessary to satisfy due process.

In 1989, the Illinois Long Arm Statute was amended to include its current Section (c), which

states that: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by

the Illinois Constitution and the Constitution of the United States." This section has been held to permit long arm jurisdiction to the fullest extent available under the Due Process Clause, and the enumerated acts have been essentially subsumed therein. Since the enactment of Section (c) of the Illinois Long Arm Statute, the Illinois and Federal courts have construed it as requiring only a finding that the principles of due process have been met. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995); *Brandt Consolidated, Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 168-69 (C.D.I.L. 1992); *W.R. Grace & Co. v. Ensey*, 279 Ill.App.3d 1043, 1046-47, (3[rd] Dist. 1996).

Due Process allows a state court's exercise of *in personam* jurisdiction over a non-resident only where there are "minimum contacts" between the defendant and the forum state, such that the lawsuit would not offend traditional notions of fair play and substantial justice. *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945). The "minimum contacts" requirement is met if it is reasonably foreseeable that a defendant could be haled into court in the forum state. *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 100 S.Ct. 559 (1980).

The federal courts applying Illinois law have also judged the reasonableness of the exercise of long-arm jurisdiction in terms of the foreseeability that the defendant would be subject to suit in the forum. *Snyder v. Smith*, 736 F.2d 409 (7th Cir. 1984). Moreover, "a key inquiry in cases where a nonresident defendant commits an act outside of Illinois which has resulting effects within this state, is whether the defendant had reason to anticipate that his activities would have an effect in Illinois." *Tankersley v. Albright*, 374 F.Supp. 530, 535 (1973).

### The Court has *In Personam* Jurisdiction Over the Defendants
### Pursuant to Section (a) of the Illinois Long-Arm Statute

735 ILCS 5/2-209(a)(7) states that one of the acts by which a non-resident submits to the

jurisdiction of the Illinois courts as to any cause of action arising from the doing of such acts is:

> "The making or performance of any contract or promise substantially connected with this State."

The Lease is substantially connected with the State of Illinois.  It is undisputed that the Lease provides that it is "governed by the laws of the State of Illinois, with the courts of Cook County having sole and exclusive jurisdiction." (See Group Exhibit A).

It also cannot seriously be denied that the Defendant affirmatively chose to undertake many aspects of the Lessor's "performance" under the Lease.  For over two (2) full years after purchasing the Property, Defendant, as required by the Lease, solely furnished and paid for all of the utilities that were necessary to allow Commercial Coin to continue operating its laundry equipment in one of the laundry rooms comprising the Demised Premises. These affirmative actions and choices surely explain why Defendant admitted its "...**intention to honor the agreement that you made with the previous owner until the end of your contract.**" (See Exhibit F).  Moreover, it explains why Defendant filled out, signed, and returned a letter that was sent to it as Commercial Coin's "landlord." (See Exhibit E).

Defendant, even prior to becoming the owner and manager of the Property, had constructive notice of the Lease, pursuant to the Lease Memorandum recorded against the Property, and the signs which Commercial Coin had placed on the laundry room walls, and the prominent labels which it had placed on each of the forty five (45) large laundry machines that it installed at the Demised Premises.  In a case involving another Commercial Coin lease, the Illinois Appellate Court's First District cited the presence of identical wall signs and machine labels in finding that the property owner had constructive notice of Commercial Coin as a tenant in possession of the premises.

11

*Applegate Apts. Limited Partnership v. Commercial Coin Laundry Systems*, 276 Ill.App.3d 433 (1

Dist. 1995). The Court ruled that: "Actual possession and occupation by a lessee are legally

tantamount to the recording of the lease." *Id.* See also, *Dana Point Condo. Assoc. v. Keystone

Service Co.*, 141 Ill.App.3d 916 (1986), and *Weiman v. Butterman*, 124 Ill.App.2d 246 (1970).

For each of the above reasons, Defendants knowingly partially performed a contract

substantially connected with Illinois, thus constituting Defendant's submission to the jurisdiction of

the Illinois courts pursuant to 735 ILCS 5/2-209(a)(7).

### The Court's Exercise of *In Personam* Jurisdiction Satisfies Due Process, and thus Comports with Section (c) of the Illinois Long-Arm Statute

It is not disputed that at all times, Defendant knew about Commercial Coin's Lease, which

provided that it was governed by the laws of the State of Illinois, with the courts of Cook County

having sole and exclusive jurisdiction. Defendant further knew that Commercial Coin's offices were

located in Illinois. Defendant also cannot deny that, after having "honored" the Lease, when it made

the choice to breach the Lease as aforestated, it knew that Commercial Coin would suffer the adverse

economic consequences of such breaches in Illinois. Accordingly, at the time that Defendant decided

to purchase the Property, and at all times thereafter, it was quite foreseeable by Defendant that if it

were to commit a breach of the Lease, it might be sued in Illinois. Thus, litigating the Defendant's

breaches of the Lease in Illinois is fully consistent with traditional notions of fair play and substantial

justice, and thus satisfies due process.

While Defendant now attempts to portray itself as merely a "successor in interest" of the

Lease, the fact is that Defendant affirmatively accepted the leasehold relationship between itself and

Commercial Coin by providing and paying for utilities in one of the laundry rooms comprising the

12

Demised Premises to support the Lease. Moreover, Defendant affirmatively acknowledged its
leasehold relationship with Commercial Coin in writing.

### Venue is Proper in the United States District Court for the Northern District of Illinois

Defendant removed this action to the Northern District of Illinois pursuant to diversity
jurisdiction under 28 U.S.C. §1332(a). 28 U.S.C. §1391(a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may,
> except as otherwise provided by law, be brought only in (1) a judicial district where
> any defendant resides, if all defendants reside in the same State, (2) a judicial district
> in which a substantial part of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the subject of the action is situated,
> or (3) a judicial district in which any defendant is subject to personal jurisdiction at
> the time the action is commenced, if there is no district in which the action may
> otherwise be brought.

Venue is proper in this Court pursuant to sections Sectios §1391(a)(2) and (3), because the Lease is
substantially connected to Illinois and this Court has personal jurisdiction over the Defendant.

A defendant does not need to travel to the forum district for the plaintiff to establish proper
venue pursuant to section 1391(a)(2). A "plaintiff need only demonstrate that a 'substantial part' of
the events or omissions giving rise to the claim occurred within the forum district, not that a majority
of events took place there." *Schwarz v. National Van Lines, Inc.*, 317 F.Supp.2d 829, 834 (N.D. Ill,
2004). To be "substantial" the courts determine whether the events that took place in the district
were a part of the "historical predicate of the claim." *Id.* Moreover, the "requirements of section
1391(a)(2) may be satisfied by a communication transmitted to or from the district in which the
cause of action was filed, given a sufficient relationship between the communication and cause of
action." *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F.Supp.2d
898, 913 (N.D. Ill, 2003).

In this case, Commercial Coin's Complaint is based on Defendant's multiple breaches of the

Lease. For over two (2) years after Defendant purchased the Property, Commercial Coin and Defendant exchanged at least forty three (43) letters in connection with Defendant's multiple breaches of the Lease. Commercial Coin mailed and received the letters at its offices located in Chicago, Illinois. The subject matter of those letters is directly related to Defendant's refusal to perform some of its obligations under the lease, and therefore, venue is proper in this Court. Copies of the letters exchanged between Commercial Coin and Defendant are attached hereto and incorporated herein as Group Exhibit "G."

### Defendant's Motion to Transfer Venue to the U.S. District Court for the Southern District of Indiana Should be Denied.

A case should not be transferred to another district court unless the moving party shows that: "(1) venue is proper in the transferor court; (2) that the transferee is in a district where it might have been brought; and (3) that the transfer is for the convenience of the parties and witnesses in the interest of justice." *Heller Financial, Inc. v. Shop-A-Lot, Inc.*, 680 F.Supp. at 295. To satisfy the third requirement that the transfer is for convenience, the moving party must establish a "clear balance of inconvenience." *Id.* A motion to transfer must not be granted if the effect is to shift the inconvenience from one party to the other. *Id.* Moreover, since the Lease includes a forum selection clause, the defendant "must carry an even greater burden." *Id.*

Defendant has not, and cannot, satisfy its burden that there is a clear balance of inconvenience to have this Court decide this case. Defendant merely argues that all of Defendant's witnesses and the laundry machines in question are located in Indiana. (Motion, par. 24). However, all of Commercial Coin's witnesses are located in Chicago. Transferring this case to the Southern District of Indiana will merely shift the inconvenience to Commercial Coin. Moreover, the Lease involved in this matter contains an Illinois choice of law provision. The court in *Heller* explained

that a choice of law provision mitigates against transfer since "whenever possible, a diversity case should be decided by the court most familiar with the applicable state law." *Heller*, 680 F.Supp. at 296. This Court is more familiar with interpreting and applying Illinois law. *Id.*

Defendant's argument that this case should be transferred because it has filed a claim against Commercial Coin in the U.S. District Court for the Southern District of Indiana is unpersuasive, especially in light of the fact that this case was filed first and as of June 16, 2008, Commercial Coin has not been served in the second case. It is premature to presume that Defendant's pending action against Commercial Coin is sufficient to support a Motion to Transfer Venue.

## CONCLUSION

The Affidavit of Kristianne Tomazin in support of this Response Brief is attached hereto and incorporated herein as Exhibit "H." Pursuant to the facts alleged in Commercial Coin's Complaint and in this brief, and as are attested to in said Affidavit, and further pursuant to each of the foregoing arguments, Commercial Coin has clearly demonstrated that the Court has *in personam* jurisdiction over the Defendant based upon the contractual forum selection clause and pursuant to Illinois statutory and constitutional law and federal constitutional law. Furthermore, Commercial Coin has demonstrated that venue is proper in this Court based upon the contractual forum selection clause and 28 U.S.C. §1391(a). Therefore, Defendant's Motion to Dismiss for Improper Venue, to Dimiss for Personal Jurisdiction, and Alternatively, to Transfer Venue should be denied in its entirety.

Respectfully submitted,
COMMERCIAL COIN LAUNDRY SYSTEMS

By: _____
One of its Attorneys

Russel G. Winick & Associates, P.C.
1220 Iroquois Avenue, Suite 100
Naperville, Illinois 60653; (630) 548-5800

15

This Lease made this ____24TH____ day of __1-2 FEBRUARY__ , ____2000____ by and between, Chicago, Illinois between

**COMMERCIAL COIN LAUNDRY SYSTEMS** hereinafter called Lessee, and

CLIFF LECLEIR/AGENT
HOME APARTMENT DEVELOPMENT
709 CASS STREET
LACROSSE, WI  54601

hereinafter called Lessor.

**Witnesseth,** that Lessor, for and in consideration of the covenants and agreements hereinafter contained, does hereby demise and lease to the Lessee for use by the Lessee, the laundry room(s) or laundry area(s) in the building(s) commonly known as:

1901 S. PARK (PARK LACHAUTEAU)

KOKOMO, INDIANA _____ containing ____254____ apartments,
(A further description or drawing of the laundry room(s) or laundry area(s) may be attached hereto as Schedule "A") and legally described as:
(Either party hereto reserves the right to insert the correct legal description of said Premises at any time hereafter by attaching a rider hereto.)

For the following purposes:

A.    For Lessee to install, place and operate on said premises commercial laundry equipment for the use by the residents of said premises;

B.    For Lessee to use and occupy said space in close proximity to the plumbing, gas, electrical and sewer fixtures and facilities in said laundry room(s) or laundry area(s) for the efficient operation of said equipment;

C.    For Lessee to connect said equipment to and through the electric, water, heat, gas and sewer lines in said premises;

D.    For Lessor to furnish, and for Lessee to use, Lessor's electricity, gas, heat, hot and cold water, which may be necessary for the efficient operation of said equipment, all at Lessor's expense, and to maintain the premises in adequate physical condition for the uses contemplated hereinabove.

**E. To Have and to Hold the Same,** for and during a term of ten years commencing ___MARCH 6, 2000___

In consideration of said demise and the covenants and agreements hereinafter expressed, it is covenanted and agreed as follows:

1.  The Lessor agrees that the residents of the building(s) described above, shall have free and unobstructed access to the demised premises during reasonable hours for the purpose of using such laundry equipment installed therein.

2.  Lessee agrees that Lessee shall have exclusive control and possession of the demised premises. Lessee does hereby give and grant to Lessor the right to use the demised premises for any purpose essential for the operation of the building(s) in which the demised premises are located, provided that such use does not interfere with the Lessee's maintenance and operation of its laundry equipment. The terms and conditions of this Lease are to be strictly construed.

3.  Lessee shall pay to Lessor as rent for the demised premises and for the privileges, services and utilities aforesaid, a sum equal to twenty-five per cent of the dollar amount of Lessee's coin receipts from the aforesaid laundry equipment during the period that this Lease shall continue in full force and effect. The aforesaid payments shall be made to the Lessor at least semi-annually. Lessor guarantees, however, that Lessee shall receive as minimum compensation hereunder the cash equivalent, per day, of the price of one washing and drying cycle per installed washer and dryer, and Lessor agrees that Lessee shall deduct rent otherwise due, if necessary, to attain said compensation. The charges to be made to the residents of said premises for the use of said equipment, and the frequency of collections shall be determined solely by Lessee.

4.  Lessor represents and warrants that Lessor is the owner, beneficial owner, contract purchaser, lessee, or duly-authorized managing agent of the aforesaid premises, and that Lessor has good right and lawful authority to enter into and execute this Lease under all of the terms and provisions herein set forth, and that this Lease will be binding upon Lessor and all future owners, and their heirs, executors, and assigns of the Lessor. It is the intention of the parties hereto that this Lease run with the land and buildings hereinabove described. Lessor further warrants that there is no other Lease or Agreement in effect regarding the demised premises or regarding installation and operation of laundry equipment upon the demised premises and this Agreement shall be governed by the laws of the State of Illinois, with the courts of Cook County having sole and exclusive jurisdiction and Lessor shall be liable for all costs, including attorneys fees, incurred by Lessee in enforcing this Lease.

5.  Lessor covenants and agrees that Lessor will not install or operate, nor permit any person, firm or corporation (other than Lessee) to install or operate, in said premises, or elsewhere in said building(s), any laundry equipment, at any time during the period that this Lease shall continue in full force and effect. Lessor warrants that the premises have adequate utilities and proper venting and there will be no building code violation which adversely affects the ability of Lessee to install, operate or maintain its laundry equipment. All taxes, license fees, and similar charges imposed by any governmental body upon the laundry services at the demised premises shall be borne by Lessor. Lessor shall be responsible for all janitorial and housekeeping services for the laundry room and equipment.

6.  Lessee covenants to equip the laundry room with commercial washing and drying equipment and to operate said laundry equipment in said premises, for use by the residents of said premises, during the period that this Agreement shall continue in full force and effect as herein provided; and during said period, to maintain said equipment on said premises in reasonably good working order for the prudent use thereof, except when unable to do so during necessary repairs or replacements or for any other

reasons beyond Lessee's reasonable control or prevention. In the event Lessor requests the replacement of at least fifty percent or more of Lessee's laundry equipment during any term of this Lease, Lessee may replace said equipment. The initial term, the additional term and subsequent terms, if any, of this Lease shall then be extended for a period of time equal to the initial term. The type, style and quantity of laundry equipment installed shall be at the sole discretion of the Lessee.

7.  Lessor acknowledges that title to the aforesaid laundry equipment (including fixtures, wiring, plumbing and accessories, supplied or installed by Lessee) shall at all times remain vested solely in Lessee and not the Lessor, and further acknowledges that any rider, addendum, or codicil to Lease shall terminate upon change of ownership or change of managing agent or change of management company or sale of property or transfer or assignment of this Lease, notwithstanding anything to the contrary set forth in this Lease or in any such rider, addendum, or codicil to Lease. Lessee acknowledges that the original parties hereto shall have all of the rights, benefits and privileges, both substantive and procedural, granted to the original parties hereto in any rider, addendum, or codicil that may be attached to this Lease and thereby made a part of Lease Agreement, if applicable.

8.  It is further understood and agreed by and between the parties hereto that this Lease shall be extended for an additional period of ten years from the date of its expiration unless Lessor gives to Lessor notice in writing by United States Certified Mail at least 60 days prior to the end of the initial term herein of Lessee's intention not to extend this Lease. At the expiration of the additional period herein, this Lease shall continue for subsequent ten year terms unless terminated by either Lessee or Lessor either at its expiration date of the additional period or any subsequent term herein, by notice in writing strictly conforming to the provisions hereof by United States Certified Mail, to the other party's main office (not any regional office), one to the other, not less than three hundred sixty-five days and not more than three hundred ninety-five days prior to the end of said additional period or any such subsequent term herein. Time is of the essence with respect to this Lease. If property is sold or management is changed subsequent to any written notice provided herein and prior to the end of Lessee's tenancy, then said notice shall be null and void, and shall be considered rescinded.

9.  Upon termination of this Lease, Lessor will not enter into any new Lease for said premises with any third party, without first sending Lessee, by Certified Mail, return receipt requested, a copy of any bona fide offer, and giving Lessee sixty days thereafter to meet the terms of such offer. The notice of termination set forth in paragraph eight shall be null and void and shall be considered rescinded unless Lessor sends to Lessee by Certified Mail, return receipt requested, a copy of any bona fide offer as aforestated, not more than one hundred and eighty days after Lessee's receipt of said notice of termination, and thereafter gives Lessee said right of first refusal.

10.  Lessee agrees to procure and carry public liability insurance coverage (in liability limits of not less than $500,000.00/$500,000.00) insuring against all claims for personal injuries and property damage arising out of the use of said equipment. Lessor shall provide adequate security for the Laundry Room(s) or Laundry Area(s) and for Lessee's laundry equipment therein. In the event of a breach hereof, rent otherwise payable hereunder may be withheld until Lessee is reimbursed for any losses resulting therefrom.

11.  This Lease shall not take effect until accepted by Lessee at office of Lessee in Chicago, Illinois.

LESSOR CLIFF LECLEIR/AGENT

_____  (SEAL)

LESSEE
COMMERCIAL COIN LAUNDRY SYSTEMS

_____

(SEE ATTACHED RIDER TO LEASE)

**EXHIBIT**

GROUP A

RIDER TO THE LAUNDRY ROOM LEASE DATED FEBRUARY 24, 2000
BETWEEN COMMERCIAL COIN LAUNDRY SYSTEMS, 3750 N. CICERO
AVENUE, CHICAGO, ILLINOIS 60641 AS LESSEE AND CLIFF
LECLEIR/AGENT, HOME APARTMENT DEVELOPMENT, 709 CASS
STREET, LACROSSE, WISCONSIN, 54601 AS LESSOR THE
PROPERTY COMMONLY KNOWN AS PARK LACHAUTEAU, 1901 S.
PARK, KOKOMO, INDIANA

A.    LESSEE SHALL GIVE TO LESSOR THE SUM OF $41,000.00, WHICH SUM
IS TO REIMBURSE FOR IMPROVEMENTS MADE OR TO BE MADE BY
LESSOR TO THE LAUNDRY ROOM PREMISES LEASED HEREIN.

B.    THE FIRST TWO SENTENCES OF PARAGRAPH #3 ARE HEREBY MODIFIED
BY THE FOLLOWING:

"LESSEE SHALL PAY TO LESSOR AS RENT FOR THE DEMISED PREMISES
AND FOR THE PRIVILEGES, SERVICES AND UTILITIES AFORESAID, A
SUM EQUAL TO 50% OF THE DOLLAR AMOUNT OF LESSEE'S RECEIPTS
FROM THE AFORESAID EQUIPMENT DURING THE PERIOD THAT THIS
LEASE SHALL CONTINUE IN FULL FORCE AND EFFECT. THE AFORESAID
PAYMENTS SHALL BE ISSUED TO THE LESSOR QUARTERLY."

C.    LESSOR MAY TERMINATE THE LEASE AND RIDER IN THE EVENT LESSEE
FAILS TO PERFORM ANY OF ITS OBLIGATIONS UNDER THE LEASE AND
RIDER, INCLUDING, BUT NOT LIMITED TO SERVICE OF THE
EQUIPMENT, WITH 30 DAYS NOTICE BY U.S. CERTIFIED MAIL,
PROVIDED LESSEE HAS 30 DAYS FROM RECEIPT OF SAID NOTICE TO
CURE SAID DEFECT AS STATED IN SAID NOTICE.

LESSOR:                    LESSEE:

CLIFF LECLEIR/AGENT         COMMERCIAL COIN LAUNDRY SYSTEMS
HOME APARTMENT DEVELOPMENT

  

**CROWN** COIN-METER CO.

***CROWN COIN-METER COMPANY***
***COMMERCIAL COIN LAUNDRY SYSTEMS***
***AMERICAN COIN LAUNDRY***

# FOR SERVICE
# – CALL TOLL-FREE –
# 24 HOURS A DAY

# 1-800-545-1177

THE LAUNDRY MACHINES IN THIS LAUNDRY AREA ARE OWNED AND OPERATED BY CCMC/CCLS/ACL PURSUANT TO A WRITTEN LEASE FOR THESE PREMISES, EXECUTED BY THE OWNER OR AGENT FOR THE OWNER OF THESE PREMISES, OR THEIR PREDE-CESSOR. FOR FURTHER INFORMATION, CALL CCMC/CCLS/ACL AT 773-283-5300. ANY MOVEMENT OR DISCONNECTION OF, OR TAMPERING WITH, THESE MACHINES, WITHOUT PRIOR AUTHORIZATION FROM CCMC/CCLS/ACL, WILL RESULT IN A CIVIL LAWSUIT AND/OR CRIMINAL PROSECUTION.

**EXHIBIT**

tabbies

B

LEASE MEMORANDUM

0034005934

HOWARD CO... ...UTER

00 APR 10 AM 8: 56

MARILYN J. SHIRLEY

COPY

THE LEGAL DESCRIPTION OF
THE PROPERTY IS AS FOLLOWS:

P.I.N. # 053-184-175-0000-0000

COUNTRY CLUB PARK SECTION 6 PART
OF LOT SET 151

THIS LEASE MEMORANDUM SUMMARIZES A LEASE MADE AND ENTERED INTO BY AND BETWEEN CROWN COIN METER COMPANY/COMMERCIAL COIN LAUNDRY SYSTEMS/AMERICAN COIN LAUNDRY, 3750 N. CICERO AVE., CHICAGO, ILLINOIS 60641, LESSEE, AND CLIFF LECLEIR/AGENT, HOME APARTMENT DEVELOPMENT, 709 CASS STREET, LACROSSE, WI 54601 LESSOR.

LESSOR HAS LEASED TO LESSEE THE LAUNDRY ROOM(S) OR LAUNDRY AREA(S) AT THE REAL PROPERTY COMMONLY KNOWN AS PARK LACHAUTEAU
1901 S. PARK, KOKOMO, IN
COUNTY OF    HOWARD    , STATE OF    INDIANA

THE PURPOSE OF SAID LEASE IS FOR LESSEE TO INSTALL, OPERATE, AND MAINTAIN ON SAID PREMISES COMMERCIAL LAUNDRY WASHING AND DRYING EQUIPMENT FOR USE BY THE RESIDENTS OF SAID PROPERTY.  TITLE TO SAID EQUIPMENT (INCLUDING FIXTURES, WIRING, PLUMBING, AND ACCESSORIES SUPPLIED OR INSTALLED BY LESSEE) REMAINS AT ALL TIMES VESTED SOLELY IN LESSEE.  LESSEE DOES NOT HAVE AN OPTION TO PURCHASE THE ABOVE DESCRIBED REAL PROPERTY.  THIS LEASE MEMORANDUM IS SUBJECT TO THE TERMS, PROVISIONS, AND RESTRICTIONS CONTAINED IN SAID LEASE ENTERED INTO BY THE ABOVE NAMED LESSOR AND LESSEE.

BY:                                DATE:    APRIL 6, 2000
    RACHEL S. RUSSO/GENERAL PARTNER
    CCMC/CCLS/ACL

SUBSCRIBED and SWORN to before me this
    6TH        day of    APRIL                        XX  2000

NOTARY PUBLIC, DIANA L. PERHAM #228036,
COUNTY OF COOK, STATE OF ILLINOIS

"OFFICIAL SEAL"
Diana L. Perham
Notary Public, State of Illinois
My Commission Expires 9-5-02

THIS DOCUMENT WAS PREPARED BY RUSSEL G. WINICK, ATTORNEY AT LAW, 1220 IROQUOIS AVENUE, SUITE 100, NAPERVILLE, ILLINOIS 60563 (630) 5...

EXHIBIT

C

## INQUIRY

DATE: 5/2/05

FROM: Nancy  (3:45 PM)

ADDRESS OF PROPERTY: 1901 S. Park

CITY/STATE: Kokomo, IN

NAME OF PERSON CALLING: John

AUTHORITY OF PERSON CALLING: Mngr

TELEPHONE NUMBER: 765-455-2680

REASON FOR CALL: Needs to close one of the L.R. because of mold build up in basement. Wants Machines picked up. I told him someone would have to get back to him on that

COPY

EXHIBIT
D



## COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-8985
FAX: 773/283-0125

May 4, 2005

Park P. LLC
Park Place Apartments
1901 S. Park Road
Kokomo, IN 46902

Re:   1901 S. Park Road
      Kokomo, Indiana

Gentlemen/Ladies:

We have been told that you are the new owner or agent for the owner of the property listed above. For the protection of our Lessors, we do not change our records or pay rent to new owners or agents unless we receive written confirmation of the change in ownership or management. Enclosed for this purpose are our standard New Lessor/Agent Verification and Tax Identification forms. Please take a moment to complete, sign, and return these forms to our office, so that we can direct all future rent payments to you.

Thank you for your cooperation. If you have any questions, please do not hesitate to contact our office.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km
enclosures

EXHIBIT

GROUP E

05/04/2005 09:26 FAX 17732830125                CCLS            #6694/ changed (P)



## COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

May 4, 2005

### NEW LESSOR/AGENT VERIFICATION

Park P. LLC
Park Place Apartments
1901 S. Park Road
Kokomo, IN 46902

                        Re:    1901 S. Park Road
                               Kokomo, Indiana

Gentlemen/Ladies:

We have been informed that you have become the new Lessor or Agent for the new Lessor of our leased laundry room(s) or area(s) at the above referenced property, and that your address is as follows:

              Park P. LLC
              Park Place Apartments
              1901 S. Park Road
              Kokomo, IN 46902

So that we can change our records and ensure their accuracy, Please specify below whether you are the owner or the agent for the owner.  Check the applicable boxes and fill in the appropriate information:

☒  I am now the **OWNER** of this property.     ☐  I am now the **AGENT** for the owner of
    My address is:                                  this property.  The owner is:

Name : GABRIEL NARANJO                           _____

Address: 25 Rensselaer Road                      _____

ESSEX FELLS NJ 07021                             _____

Phone Number: 973 228 3666                       Phone Number:_____

Date this became effective: 4/29/05             Date this became effective:_____

All correspondence and rent should be mailed to:

Name :  SAME

Address:_____

_____

_____

Signed
By: _GABRIEL NARANJO_____          Date: 5/4/05
    Print Name                          _OWNER_
                                        Title

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

May 4, 2005

Park P. LLC
Park Place Apartments
1901 S. Park Road
Kokomo, IN 46902

                    Re:    1901 S. Park Road
                           Kokomo, Indiana

Gentlemen/Ladies:

Because rent is to be paid to you as our landlord at the above property, the United States Tax Code, Section 6109, requires you to provide us with your taxpayer identification number (FEIN) or Social Security number. Failure to provide your correct taxpayer identification number or Social Security number could subject you to Internal Revenue Service penalties, as well as an I.R.S.-imposed 31% withholding penalty from all rental monies otherwise payable.

In order to comply with these Federal Tax Laws and to insure that you receive all of the rent due to you, please fill out this form and return it to us immediately:

(A) _20 - 2760 555_    Taxpayer Identification Number or Social Security Number.

(B) _____We are incorporated in the state of _____

_____We are a partnership registered in the state of _____

_LLC_ Other. (please specify) _INDIANA_____

_____

(C) _____    Please print the exact name and address of partnership, corporation or other, if different from above.

_____

_____

_Signature_                    _5/4/05_
Signature            Date

_GABRIEL NARANHO_
Print your name here        Title

Form **W-9**
(Rev. January 1993)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give this form to
the requester. Do
NOT send to IRS.

Name (If joint names, list first and circle the name of the person or entity whose number you enter in Part I below. See instructions on page 2 if your name has changed.)

GABRIEL NARANJO

Business name (Sole proprietors: see instructions on page 2.) If you are exempt from backup withholding, complete this form and enter "EXEMPT" in Part II below.

PARK 2 LLC (PARK PLACE APARTMENTS)

Address (number and street)

1901 S PARK ROAD

List account number(s) here (optional)

City, state, and ZIP code

KOKOMO IN 46902

**Part I** Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). For sole proprietors, see the instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see How To Obtain a TIN below.

Note: If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.

Social security number

OR

Employer Identification number

2 0 2 7 6 0 5 5 5

**Part II** For Payees Exempt From Backup Withholding (See Exempt Payees and Payments on page 2)

Requester's name and address (optional)

**Certification.**—Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

**Certification Instructions.**—You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, the acquisition or abandonment of secured property, contributions to an individual retirement arrangement (IRA), and generally payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (Also see Signing the Certification on page 2.)

Sign Here | Signature ►                Date ► 5/4/05

---

Section references are to the Internal Revenue Code.

**Purpose of Form.**—A person who is required to file an information return with the IRS must obtain your correct TIN to report income paid to you, real estate transactions, mortgage interest you paid, the acquisition or abandonment of secured property, or contributions you made to an IRA. Use Form W-9 to furnish your correct TIN to the requester (the person asking you to furnish your TIN) and, when applicable, (1) to certify that the TIN you are furnishing is correct (or that you are waiting for a number to be issued), (2) to certify that you are not subject to backup withholding, and (3) to claim exemption from backup withholding if you are an exempt payee. Furnishing your correct TIN and making the appropriate certifications will prevent certain payments from being subject to backup withholding.

Note: If a requester gives you a form other than a W-9 to request your TIN, you must use the requester's form.

**How To Obtain a TIN.**—If you do not have a TIN, apply for one immediately. To apply, get Form SS-5, Application for a Social Security Card (for individuals), from your local office of the Social Security Administration, or Form SS-4, Application for Employer Identification Number (for businesses and all other entities), from your local IRS office.

To complete Form W-9 if you do not have a TIN, write "Applied for" in the space for the TIN in Part I, sign and date this form, and give it to the requester. Generally, you will then have

60 days to obtain a TIN and furnish it to the requester. If the requester does not receive your TIN within 60 days, backup withholding, if applicable, will begin and continue until you furnish your TIN to the requester. For reportable interest or dividend payments, the payer must exercise one of the following options concerning backup withholding during this 60-day period. Under option (1), a payer must backup withhold on any withdrawals you make from your account after 7 business days after the requester receives this form back from you. Under option (2), the payer must backup withhold on any reportable interest or dividend payments made to your account, regardless of whether you make any withdrawals. The backup withholding under option (2) must begin no later than 7 business days after the requester receives this form back. Under option (2), the payer is required to refund the amounts withheld if your certified TIN is received within the 60-day period and you were not subject to backup withholding during that period.

Note: Writing "Applied for" on this form means that you have already applied for a TIN OR that you intend to apply for one in the near future.

As soon as you receive your TIN, complete another Form W-9, include your TIN, sign and date the form, and give it to the requester.

**What Is Backup Withholding?**—Persons making certain payments to you after 1992 are required to withhold and pay to the IRS 31% of such payments under certain conditions. This is called "backup withholding." Payments that could be subject to backup withholding include interest,

dividends, broker and barter exchange transactions, rents, royalties, nonemployee compensation, and certain payments from fishing boat operators, but do not include real estate transactions.

If you give the requester your correct TIN, make the appropriate certifications, and report all your taxable interest and dividends on your tax return, your payments will not be subject to backup withholding. Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. The IRS notifies the requester that you furnished an incorrect TIN, or

3. You are notified by the IRS that you are subject to backup withholding because you failed to report all your interest and dividends on your tax return (for reportable interest and dividends only), or

4. You do not certify to the requester that you are not subject to backup withholding under 3 above (for reportable interest and dividend accounts opened after 1983 only), or

5. You do not certify your TIN. This applies only to reportable interest, dividend, broker, or barter exchange accounts opened after 1983, or broker exchange accounts considered inactive in 1983.

Except as explained in 5 above, other reportable payments are subject to backup withholding only if 1 or 2 above applies. Certain payees and payments are exempt from backup withholding and information reporting. See Payees and Payments Exempt From

Cat. No. 10231X

Form **W-9** (Rev. 1-93)

3/10/93    671

M. Kris Michaels
Commercial Coin Laundry
3750 N. Cicero Avenue
Chicago, IL 60641



**June 9, 2005**

Re:   Park Place Apts, Kokomo, IN

Dear M. Michaels,

After several conversations with your company we would like to reiterate our position about the laundry in question.

There are presently two laundries at Park Place. The larger one is in the center of the courtyard, in front of the office in an independent building. The smaller one is at the farthest corner of the complex and is situated below occupied apartments.  Before purchasing, the laundries were inspected. They were both found to be in terrible shape but the smaller one was flooded with leaks from the machines and slippery algae had formed on the ground. There were clear signs that illegal activities were taking place in the laundry.  Our first impression was that your company did nothing more than collect coins, not caring about safety or liability.

We took over the property May 1st, 2005 and gave the order to clean the laundry rooms and to close the smaller laundry temporarily. You were called immediately and were informed about the situation. We suggested that you inspect the laundry, be aware of the liability and decide how to proceed. Your reply was a letter of May 16 stating that you were going to remove the machines until the renovations can be finished. Renovation in itself is not a problem. The real problem is the hazard of the location. The laundry is located below and next to occupied apartments.  For us, this liability is too great, especially when the machines are not checked for leaks or proper installation.

If your company accepts full liability for any eventual accident such as fire, slip and fall or electrical shock — we will open the laundry room immediately.  Please let us know in writing of your acceptance.



EXHIBIT

F

For your information, and as per our conversation of yesterday with Mr. Silverstein, the complex was bought in a foreclosure. The complex was totally mismanaged for years and the norm was to receive two pages of police reports per month. At this point, we are just starting the turn-around of the property. We began with the repaving of the parking lot and screening the residents. We expect to be running a smooth operation within three years.

It is our intention to honor the agreement that you made with the previous owner until the end of your contract.  However, our impression is that the previous owner cared about nothing more than the income – ignoring safety, liability, well-being, renovations, contractors, workers and residents.  Our style of management is totally different and our primary concerns are liability, safety and security. We truly believe that the small laundry is nothing but a hazard.

We would also like to know the accounting procedure that you follow when collecting coins at Park Place.

Hoping to hear from you, we remain,

Sincerely,

Gabriel Naranjo
PARK P, LLC

Tel:   973 228 3666  (office)
Fax:  973 228 9568
Cell:  215 519 0343


CC:   Thomas Miller, Esq.
Certified Mail


1901 South Park Road,  Kokomo, IN  46902



# COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue  •  Chicago, Illinois 60641  •  Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

May 17, 2005

Park Place LLC
Gabriel Naranjo
1901 S. Park Road
Kokomo, IN  46902

Re:    1901 S. Park Road
Kokomo, Indiana

Dear Mr. Naranjo:

On May 3, 2005 our Field Representative reported that washer #40617 at the above referenced property was burglarized and/or vandalized.  This is a very serious problem.  Aside from the destruction of our property, it interferes with an important service to the residents and **introduces an element of physical danger to them.**

We have repaired or replaced the damaged machine(s), or are in the process of doing so.  Following are suggestions to improve the security of the laundry facilities:

1.    Tenant access <u>only</u> to the laundry room should be limited to the hours between 7:00 a.m. and 10:00 p.m.  **<u>LAUNDRY ROOMS MUST BE LOCKED AT ALL OTHER TIMES.</u>**

2.    Laundry room and/or building access doors should be secured with **deadbolt** locks.

3.    Any windows should be secured.

4.    Doors should have security bars after hours.

5.    There should be adequate lighting in the laundry room itself and all corridors and means of access leading to the laundry room.

6.    Tenants should be informed of the problem, and asked for their cooperation to notify management of the presence of strangers or suspicious people in the laundry room.

Thank you for your cooperation.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels

**EXHIBIT**

GROUP  G

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

June 22, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 S. Park Road
       Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems is in receipt of your letter dated June 9, 2005, regarding the above referenced property.

Our Field Representative has inspected the laundry rooms at this property and submitted a detailed report. Our Field Representative met with your on-site maintenance personnel. They found water standing in Laundry Room "A". Your maintenance personnel had to <u>clear the drain</u> so the water would go down. Your maintenance personnel requested that the washing machines be checked for leaks. All of the washing machines were assessed by both our Field Representative and your Maintenance Person. <u>No leaks were found.</u>

All of the dryers were also tested and all of the washers and dryers in this laundry room were found to be in proper working order.

Our Field Representative reported that Laundry Room "B" is closed and he could only gain entry through your personnel. He further reported that the laundry room is moldy and the lights have been removed. He also reported that there is a sign indicating that the laundry room has been closed **permanently**. According to your on-site manager, the source of the water and mold in Laundry Room "B" has not yet been determined. She also stated that the laundry room was shut down due to the continued expense of trying to find this source.

Again, we are sympathetic to your situation. However, Commercial Coin Laundry Systems has a legal right to operate its washers and dryers in BOTH of the laundry rooms at this property, as per the terms of the laundry room lease agreement. Enclosed is a copy of the laundry room lease agreement, which has been highlighted for convenience.

- You are responsible for maintaining the leased premises in adequate physical condition for the use of the equipment.
- You are responsible for providing adequate utilities necessary for the operation of the washers and dryers
- There are to be no building code violations which adversely affect the operation of the washers and dryers

- You are responsible for janitorial and housekeeping services for the laundry room and equipment.
- You are responsible for providing adequate utilities necessary for the laundry rooms and laundry equipment.

The smaller laundry room must be cleaned and renovated so our laundry machines installed in that laundry room can resume operation. We understand that this may take some time and we will be patient, however, we will not wait forever. Please give us a time frame of how long you believe it will take to renovate this laundry area. As stated in previous correspondence, we will temporarily remove our laundry machines from this area during renovations. Once the renovations are complete, we will reinstall our equipment and a lease extension will be required to compensate for our down-time.

We were previously informed that several apartment units currently have private washers and dryers installed. This is a direct violation of the laundry room lease agreement. Any privately owned washers and dryers must be removed from the premises immediately.

We are willing to work with you while you make improvements to this property. However, we cannot compromise our leasehold rights. The smaller laundry room must be renovated in a timely fashion.

If you have any questions, please do not hesitate to contact our office. If you do not understand the terms of the laundry room lease agreement, or YOUR leasehold obligations, we strongly suggest you consult your attorney.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km
enc.

cc: Russel Winick, Attorney at Law

Certified Mail # 7001 2510 0006 7157 5498



**COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

July 14, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 S. Park Road<br>Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems wrote to you on June 22, 2005 regarding the above referenced property. You phoned our office on June 27, 2005 in response to our letter.

You stated that you would be responding in writing. We **must** have something from you, <u>in writing</u>, stating your plans for this property.

Recent reports from our Field Representative indicate that both laundry rooms are open, the office is closed for remodeling and new roofs are being put on the property.

The laundry room with the mold problem eventually must be returned to a clean, safe and functional environment. As we have previously stated, we are sympathetic to your situation. However, we cannot compromise our leasehold rights.

We have been patient and will remain patient. We are trying to work with you.

We must have a written response from you, stating your plans for this property, **specifically the laundry rooms, including** <u>dates</u>**,** <u>schedules</u> **and** <u>time frames</u>**.**

If you have any questions, please do not hesitate to contact our office.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km
cc: Russel Winick, Attorney at Law

Certified Mail # 7001 2510 0006 7157 5412



# COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

July 27, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 S. Park Road
       Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems is in receipt of your letters dated July 22, 2005 regarding the above referenced property.

Enclosed is an Audited Collection Request Form to be completed and returned to our office. This will allow you or an authorized agent to be present for 3 consecutive collections, free of charge. This should allow you to determine an income average.

We will again arrange for our Field Representative to go to the property and assess all of the washers and dryers as well as the condition of the laundry rooms. We will have him meet with Mr. Shockney, as you requested.

We will try to have our Field Representative meet with Mr. Shockney whenever he is at the property, however, we must remind you that according to the terms of the laundry room lease agreement, Commercial Coin Laundry Systems has <u>exclusive control and possession</u> of the laundry rooms at this property, which are <u>our leased premises</u>. We have the right to enter our premises and service and collect from our property as needed.

Regarding the use of privately owned washers and dryers, there is nothing "grandfathered" regarding this lease agreement. <u>There are to be no other laundry machines installed or in use ANYWHERE at the property</u> You are the current owner of this property. It is your responsibility to enforce the terms of the laundry room lease agreement.

Again, we must know when you expect the "problem" laundry room to be returned to a safe and functional environment for tenants. Any plumbing or electrical problems are <u>your responsibility</u> to correct. You are responsible for providing adequate utilities necessary for the operation of the washers and dryers. Commercial Coin Laundry Systems installs its washers and dryers to existing utilities.

Regardless of what the previous owner may or may not have done at this property, you are the current owner and you are responsible for maintaining the premises.

If you have any questions, or if we can be of any further assistance, please do not hesitate to contact our office.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km



## COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

July 27, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:     1901 S. Park Road
Kokomo, Indiana

Dear Mr. Naranjo:

### AUDITED COLLECTION REQUEST FORM

It is our understanding that you would like to have the sealed coin vaults in our laundry equipment opened in your presence or in the presence of your agent and the monies counted in your presence or in the presence of your agent. We are willing to give you this option for 3 consecutive collections, free of charge. This should allow you to determine an income average. There will be a charge of 15% of the gross collection for any additional audited collections.

If you desire this service, in the space below designated "ACCEPTED BY", please execute your acceptance and agreement to the terms herein. Also, designate the authorized agent in the space provided below.

ACCEPTED BY:

_____          _____
SIGNATURE                                 PRINT NAME

Date:_____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PRINT CLEARLY

_____          _____
Authorized Agent                         Phone

_____          _____
Address                                  City

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

August 9, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 S. Park Road
Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems is in receipt of your letters dated July 27, 2005 and August 4, 2005. We will answer all of your points referenced in your correspondence and your recent phone call.

It appears that because we recognize your various building problems, and because we have offered to work with you while you correct these problems, you have construed this as a sign of weakness and your accusations and demands are leading you towards a legal confrontation.

A legal confrontation will not be pleasant.

Enclosed is a copy of the laundry room lease agreement, which has been highlighted for your convenience. We suggest that you **carefully read** the highlighted portions.

### ACCESS

Commercial Coin Laundry Systems is just like any other tenant at this property. We have the legal right to enter and leave <u>our</u> leased premises whenever necessary to assess machines, perform repairs or make collections or any other obligations we have in accordance with the terms of the laundry room lease agreement. Remember that the laundry rooms are **OUR** leased premises. However, while our Field Representatives are at the property, they will consult with Mr. Shockney.

### PRIVATE WASHERS AND DRYERS

We <u>know</u> that there are private washers and dryers in use in the apartments. Only for the time being, we will not address this issue.

### CONDITION OF MACHINES

Our Field Representative has been at the property several times in the past few months and has submitted very detailed reports regarding the condition of the machines. The machines are functioning properly. The machines **are not** leaking. Our Field Representative has indicated that there is dampness and pools of water on the floor AWAY from where the machines are located.

We believe your leakage problem may be from **drainage problems, seepage, foundation cracks** or **leaks from apartments** from **bathtubs, sinks, toilets** or the use of privately owned washing machines.  Water seeks its own level and there are many sources that you need to investigate.

## INCOME

Please refer to the third sentence of paragraph #3 of the laundry room lease agreement.  Commercial Coin Laundry Systems is guaranteed the cash equivalent of one washer use per installed washer and one dryer use per installed dryer before rent is paid to you.  Enclosed is a statement of collections for the period of April 29, 2005 to the present.  Keep in mind that you closed one laundry room for a period of time and therefore, those machines were not producing income.  There is no rent due to you at this time, in accordance with the terms of the laundry room lease agreement.  Income must improve before rent will be paid.

Previously, income levels were approximately **$2,000.00** per month.  Income for 2005 has dropped to **$325.00** per month.  It must be obvious to you that we cannot continue tolerating this loss.

## AUDITED COLLECTIONS

We understand your concerns regarding verification of income.  However, your insinuations that we are not reporting the true and accurate income is insulting.  Enclosed is another Audited Collection Request Form.  You will see that we are temporarily offering unlimited audited collections, until you have been satisfied.  You have mentioned several people who are on your on-site staff.  You can freely appoint one of these people to serve as your agent and accompany our Field Representative during collections.

## INSURANCE COVERAGE

A Certificate of Insurance will be sent to your on-site office directly from our insurance carrier.

Mr. Naranjo, there is an old saying, "You can catch more flies with honey than you can with vinegar".  The basic problem here is that there is no income due to your water problems and the use of privately owned washers and dryers.  The quicker these issues are resolved, the quicker income will start to improve at this property.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein
SS:km
enc.

*Statement for PARK1901*

## Owner

```
   Owner:  60947
    Name:  PARK PLACE LLC
  Addr 1:  GABRIEL NARANJO
  Addr 2:  1901 S. PARK ROAD
    City:  KOKOMO           St:  IN     Zip:  46902
   Phone:  973-228-3666
Tax ID No:  202760555      FEIN1/SSN2:  1     Ctracts:
```

## Property

```
Property:  PARK1901
 Address:  1901 S. PARK
    City:  KOKOMO           St:  IN
    Apts:  254      Route:  11301
Salesprsn:  BR      Class:
```

## Income / Expense

Property:  PARK1901

| Period End | Date | Descript | Location | Income | Payout | Rent | Check No |
|---|---|---|---|---|---|---|---|
| 2005-08-09 | 2005-05-23 | Coin | PARK1901-1 | 359.00 | 0.00 | 0.00 | |
| | 2005-06-22 | Coin | PARK1901-1 | 191.00 | 0.00 | 0.00 | |
| | 2005-07-12 | Coin | PARK1901-1 | 191.75 | 0.00 | 0.00 | |
| | | | | 741.75 | 0.00 | 0.00 | |
| | | | | 741.75 | 0.00 | 0.00 | |



# COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue  •  Chicago, Illinois 60641  •  Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

August 9, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 S. Park Road
Kokomo, Indiana

Dear Mr. Naranjo:

## AUDITED COLLECTION REQUEST FORM

It is our understanding that you would like to have the sealed coin vaults in our laundry equipment opened in your presence or in the presence of your agent and the monies counted in your presence or in the presence of your agent.  We are willing to give you this option, <u>temporarily</u>, for unlimited collections, free of charge.

If you desire this service, in the space below designated "ACCEPTED BY", please execute your acceptance and agreement to the terms herein. Also, designate the authorized agent in the space provided below.

ACCEPTED BY:

_____         _____
**SIGNATURE**                                                    PRINT NAME

Date:_____
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
PRINT CLEARLY

_____         _____
Authorized Agent                                               Phone

_____         _____
Address                                                        City

This Lease made this ___24TH___ day of ___FEBRUARY___, ___2000___, at Chicago, Illinois between

COMMERCIAL COIN LAUNDRY SYSTEMS hereinafter called Lessee, and

CLIFF LECLEIR/AGENT
HOME APARTMENT DEVELOPMENT
709 CASS STREET
LACROSSE, WI  54601

hereinafter called Lessor.

Witnesseth, that Lessor, for and in consideration of the covenants and agreements hereinafter contained, does hereby demise and lease to the Lessee for use only by the Lessee, the laundry room(s) or laundry area(s) in the building(s) commonly known as:

1901 S. PARK (PARK LACHAUTEAU)

KOKOMO, INDIANA _____ containing ___254___ apartments,
(A further description or drawing of the laundry room(s) or laundry area(s) may be attached hereto as Schedule "A") and legally described as:
(Either party hereto reserves the right to insert the correct legal description of said Premises at any time hereafter by attaching a rider hereto.)

For the following purposes:

A.    For Lessee to install, place and operate on said premises commercial laundry equipment for the use by the residents of said premises;

B.    For Lessee to use and occupy said space in close proximity to the plumbing, gas, electrical and sewer fixtures and facilities in said laundry room(s) or laundry area(s) for the efficient operation of said equipment;

C.    For Lessee to connect said equipment to and through the electric, water, heat, gas and sewer lines in said premises;

D.    For Lessor to furnish, and for Lessee to use, Lessor's electricity, gas, heat, hot and cold water, which may be necessary for the efficient operation of said equipment, all at Lessor's expense, and to maintain the premises in adequate physical condition for the uses contemplated hereinabove.

E. To Have and to Hold the Same, for and during a term of ten years commencing ___MARCH 6, 2000___

In consideration of said demise and the covenants and agreements hereinafter expressed, it is covenanted and agreed as follows:

1.  The Lessor agrees that the residents of the building(s) described above, shall have free and unobstructed access to the demised premises during reasonable hours for the purpose of using such laundry equipment installed therein.

2.  Lessor agrees that Lessee shall have exclusive control and possession of the demised premises. Lessee does hereby give and grant to Lessor the right to use the demised premises for any purpose essential for the operation of the building(s) in which the demised premises are located, provided that such use does not interfere with the Lessee's maintenance and operation of its laundry equipment. The terms and conditions of this Lease are to be strictly construed.

3.  Lessee shall pay to Lessor as rent for the demised premises and for the privileges, services and utilities aforesaid, a sum equal to twenty-five per cent of the dollar amount of Lessee's coin receipts from the aforesaid laundry equipment during the period that this Lease shall continue in full force and effect. The aforesaid payments shall be made to the Lessor at least semi-annually. Lessor guarantees, however, that Lessee shall receive as minimum compensation hereunder the cash equivalent, per day, of the

reasons beyond Lessee's reasonable control or prevention. In the event Lessor requests the replacement of at least fifty percent or more of Lessee's laundry equipment during any term of this Lease, Lessee may replace said equipment. The initial term, the additional term and subsequent terms, if any, of this Lease shall then be extended for a period of time equal to the initial term. The type, style and quantity of laundry equipment installed shall be at the sole discretion of the Lessee.

7.  Lessor acknowledges that title to the aforesaid laundry equipment (including fixtures, wiring, plumbing and accessories, supplied or installed by Lessee) shall at all times remain vested solely in Lessee and not the Lessor, and further acknowledges that any rider, addendum, or codicil to Lease shall terminate upon change of ownership or change of managing agent or change of management company or sale of property or transfer or assignment of this Lease, notwithstanding anything to the contrary set forth in this Lease or in any such rider, addendum, or codicil to Lease. Lessee acknowledges that the original parties hereto shall have all of the rights, benefits and privileges, both substantive and procedural, granted to the original parties hereto in any rider, addendum, or codicil that may be attached to this Lease and thereby made a part of Lease Agreement, if applicable.

8.  It is further understood and agreed by and between the parties hereto

**COIN LAUNDRY SYSTEMS**

COMMERCIAL

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

September 22, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 Park
Kokomo, Indiana

Dear Mr. Naranjo:

By now you have received the letter from our attorney stating our legal leasehold position at the above referenced property.

We are aware that you are renovating the property, and about half of your units are vacant.

We refer you to our letter of August 9, 2005 (copy enclosed) in which we discussed, the use of private machines, the condition of our machines, income and audited collections. We offered you audited collections, however, you have not returned the authorization form.

We have not received any response from you as to what type of renovations are being done, when these renovations will be complete and when we can expect the property, laundry rooms and tenancy to return to normal.

Our Field Representative recently reported that the laundry room containing 11 washers and 10 dryers is not being used.

I expect to hear from you soon, regarding the details of the renovations at this property, particularly to the laundry areas. Please call me at 1-800-325-6985.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein
SS:km
enc.

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

August 9, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 S. Park Road
       Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems is in receipt of your letters dated July 27, 2005 and August 4, 2005. We will answer all of your points referenced in your correspondence and your recent phone call.

It appears that because we recognize your various building problems, and because we have offered to work with you while you correct these problems, you have construed this as a sign of weakness and your accusations and demands are leading you towards a legal confrontation.

A legal confrontation will not be pleasant.

Enclosed is a copy of the laundry room lease agreement, which has been highlighted for your convenience. We suggest that you <u>carefully read</u> the highlighted portions.

## ACCESS

Commercial Coin Laundry Systems is just like any other tenant at this property. We have the legal right to enter and leave <u>our</u> leased premises whenever necessary to assess machines, perform repairs or make collections or any other obligations we have in accordance with the terms of the laundry room lease agreement. Remember that the laundry rooms are <u>OUR</u> leased premises. However, while our Field Representatives are at the property, they will consult with Mr. Shockney.

## PRIVATE WASHERS AND DRYERS

We <u>know</u> that there are private washers and dryers in use in the apartments. Only for the time being, we will not address this issue.

## CONDITION OF MACHINES

Our Field Representative has been at the property several times in the past few months and has submitted very detailed reports regarding the condition of the machines. The machines are functioning properly. The machines are <u>not</u> leaking. Our Field Representative has indicated that there is dampness and pools of water on the floor AWAY from where the machines are located.

We believe your leakage problem may be from drainage problems, seepage, foundation cracks or leaks from apartments from bathtubs, sinks, toilets or the use of privately owned washing machines. Water seeks its own level and there are many sources that you need to investigate.

## INCOME

Please refer to the third sentence of paragraph #3 of the laundry room lease agreement. Commercial Coin Laundry Systems is guaranteed the cash equivalent of one washer use per installed washer and one dryer use per installed dryer before rent is paid to you. Enclosed is a statement of collections for the period of April 29, 2005 to the present. Keep in mind that you closed one laundry room for a period of time and therefore, those machines were not producing income. There is no rent due to you at this time, in accordance with the terms of the laundry room lease agreement. Income must improve before rent will be paid.

Previously, income levels were approximately $2,000.00 per month. Income for 2005 has dropped to $325.00 per month. It must be obvious to you that we cannot continue tolerating this loss.

## AUDITED COLLECTIONS

We understand your concerns regarding verification of income. However, your insinuations that we are not reporting the true and accurate income is insulting. Enclosed is another Audited Collection Request Form. You will see that we are temporarily offering unlimited audited collections, until you have been satisfied. You have mentioned several people who are on your on-site staff. You can freely appoint one of these people to serve as your agent and accompany our Field Representative during collections.

## INSURANCE COVERAGE

A Certificate of Insurance will be sent to your on-site office directly from our insurance carrier.

Mr. Naranjo, there is an old saying, "You can catch more flies with honey than you can with vinegar". The basic problem here is that there is no income due to your water problems and the use of privately owned washers and dryers. The quicker these issues are resolved, the quicker income will start to improve at this property.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein
SS:km
enc.



**COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue  •  Chicago, Illinois 60641  •  Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

October 3, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 Park
       Kokomo, Indiana

Dear Mr. Naranjo:

Two of our Field Representatives were recently at the above referenced property.

The service technician for this property was at the property on September 23, 2005. He reported that dryer #40665 was vandalized with graffiti. He cleaned the machine to the best of his ability.

The collector for this property was at the property on September 26, 2005. He reported that in the laundry room which is open, several coin boxes will need to be drilled out because the coin box locks have been crazy glued shut.

This type of activity is unacceptable and <u>will not be tolerated</u>.

Enclosed is a copy of the laundry room lease agreement for the above referenced property which has been highlighted. Under the terms of the laundry room lease agreement, it is your responsibility to protect our laundry machines from any such theft and/or vandalism.

We expect that you will provide security and closely monitor laundry room activity.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein
SS:km
enc.

This Lease made and entered into this _____ day of _____, by and between
COMMERCIAL COIN LAUNDRY SYSTEMS hereinafter called Lessee, and

CLIFF LECLEIR/AGENT
HOME APARTMENT DEVELOPMENT
709 CASS STREET
LACROSSE, WI 54601

hereinafter called Lessor.

Witnesseth, that Lessor, for and in consideration of the covenants and agreements hereinafter contained, does hereby demise and lease to the Lessee for use only by the Lessee, the laundry room(s) or laundry area(s) in the building(s) commonly known as:

1901 S. PARK (PARK LACHAUTEAU)
_____

KOKOMO, INDIANA _____ containing ___254___ apartments,
(A further description or drawing of the laundry room(s) or laundry area(s) may be attached hereto as Schedule "A") and legally described as:
(Either party hereto reserves the right to insert the correct legal description of said Premises at any time hereafter by attaching a rider hereto.)

For the following purposes:

A.   For Lessee to install, place and operate on said premises commercial laundry equipment for the use by the residents of said premises;

B.   For Lessee to use and occupy said space in close proximity to the plumbing, gas, electrical and sewer fixtures and facilities in said laundry room(s) or laundry area(s) for the efficient operation of said equipment;

C.   For Lessee to connect said equipment to and through the electric, water, heat, gas and sewer lines in said premises;

D.   For Lessor to furnish, and for Lessee to use, Lessor's electricity, gas, heat, hot and cold water, which may be necessary for the efficient operation of said equipment, all at Lessor's expense, and to maintain the premises in adequate physical condition for the uses contemplated hereinabove.

E. To Have and to Hold the Same, for and during a term of ten years commencing MARCH 6, 2000

In consideration of said demise and the covenants and agreements hereinafter expressed, it is covenanted and agreed as follows:

1.  The Lessor agrees that the residents of the building(s) described above, shall have free and unobstructed access to the demised premises during reasonable hours for the purpose of using such laundry equipment installed therein.

2.  Lessor agrees that Lessee shall have exclusive control and possession of the demised premises. Lessee does hereby give and grant to Lessor the right to use the demised premises for any purpose essential for the operation of the building(s) in which the demised premises are located, provided that such use does not interfere with the Lessee's maintenance and operation of its laundry equipment. The terms and conditions of this Lease are to be strictly construed.

3.  Lessee shall pay to Lessor as rent for the demised premises and for the privileges, services and utilities aforesaid, a sum equal to twenty-five per cent of the dollar amount of Lessee's coin receipts from the aforesaid laundry equipment during the period that this Lease shall continue in full force and effect. The aforesaid payments shall be made to the Lessor at least semi-annually. Lessor guarantees, however, that Lessee shall receive as minimum compensation hereunder the cash equivalent, per day, of the _____

reasons beyond Lessee's reasonable control or prevention. In the event Lessor requests the replacement of at least fifty percent or more of Lessee's laundry equipment during any term of this Lease, Lessee may replace said equipment. The initial term, the additional term and subsequent terms, if any, of this Lease shall then be extended for a period of time equal to the initial term. The type, style and quantity of laundry equipment installed shall be at the sole discretion of the Lessee.

7.  Lessor acknowledges that title to the aforesaid laundry equipment (including fixtures, wiring, plumbing and accessories, supplied or installed by Lessee) shall at all times remain vested solely in Lessee and not the Lessor, and further acknowledges that any rider, addendum, or codicil to Lease shall terminate upon change of ownership or change of managing agent or change of management company or sale of property or transfer or assignment of this Lease, notwithstanding anything to the contrary set forth in this Lease or in any such rider, addendum, or codicil to Lease. Lessee acknowledges that the original parties hereto shall have all of the rights, benefits and privileges, both substantive and procedural, granted to the original parties hereto in any rider, addendum, or codicil that may be attached to this Lease and thereby made a part of Lease Agreement, if applicable.

8.  It is further understood and agreed by and between the parties hereto that this Lease shall be extended for an additional period of ten years from



## COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

November 16, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:   1901 S. Park Road
Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems is in receipt of your letter dated October 29, 2005
(postmarked November 4, 2005).

We have read the exaggerated report from Mr. Shockney from October 4, 2005. <u>Our Field
Representative was at the property the next day on October 5, 2005</u> and discussed the problem
with your on-site personnel.

New dryer venting needs to be installed. Our Field Representative suggested that new dryer
venting be put in when the new siding is installed on the building. The siding contractor said he
would cut the holes and install the vents for a fee. Commercial Coin would then have to
reconnect its venting.

The smoke alarms went off due to a BUILDING DRYER VENTING PROBLEM. There was no
fire. The heat and steam from the dryer exhaust set off the alarms. Under the terms of the
laundry room lease agreement, it is your responsibility to provide PROPER VENTING.
Commercial Coin Laundry Systems connects its dryers to existing building venting. We are only
responsible to maintain any venting we supply which connects from the back of the dryer to the
building dryer venting system.

This incident and all prior incidents you keep blaming on the condition of the laundry machines
or the quality of installation are all caused by inadequacies in the building structure or utility
installation. Commercial Coin Laundry Systems installs it equipment to EXISTING utilities and
EXISTING venting. You are responsible for providing <u>adequate</u> utilities and <u>proper</u> venting.
Your lack of properly maintaining the property and the laundry rooms is the root of the problems
with the laundry machines.

We suggest that you have the proper venting installed during your renovations.

Furthermore, your residents can call our 24-hour toll-free service number at anytime to request
refunds for lost money directly from our office.

If you have any questions, please do not hesitate to contact our office.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue  •  Chicago, Illinois 60641  •  Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

December 14, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:     1901 Park
        Kokomo, Indiana

Dear Mr. Naranjo:

We recently received a report from our Field Representative regarding the condition of the two laundry rooms at the above referenced property.  He was at the property on December 12, 2005.

He has reported that conditions in the main, functional laundry room have slightly improved. The laundry room has been painted and it is heated and well lit.  He also reported that there is a new entry door with a secure lock.

Conditions at the other laundry room, however, have not improved and are actually getting worse.

- The walls and ceiling are still moldy and parts of the ceiling are falling or have fallen.
- There is insufficient lighting
- Most of the floor tiles are either broken or missing
- The building thermostat is broken and the laundry room is very cold
- There is no fire extinguisher in this laundry room

This laundry room appears to be abandoned and no improvements are being made.

We have asked again and again that we be informed of what your plans are for this laundry room. To date we have not received a detailed response.

It is your responsibility to renovate and properly maintain the laundry room.  You will be responsible for any damage which has or may occur to our laundry machines.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km



# COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue  •  Chicago, Illinois 60641 •  Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

January 3, 2006

Gabriel Naranjo
Park Place LLC
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 Park
       Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems is in receipt of your letter dated December 14, 2005 regarding the above referenced property.

Your calculations are inaccurate.

Please refer to our letters of August 9, 2005 and September 22, 2005 (copies enclosed). These letters explained why no rent is due to you at this time and also offered you to be present during collections.

**You never returned the authorization form**.

Additionally, we informed you of our Field Representatives report from October 5, 2005 in our letter of November 16, 2005 (copy enclosed).

You continue to ignore our requests for a detailed report from you as to what you are going to do to renovate the second laundry room at this property. You have a leasehold obligation to provide functional laundry rooms.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km
enc.

cc: Russel Winick, Attorney at Law

Certified Mail #7005 2570 0000 2910 5146



# COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue  •  Chicago, Illinois 60641  •  Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

September 22, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 Park
Kokomo, Indiana

Dear Mr. Naranjo:

By now you have received the letter from our attorney stating our legal leasehold position at the above referenced property.

We are aware that you are renovating the property, and about half of your units are vacant.

We refer you to our letter of August 9, 2005 (copy enclosed) in which we discussed, the use of private machines, the condition of our machines, income and audited collections. We offered you audited collections, however, you have not returned the authorization form.

We have not received any response from you as to what type of renovations are being done, when these renovations will be complete and when we can expect the property, laundry rooms and tenancy to return to normal.

Our Field Representative recently reported that the laundry room containing 11 washers and 10 dryers is not being used.

I expect to hear from you soon, regarding the details of the renovations at this property, particularly to the laundry areas. Please call me at 1-800-325-6985.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein

Saul Silverstein
SS:km
enc.



**COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

August 9, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 S. Park Road
       Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems is in receipt of your letters dated July 27, 2005 and August 4, 2005. We will answer all of your points referenced in your correspondence and your recent phone call.

It appears that because we recognize your various building problems, and because we have offered to work with you while you correct these problems, you have construed this as a sign of weakness and your accusations and demands are leading you towards a legal confrontation.

A legal confrontation will not be pleasant.

Enclosed is a copy of the laundry room lease agreement, which has been highlighted for your convenience. We suggest that you <u>carefully read</u> the highlighted portions.

<u>ACCESS</u>

Commercial Coin Laundry Systems is just like any other tenant at this property. We have the legal right to enter and leave <u>our</u> leased premises whenever necessary to assess machines, perform repairs or make collections or any other obligations we have in accordance with the terms of the laundry room lease agreement. Remember that the laundry rooms are <u>OUR</u> leased premises. However, while our Field Representatives are at the property, they will consult with Mr. Shockney.

<u>PRIVATE WASHERS AND DRYERS</u>

We <u>know</u> that there are private washers and dryers in use in the apartments. Only for the time being, we will not address this issue.

<u>CONDITION OF MACHINES</u>

Our Field Representative has been at the property several times in the past few months and has submitted very detailed reports regarding the condition of the machines. The machines are functioning properly. The machines <u>are not</u> leaking. Our Field Representative has indicated that there is dampness and pools of water on the floor AWAY from where the machines are located.

We believe your leakage problem may be from drainage problems, seepage, foundation cracks or leaks from apartments from bathtubs, sinks, toilets or the use of privately owned washing machines. Water seeks its own level and there are many sources that you need to investigate.

## INCOME

Please refer to the third sentence of paragraph #3 of the laundry room lease agreement. Commercial Coin Laundry Systems is guaranteed the cash equivalent of one washer use per installed washer and one dryer use per installed dryer before rent is paid to you. Enclosed is a statement of collections for the period of April 29, 2005 to the present. Keep in mind that you closed one laundry room for a period of time and therefore, those machines were not producing income. There is no rent due to you at this time, in accordance with the terms of the laundry room lease agreement. Income must improve before rent will be paid.

Previously, income levels were approximately $2,000.00 per month. Income for 2005 has dropped to $325.00 per month. It must be obvious to you that we cannot continue tolerating this loss.

## AUDITED COLLECTIONS

We understand your concerns regarding verification of income. However, your insinuations that we are not reporting the true and accurate income is insulting. Enclosed is another Audited Collection Request Form. You will see that we are temporarily offering unlimited audited collections, until you have been satisfied. You have mentioned several people who are on your on-site staff. You can freely appoint one of these people to serve as your agent and accompany our Field Representative during collections.

## INSURANCE COVERAGE

A Certificate of Insurance will be sent to your on-site office directly from our insurance carrier.

Mr. Naranjo, there is an old saying, "You can catch more flies with honey than you can with vinegar". The basic problem here is that there is no income due to your water problems and the use of privately owned washers and dryers. The quicker these issues are resolved, the quicker income will start to improve at this property.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein
SS:km
enc.

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

November 16, 2005

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 S. Park Road
Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems is in receipt of your letter dated October 29, 2005
(postmarked November 4, 2005).

We have read the exaggerated report from Mr. Shockney from October 4, 2005. <u>Our Field
Representative was at the property the next day on October 5, 2005</u> and discussed the problem
with your on-site personnel.

New dryer venting needs to be installed. Our Field Representative suggested that new dryer
venting be put in when the new siding is installed on the building. The siding contractor said he
would cut the holes and install the vents for a fee. Commercial Coin would then have to
reconnect its venting.

The smoke alarms went off due to a BUILDING DRYER VENTING PROBLEM. There was no
fire. The heat and steam from the dryer exhaust set off the alarms. Under the terms of the
laundry room lease agreement, it is your responsibility to provide PROPER VENTING.
Commercial Coin Laundry Systems connects its dryers to existing building venting. We are only
responsible to maintain any venting we supply which connects from the back of the dryer to the
building dryer venting system.

This incident and all prior incidents you keep blaming on the condition of the laundry machines
or the quality of installation are all caused by inadequacies in the building structure or utility
installation. Commercial Coin Laundry Systems installs it equipment to EXISTING utilities and
EXISTING venting. You are responsible for providing <u>adequate</u> utilities and <u>proper</u> venting.
Your lack of properly maintaining the property and the laundry rooms is the root of the problems
with the laundry machines.

We suggest that you have the proper venting installed during your renovations.

Furthermore, your residents can call our 24-hour toll-free service number at anytime to request
refunds for lost money directly from our office.

If you have any questions, please do not hesitate to contact our office.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

January 17, 2006

Gabriel Naranjo
Park Place LLC
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 Park
Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems has informed you time and again that it is your leasehold responsibility to renovate and reopen the second laundry room at the above referenced property. We have asked that you inform us when you will begin repair and/or renovation of this laundry room. To date we have not received an answer.

To date we have estimated that, due to your breach, our losses total $10,074.69. This number will only continue to grow with each passing day that our machines are not in operation in the second laundry room.

We have been very patient and have been willing to work with you to resolve this matter. However, your lack of communication and cooperation is forcing us to prepare for legal action.

We want to remind you that according to the terms of the laundry room lease agreement, should legal action become necessary, all proceedings will take place in the courts of Cook County, Illinois. Furthermore, you will be liable for all costs, including attorneys fees, incurred by Commercial Coin Laundry Systems in enforcing this lease.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km

cc: Russel Winick, Attorney at Law

Certified Mail # 7005 2570 0000 2910 5771



# COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

July 19, 2006

Gabriel Naranjo
Park Place LLC
25 Rensselaer Road
Essex Fells, NJ 07021

                              Re:    1901 Park
                                     Kokomo, Indiana

Dear Mr. Naranjo:

We last wrote to you on January 17, 2006, copy enclosed.

A recent report from our Field Representative indicates that improvements have been made to one of the laundry rooms and to the apartments.

However, the other laundry room is still in deplorable condition.

- Most of the floor tiles in the north half of the laundry room are missing. The rest are moldy or damaged.
- The ceiling paint is still peeling and there are several holes in the ceiling on the north side of the laundry room. There are sagging tiles on the south side of the laundry room, as well as a four foot by four foot hole in the ceiling. There are also signs of mold on the ceiling in places.
- The walls are dirty and have mold six to ten inches up the wall.
- The lighting is inadequate.
- Heating and cooling systems may or may not work; the wall thermostat has been destroyed
- There are no apparent signs of renovation.

**This laundry room must be renovated.**

We have not received any response from you as to what your plans are to improve the condition of this laundry room. We have already informed you what our losses are. This number has increased considerably since January and will continue to grow. If you think that we will lose interest in this matter, you are mistaken.

Again, we must know when you are going to start renovations on this laundry room.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km

cc: Russel Winick, Attorney at Law

Certified Mail # 7005 1160 0002 5220 3954



# *COIN LAUNDRY SYSTEMS*

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

August 18, 2006

Gabriel Naranjo
Park Place LLC
25 Rensselaer Road
Essex Fells, NJ 07021

Re:   1901 Park
      Kokomo, Indiana

Dear Mr. Naranjo:

We last wrote to you on July 19, 2006, copy enclosed.

A recent report from our Field Representative indicates that <u>nothing</u> has been done to improve
the condition of the second laundry room at this property.

Again, <u>this laundry room must be renovated</u>.

We have not received any response from you as to what your plans are to improve the condition of this
laundry room. We have already informed you what our losses are. This number has increased
considerably since January and will continue to grow. If you think that we will lose interest in this
matter, you are mistaken.

<u>Again, we must know when you are going to start renovations on this laundry room.</u>

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km

cc: Russel Winick, Attorney at Law

Certified Mail # 7005 1160 0002 5220 4272



# COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

October 12, 2006

Gabriel Naranjo
Park Place LLC
25 Rensselaer Road
Essex Fells, NJ 07021

Re:    1901 Park
       Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems has been writing to you since May 2005 regarding the condition of the second laundry room at the above referenced property.

Your continued "defense" that the location of the laundry room is "fire hazard" because it is located next to and under dwelling units is ridiculous. All laundry rooms in all buildings are located either next to or under or even above dwelling units. This "excuse" is going no where.

As we have continued to inform you, the fact of the matter is **YOU MUST RENOVATE THIS LAUNDRY ROOM.**

Nothing has been done to improve the overall environment in this space.

To date, Commercial Coin Laundry Systems has lost approximately <u>$13,000.00</u> of income due to the condition of this laundry room. This loss must be reimbursed to Commercial Coin Laundry Systems. The longer it takes for you to renovate this laundry room, the more our losses will continue to grow. Currently, our losses are increasing by at least <u>$720.00 per month.</u>

We have been patient with you for a year and a half. You have not shown any effort to work with us or correct this situation.

If we are forced to file suit against you, you will be responsible for our projected losses through the end of the lease agreement, which, just for this one laundry room would total in excess of <u>$130,000.00</u>.

Additionally, you will be responsible for all costs, including attorneys fees, incurred by Commercial Coin Laundry Systems in enforcing this lease.

As you know, this lease is governed by the laws of the State of Illinois with the courts of Cook County Illinois having sole and exclusive jurisdiction.

We urge you to weigh your options and realize that renovating this laundry room will only improve your property.

We expect to hear from you by <u>October 31, 2006</u>. At this point, we only want a time table detailing your plans to renovate this laundry room.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km

cc: Russel Winick, Attorney at Law

Certified Mail # 7005 0390 0004 3152 6838

# COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

November 6, 2006

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:   1901 S. Park Road
      Kokomo, Indiana

Dear Mr. Naranjo:

Our Field Representative recently submitted a report on the condition of the second laundry room at the above referenced property.

It appears improvements have been made:

- The ceiling has signs of repair.
- Some painting has been done.
- The mold on the walls is no longer present.
- Old floor tiles have been scraped from the floor.
- Lighting has been improved.
- Nothing else being stored in the laundry room.
- Heating and cooling systems are now working.
- A new thermostat has been installed.

We received a letter from your on-site manager regarding a washing machine that was leaking and some dryers that were out of order in this laundry room. Our Field Representative assessed the washers and dryers and reported to your on-site staff.

Apparently, all eleven(11) washing machines are draining into one common drain which is only two inches (2") in diameter. This is insufficient for this many machines. When more than two machines drain out, the floor drain runs over. This was explained to maintenance and they agreed the drain is too small.

Routine repairs were needed on several dryers. One dryer needs to be replaced due to someone spraying the fire extinguisher into the bottom dryer unit.

We are pleased with your efforts to improve the condition of this laundry room. The drain problem needs to be addressed as soon as possible so the washers can function properly.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

January 11, 2007

Gabriel Naranjo
25 Rensselaer Road
Essex Fells, NJ 07021

Re:   1901 S. Park Road
Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems wrote to you on November 6, 2006 regarding improvements being made to the above referenced property.

In our letter we informed you that apparently, all eleven(11) washing machines are draining into one common drain which is only **two inches (2")** in diameter.  This is insufficient for this many machines.  When more than two machines drain out, the floor drain runs over.  **This was explained to maintenance and they agreed the drain is too small.**

We are pleased with your efforts to improve the condition of this laundry room. However, the drain problem needs to be addressed as soon as possible so the washers can function properly.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km

 **C⍉IN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

February 21, 2007

David A. Cox
Bayliff, Harrigan, Cord, Maugans & Cox
123 N. Buckeye Street
P.O. Box 2249
Kokomo, IN 46904-2249

Re:    1901 S. Park Road
        Kokomo, Indiana

Dear Mr. Cox:

Commercial Coin Laundry Systems is in receipt of a copy of your letter dated February 9, 2007 to our attorney, Mr. Russel Winick.

Enclosed is a copy of the laundry room lease agreement for the above referenced property which has been highlighted for your convenience.

In reference to the $41,000.00 paid to the prior owner for "laundry room improvements", there were no stipulations as to what improvements were to be made. Those decisions were left up to the property owner. Commercial Coin Laundry Systems made NO improvements themselves to laundry rooms.

According to the terms of the laundry room lease agreement, the Lessor is responsible for providing adequate utilities necessary for the operation of the machines. Lessor is also responsible for all janitorial and housekeeping services for the laundry room. Commercial Coin Laundry Systems installs its equipment to existing utilities.

No rent has been paid to Mr. Naranjo based on the minimum compensation requirement stated in paragraph #3 of the laundry room lease agreement.

Recent reports from our Field Representative indicate that the condition of the second laundry room has improved, however, there is still some work to be done. Commercial Coin Laundry Systems has had numerous communications with Mr. Naranjo regarding the condition of the laundry rooms. We would be happy to provide you with copies of our correspondence, upon request. We have informed Mr. Naranjo of his responsibilities, however, Mr. Naranjo has ignored our letters.

Commercial Coin Laundry Systems is only responsible for maintaining its laundry machines, which it has done, considering the environment it has been forced to operate in.

Mr. Naranjo knows what need to be done to return these laundry rooms to functional environments for his tenants.

Furthermore, we know that the apartment units have private washers and dryers in use. This is is a <u>violation</u> of the laundry room lease agreement. Paragraph #5 of the laundry room lease agreement states:

> "Lessor covenants and agrees that Lessor will not install or operate, nor permit any person, firm or corporation (other than Lessee) to install or operate, in said premises, or elsewhere in said property(s), any laundry equipment, at any time during the period that this Lease shall continue in full force and effect."

We have addressed this issue in previous correspondence to Mr. Naranjo. As stated above, he has ignored our correspondence.

If you would like to further discuss this matter, please do not hesitate to contact Mr. Saul Silverstein at our office.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km

This Lease made this ___24TH___ day of ___FEBRUARY_____, 2000___ at Chicago, Illinois between

COMMERCIAL COIN LAUNDRY SYSTEMS hereinafter called Lessee, and

CLIFF LECLEIR/AGENT
HOME APARTMENT DEVELOPMENT
709 CASS STREET
LACROSSE, WI  54601

hereinafter called Lessor.

Witnesseth, that Lessor, for and in consideration of the covenants and agreements hereinafter contained, does hereby demise and lease to the Lessee for use only by the Lessee, the laundry room(s) or laundry area(s) in the building(s) commonly known as:

1901 S. PARK (PARK LACHAUTEAU)

KOKOMO, INDIANA _____containing ___254___ apartments,
(A further description or drawing of the laundry room(s) or laundry area(s) may be attached hereto as Schedule "A") and legally described as:
(Either party hereto reserves the right to insert the correct legal description of said Premises at any time hereafter by attaching a rider hereto.)

For the following purposes:

A.    For Lessee to install, place and operate on said premises commercial laundry equipment for the use by the residents of said premises;

B.    For Lessee to use and occupy said space in close proximity to the plumbing, gas, electrical and sewer fixtures and facilities in said laundry room(s) or laundry area(s) for the efficient operation of said equipment;

C.    For Lessee to connect said equipment to and through the electric, water, heat, gas and sewer lines in said premises;

D.    For Lessor to furnish, and for Lessee to use, Lessor's electricity, gas, heat, hot and cold water, which may be necessary for the efficient operation of said equipment, all at Lessor's expense, and to maintain the premises in adequate physical condition for the uses contemplated hereinabove.

## E. To Have and to Hold the Same, for and during a term of ten years commencing MARCH 6, 2000

In consideration of said demise and the covenants and agreements hereinafter expressed, it is covenanted and agreed as follows:

1.  The Lessor agrees that the residents of the building(s) described above, shall have free and unobstructed access to the demised premises during reasonable hours for the purpose of using such laundry equipment installed therein.

2.  Lessor agrees that Lessee shall have exclusive control and possession of the demised premises. Lessee does hereby give and grant to Lessor the right to use the demised premises for any purpose essential for the operation of the building(s) in which the demised premises are located, provided that such use does not interfere with the Lessee's maintenance and operation of its laundry equipment. The terms and conditions of this Lease are to be strictly construed.

3.  Lessee shall pay to Lessor as rent for the demised premises and for the privileges, services and utilities aforesaid, a sum equal to twenty-five per cent of the dollar amount of Lessee's coin receipts from the aforesaid laundry equipment during the period that this Lease shall continue in full

reasons beyond Lessee's reasonable control or prevention. In the event Lessor requests the replacement of at least fifty percent or more of Lessee's laundry equipment during any term of this Lease, Lessee may replace said equipment. The initial term, the additional term and subsequent terms, if any, of this Lease shall then be extended for a period of time equal to the initial term. The type, style and quantity of laundry equipment installed shall be at the sole discretion of the Lessee.

7.  Lessor acknowledges that title to the aforesaid laundry equipment (including fixtures, wiring, plumbing and accessories, supplied or installed by Lessee) shall at all times remain vested solely in Lessee and not the Lessor, and further acknowledges that any rider, addendum, or codicil to Lease shall terminate upon change of ownership or change of managing agent or change of management company or sale of property or transfer or assignment of this Lease, notwithstanding anything to the contrary set forth in this Lease or in any such rider, addendum, or codicil to Lease. Lessee acknowledges that the original parties hereto shall have all of the rights, benefits and privileges, both substantive and procedural, granted to the original parties hereto in any rider, addendum, or codicil that may be attached to this Lease and thereby made a part of Lease Agreement,

**COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

April 17, 2007

Park Place LLC
Gabriel Naranjo
1901 S. Park Road
Kokomo, IN 46902

Re:    1901 South Park Road
        Kokomo, Indiana

Dear Mr. Naranjo:

On April 06, 2007 our Field Representative reported that washer #48704 at the above referenced property was burglarized and/or vandalized. This is a very serious problem. Aside from the destruction of our property, it interferes with an important service to the residents and **introduces an element of physical danger to them.**

We have repaired or replaced the damaged machine(s), or are in the process of doing so. Following are suggestions to improve the security of the laundry facilities:

1.    Tenant access <u>only</u> to the laundry room should be limited to the hours between 7:00 a.m. and 10:00 p.m. <u>**LAUNDRY ROOMS MUST BE LOCKED AT ALL OTHER TIMES.**</u>

2.    Laundry room and/or building access doors should be secured with **deadbolt** locks.

3.    Any windows should be secured.

4.    Doors should have security bars after hours.

5.    There should be adequate lighting in the laundry room itself and all corridors and means of access leading to the laundry room.

6.    Tenants should be informed of the problem, and asked for their cooperation to notify management of the presence of strangers or suspicious people in the laundry room.

Thank you for your cooperation.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels



**COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

April 18, 2007


David A. Cox
Bayliff, Harrigan, Cord, Maugans & Cox
123 N. Buckeye Street
P.O. Box 2249
Kokomo, IN 46904-2249

                  Re:    1901 S. Park Road
                             Kokomo, Indiana

Dear Mr. Cox:

I spoke to you on March 22, 2007 regarding the above referenced property.

We agreed that you would memorialize our conversation, including my concern about the use of private laundry machines.  This in itself is a breach of the laundry room lease.

I called your office on April 5, 2007 and left a message.

To date I have not received a call back, or your letter.

Please forward your letter as soon as possible.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein
SS:km

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

May 9, 2007

David A. Cox
Bayliff, Harrigan, Cord, Maugans & Cox
123 N. Buckeye Street
P.O. Box 2249
Kokomo, IN 46904-2249

Re:    1901 S. Park Road
       Kokomo, Indiana

Dear Mr. Cox:

Thank you for your time on the phone.

The facts do not change as to liability. Your client has leasehold responsibilities which he is not upholding.

As you know, your client closed one of the laundry rooms for quite some time. We were very patient as he eventually renovated the laundry room and reopened it.

Currently, there are private washers and dryers in use in the apartment units.

The closing of the laundry room for an extended period of time and the use of privately owned washers and dryers is directly the cause for the extremely low income and no rent being paid to your client.

Commercial Coin Laundry Systems has always had a total of 23 washers and 22 dryers installed at this property. **The amount of equipment has never been reduced**.

Rent payments for this property are modified by the minimum compensation clause in the third sentence of paragraph 3 of the laundry room lease. Commercial Coin Laundry Systems is guaranteed the cash equivalent of one washer use per installed washer and one dryer use per installed dryer, per day.

No rent has been paid to your client because income from use of the washers and dryers has not exceeded the minimum compensation requirement.

As we have previously informed you and your client, the installation and use of privately owned washers and dryers is a direct violation of the laundry room lease agreement.  I am giving your client a limited amount of time to conform to the terms of the lease by removing any privately owned washers and dryers from the premises.  If they are not removed in a timely manner, we will not hesitate to commence legal action to uphold our leasehold rights.

We urge you and your client to govern your actions accordingly.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein
SS:km


cc: Russel Winick, Attorney at Law

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue   •   Chicago, Illinois 60641   •   Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

June 21, 2007

David A. Cox
Bayliff, Harrigan, Cord, Maugans & Cox
123 N. Buckeye Street
P.O. Box 2249
Kokomo, IN 46904-2249

                Re:    1901 S. Park Road
                         Kokomo, Indiana

Dear Mr. Cox:

I wrote to you on May 9, 2007 regarding the above referenced property.

I have not heard from you or Mr. Naranjo.

As we have discussed, your client is in breach of the laundry room lease agreement for allowing the use of privately owned washers and dryers.

This matter must be addressed.

We have estimated that our losses through the life of the lease, <u>due to your clients breach,</u> totals approximately <u>$274,446.02.</u>

I must hear from you no later than <u>**July 6, 2007**</u> regarding this matter.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein
SS:km

 **COIN LAUNDRY SYSTEMS**

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

July 17, 2007

Gabriel Naranjo
Park Place LLC
1025 Bloomfield Avenue, 2-A
West Caldwell, NJ 07006

Re:    1901 Park
       Kokomo, Indiana

Dear Mr. Naranjo:

Commercial Coin Laundry Systems is in receipt of your fax dated July 5, 2007.

Regardless of whether you have actually provided private laundry machines or not, the fact remains, THERE ARE PRIVATE WASHERS AND DRYERS BEING USED IN THE INDIVIDUAL DWELLING UNITS.

This is a VIOLATION of the laundry room lease.

Furthermore, as we have continued to inform you, you have not been paid rent because collections from use of OUR washers and dryers have not exceeded the minimum compensation requirement stated in the lease. Therefore, no rent has been due.

Income is low DUE TO THE USE OF PRIVATELY OWNED WASHERS AND DRYERS.

ANY PRIVATELY OWNED WASHERS AND DRYERS MUST BE REMOVED FROM THE PREMISES.

If privately owned washers and dryers remain installed and continue to be used we will not hesitate to commence legal action to uphold our leasehold rights.

Should legal action become necessary, _according to the terms of the laundry room lease agreement_ this lease will be governed by the laws of the State of Illinois with the courts of Cook County having sole and exclusive jurisdiction. Furthermore, you will be responsible for _all costs, including attorneys fees, incurred by Commercial Coin Laundry Systems_ in enforcing this lease.

We urge you to govern your actions accordingly.

As an additional note, we suggest that you have your on-site personnel closely monitor the laundry rooms as we have found that counterfeit coins are being used in the laundry machines.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Saul Silverstein
ss:km

cc: Russel Winick, Attorney at Law

Certified Mail # 7002 2030 0000 21875993



# COIN LAUNDRY SYSTEMS

3750 North Cicero Avenue • Chicago, Illinois 60641 • Phone 773/283-5300
Outside area 312 and 773 Phone: 1-800/325-6985
FAX: 773/283-0125

September 17, 2007

Park Place LLC
Gabriel Naranjo
1901 S. Park Road
Kokomo, IN 46902

Re:    1901 Park
Kokomo, Indiana

Dear Mr. Naranjo:

It has come to our attention that the floor drains/stand pipes in the laundry room of this property are clogged and need to be rodded out.  Due to this problem, water is backing up on the laundry room floor.

Please have the drains rodded as soon as possible to alleviate this problem.  We thank you for your cooperation in this matter.

Very truly yours,

COMMERCIAL COIN LAUNDRY SYSTEMS

Kris Michaels
km

## Park Place Apartments
### 1901 S. Park Road
(765) 455-2680
fax (765) 455-2681

5-24-05

Coin Laundry Systems

We had already taken the steps you outlined in your letter dated May 17 in regards to the vandalism in our laundry room.  We appreciate your concern for the safety and convenience of our residents.


John Shockney
Park Place Apartments



at Kokomo

**Commercial Coin Laundry Systems**
**M. Kris Michaels**
**3750 North Cicero Ave**
**Chicago, IL 60641**

July 22, 2005

Dear Ms Michaels,

We herewith would like to specify our concerns about your contract and modus operandi.

In your letter of July 14, you stated that our office was closed. Our office has never been closed since we took over, it is only closed after hours.

As per your letters, we have to

- Maintain the laundries in adequate condition.
- Supply utilities for your washers and dryers.
- Clean laundries and equipment.
- Our maintenance personnel have to clear drains.

In exchange for the above we receive 25% of the income.

We have no control whatsoever about the income, there are no counters in your machines and no way of knowing how much money is collected. We need to have a more precise system of tracking the income. We asked you this question before and we have not yet received any reply.

You stated in your letter of June 22 that "no leaks were found". Who inspected the machines? Which date? With whom did they speak? Who let them into the laundry room? All we know is that despite the cleaning of the drains, there are still leaks from your machines. It seems to us that it is due to poor installation and we are concerned that the electric is also poorly installed and could cause an electrical fire, affecting the adjacent residents.

Any repairs made to your machines and the installations have to be done under the supervision of our Property Manager, Mr. John Shockney. Please have your personnel set up a time and a date with Mr. Shockney.

Your letter states that you have been meeting with our maintenance personnel which is not true. Mr. John Shockney, our Property Manager, has not met with anybody from your company since we took over.

Park Place is a privately owned property. You are hereby advised that you must advise our Property Manager or me personally <u>in writing</u> before any representative of your company visits the property. You are not authorized to speak with anybody but Mr. Shockney or me. Due to our security concerns we cannot permit any trespassing.

In your peculiar contract it seems that our rights are zero. We have to provide you with everything and pay for all utilities and you can give us whatever you want (without any controls) and come and go as you please without informing us. We dispute this situation and we hereby inform you that we retain our rights to defend and protect ourselves and our residents.

In response to your question about the washers in apartments - this is a "grandfather" situation. As you know, we never signed any contract with you and if there is any violation, the responsible parties are the previous owners who signed your contract.

We await your reply.

Sincerely,

Gabriel Naranjo
PARK P, LLC

1901 South Park Road, Kokomo, IN 46902
Tel : 765 455 2680   Fax : 765 455 2681

CC: Mr. John Shockney



**Commercial Coin Laundry Systems**
**M. Kris Michaels**
**3750 North Cicero Ave**
**Chicago, IL 60641**

**July 22, 2005**

**Dear Ms Michaels,**

**In response to your letter of July 14 we herewith inform you of the situation in the laundries at Park Place.**

**The main laundry has been open since we took over. This laundry was never closed. However, we extended the hours of operation to accommodate the necessities of our residents. It is locked overnight.**

**The second laundry has been closed due to our concerns of safety and security since the beginning of May until July 15th. We have cleaned the area but we still have serious concerns about security. We again inform you that you will be held responsible if any accident occurs that affects the lives or safety of the neighboring residents.**

**Under separate cover, we are writing to inform you of our questions and we await your written response (that you neglected to do in your previous letters).**

**We hope that this clarifies the situation and remain,**

**Yours sincerely,**

**Gabriel Naranjo**
**PARK P, LLC**

**1901 South Park Road, Kokomo, IN 46902**
Tel : 765 455 2680   Fax : 765 455 2681



PARK PLACE
at Kokomo

Commercial Coin Laundry Systems
M. Kris Michaels
3750 North Cicero Ave
Chicago, IL 60641

July 27, 2005

Dear M. Michaels,

Your washing machines and dryers at Park Place were inspected personally on Monday July 25. What I found was not impressive.

In the main laundry room there were four machines out of order, some since the month of June.  They are scratched, dented and look terrible.  We are trying to give a fresh and clean image to Park Place and these machines look like leftovers from the war. These machines must be exchanged with acceptable looking ones.

I spoke with Ernie Johnson of your company and I explained all the problems to him.  He also acknowledged the problems of the actual location of the second laundry.  I provided him with a layout of the buildings on the property.  He was informed about all our worries and we hereby reiterate our concerns of an impending disaster.  Your company will be held liable for any accident that may occur.

Please note that several people are living above and adjacent to the second laundry.  Therefore, we would like to have a copy of your insurance coverage to make sure that you are covered adequately.

Sincerely,

Gabriel Naranjo
PARK P, LLC

1901 South Park Road,  Kokomo, IN  46902
Tel :  765 455 2680   Fax : 765 455 2681



PARK PLACE
at Kokomo

Commercial Coin Laundry Systems
M. Kris Michaels
3750 North Cicero Ave
Chicago, IL 60641

August 4, 2005, 2005

Dear M. Michaels,

We are in receipt of your letter of July 27.

The first thing that I would like to point out is that we took over the property in April 2005. Almost four months later all we have received from your company are letters telling us what to do. We have not received a single dollar from your company. Our complex is run on a tight budget. We need to know the income every month. We herewith request that you pay us monthly.

To the best of our knowledge there are no washers installed in any apartments.

I hereby reiterate that Park Place is private property and before your representatives go to the complex, they must make an appointment with our manager. We will not tolerate trespassing. We will consider any inspection without our knowledge as trespassing. Permission must be requested in writing by fax to Mr. John Shockney, Property Manager 765 455 2681.

Your audited collection offer of 3 consecutive months is insufficient. We cannot accept your estimates. I reside in New Jersey and cannot plan my trips according to the coin collecting. There must be a modern way to control the coins. Your machines must have counters of some sort.

In reference to the problems of the operation of the machines, all we know is that when the machines are not in operation, there is no water on the ground. When the machines are working, the water pools on the floor. Our drains have been checked and we know that the problem lies with the machines.

For your information, both laundry areas are open and functioning.

Sincerely,
Gabriel Naranjo
PARK P, LLC

1901 South Park Road, Kokomo, IN 46902
Tel : 765 455 2680   Fax : 765 455 2681



Mr. Saul Silverstein
Commercial Coin Laundry
3750 N. Cicero Avenue
Chicago, IL 60641


August 17, 2005


Re:   Park Place Laundries

Dear Mr. Silverstein,

Despite all our efforts to make an agreement with you all we receive from you are threats and no money at all.

We have passed your case to our legal department that has informed us of the following;

"Under Indiana law, any lease in excess of three (3) years must be recorded, Ind. Code 32-21-4-1. Indiana law does allow for Memorandum of leases to be recorded in lieu of the original lease, Ind. Code 36-2-11-20."

Upon review of the recorded memorandum, it was discovered that Indiana law was violated in that the term of the lease is not stated and the option to renew is also omitted.

We believe that we are therefore not bound to the terms of the lease created prior to the purchase of Park Place.

Sincerely,

Gabriel Naranjo
PARK P, LLC


**1901 South Park Road,  Kokomo, IN  46902**

| To | : | Saul Silverstein / Commercial |
| Coin Laundry | | |
| Fax | : | 773 283 0125 |
| From | : | Gabriel Naranjo |
| Fax | : | 973 228 9568 |
| Date | : | September 7, 2005 |
| Ref | : | Park Place Apts |

**PARK PLACE**
at Kokomo

Dear Mr. Siverstein,

Attached please find a copy of our letter dated August 17, 2005.

Please let us know if you have a reply from your legal department. We would like to know your plans regarding this matter.

If you would like to speak with me, do not hesitate to call me either at the office (973)228 3666 or on my cell (215) 519 0343.

Sincerely,

Gabriel Naranjo
Park P. LLC



Mr. Saul Silverstein
Commercial Coin Laundry
3750 N. Cicero Avenue
Chicago, IL 60641

August 17, 2005

Re:    Park Place Laundries

Dear Mr. Silverstein,

Despite all our efforts to make an agreement with you all we receive from you are threats and no money at all.

We have passed your case to our legal department that has informed us of the following;

"Under Indiana law, any lease in excess of three (3) years must be recorded, Ind. Code 32-21-4-1. Indiana law does allow for Memorandum of leases to be recorded in lieu of the original lease, Ind. Code 36-2-11-20."

Upon review of the recorded memorandum, it was discovered that Indiana law was violated in that the term of the lease is not stated and the option to renew is also omitted.

We believe that we are therefore not bound to the terms of the lease created prior to the purchase of Park Place.

Sincerely,

Gabriel Naranjo
PARK P, LLC

**1901 South Park Road, Kokomo, IN 46902**



at Kokomo

**Mr. Saul Silverstein**
**Commercial Coin Laundry**
**3750 North Cicero Avenue**
**Chicago, IL 60641**


**October 29th, 2005**


**Certified mail – return receipt requested**


**Dear Mr. Silverstein,**

**Enclosed please find a copy of the incident report from our manager John Shockney which occurred in the laundry room on 10.4.05.**

**We have been expecting a report from your company and to this date have heard nothing. We are very worried about this incident created by the machines.**

**Now, not only are we not receiving any money at all from your company (since our purchase of end of April, 2005) but we are forced to pay our residents for your lack of service.**

**This last incident was averted because the laundry is directly in front of the office and our staff noticed it. If such a thing had happened in the B building we may be speaking of a major incident.**

**We hereby reiterate our concerns about the installation of your machines below occupied apartments. Knowing the quality of workmanship involved in the installation of your machines, we are very uncomfortable with this situation.**

We need to receive a report from you from a qualified technician informing us of what caused the problem, what has been done to avoid a similar incident and we need a guarantee from Commercial Coin Laundry that such an incident can not happen in the B Building where people's lives are at stake.

Awaiting your reply, we remain,
Sincerely,
Gabriel Naranjo
PARK P. LLC

CC:    Brian Oaks, Esquire

1901 South Park Road,  Kokomo, IN  46902
Tel :  765 455 2680    Fax : 765 455 2681



**PARK PLACE**
at Kokomo

**10/4/05**

**Gabriel,**

At about 5 PM on Monday a resident came to the office to report the smoke detector in the courtyard laundry had been activated. Since it can be seen from our office, we looked toward the laundry and noticed it appeared to be hazy inside. Gary and I both went to the laundry and discovered that it did not appear to be smoke but seemed to be steam. It was also like a sauna in the laundry and we shut off the dryers the resident was using and opened the door to cool it down and to eliminate the steam.

I gave the resident money to take his laundry to another facility to finish the drying of his clothes and we turned off the lights and locked the laundry so as to not have a replay of this event later in the evening. I also did not want another resident to call the fire department for a preventable event. I called Coin Laundry on Tuesday morning to report the problem and left the laundry closed and placed a sign indicating that closing on the door. As of 5 PM Tuesday I had not seen anyone from Coin Laundry to make a determination of the problem and repair it.

The resident that reported the problem on Monday was duly worried about the safety of the laundry facility. I explained that I hoped it was not anything serious in an effort to alleviate his fears and hope he did not feel compelled to tell other residents about his experience.

**John Shockney**
**Property Manager**

1901 South Park Road   Kokomo, IN  46902
Tel : 765 455 2680   Fax : 765 455 2681



PARK PLACE
at Kokomo

Commercial Coin Laundry
Mr. Saul Silverstein
Ms Kris Michaels
3750 N. Cicero Avenue
Chicago, IL 60641

December 14, 2005

Dear Mr. Silverstein and Ms Michaels,

Since we took over Park Place Apartments in April 2005 you have been using our electric, our sewerage and our water. You have been collecting money from the washers and dryers in a way that we have no way of controlling. We have yet to receive a single dollar from Commercial Coin Laundry.

In your letter of June 1 2005 you stated that your losses for one laundry room would be $177,660.00. Using your own figures we arrive to the following numbers:

$177,660.00 divided by 60 months remaining on the contract = $2961.00 per laundry room
$2961.00 x 2 = $5922.00    25% equals $1480.00 per month.

From April to November (7 months) = $10,360.00

Using your calculations, you owe us $10,360.00 by the end of November.  Independently from any legal obligations, we will go through any and all necessary measures to collect this money owed to us by Commercial Coin Laundry.

In the meantime, we reiterate our concerns about the installations of your machines and the total lack of control of money collecting. We are still waiting for a detailed technical report about what happened on October 4th in the main laundry room.

Sincerely,

Gabriel Naranjo
PARK P LLC

Copy: Brian Oaks, Esq.



**at Kokomo**

Commercial Coin Laundry
Saul Silverstein, Kris Michaels
3750 North Cicero Avenue
Chicago, IL 60641

January 23, 2006

Dear Mr. Silverstein, Ms Michaels,

In your letter of January 3rd which we received on 1.21.06, you stated that our calculations of the monies you owe us are inaccurate.

- Our calculations cannot be inaccurate since we are using your numbers. In your letter of 6.1.05 you stated that your losses per laundry room will be $177,660.-. Those are the numbers that we used to calculate the amount of money that you are withholding from us.
- The current situation is unacceptable. The machines that you have in our complex look like the leftovers of your company stock.
- The installation (electrical and plumbing) is so poor that there is always water on the floor, creating mildew and risk of a slip and fall case and/or fire. You have been informed many times and you have not corrected the problems.
- We have yet to see one single dollar of income from your company. You collect the money and we have no way to know what the amount is.
- Your representative comes and goes as he/she pleases, collects the money, does not repair anything and doesn't even repair or replace the damaged machines.
- We are paying for electric, water, gas, sewerage and taxes for your company's use of our property. In exchange of all the above, we receive zero money.
- Independently of the fact that your contract is a "draconian" contract, you are enforcing an illegal contract (as you have been informed by our legal advisor).

We hereby inform you again that you will be held responsible of any eventual accident that may occur in the laundries. If this contract is determined to indeed be illegal, we will prosecute up to the fullest extent of the law to be duly compensated for all expenses and all laundry income due as per your own calculations of 6.1.05 ($1,480.- per month, per laundry).

We have spent enormous amounts of money to turn around Park Place in vain. Our staff has informed us that the main reason that the apartments cannot be rented is due to the fact that the laundry machines and dryers are so decrepit. We will provide you with proof of this in due time.

You are constantly asking us to disclose our business plan to you. We have no obligation to inform you of our business strategy.

You are requested again to direct your correspondence to our legal advisor;

> Mr. Brian Oaks, Esq.
> PO Box 958
> 515 W. Sycamore Street
> Kokomo, IN 46903-0958

Sincerely,

Gabriel Naranjo
PARK PLACE LLC

CC:    Mr. Brian Oaks, Esq.

1901 South Park Road, Kokomo, IN 46902



**PARK PLACE**

at Kokomo

Commercial Coin Laundry
Saul Silverstein, Kris Michaels
3750 North Cicero Avenue
Chicago, IL 60641

August 29, 2006

Dear Mr. Silverstein, Ms Michaels,

You were informed to direct your correspondence to our legal council, Mr. Brian Oaks. You are ignoring our legal requests and keep sending correspondence to us.

As we informed you in the past, the laundry room in question was an absolute dungeon when we took over the property. We closed the room for a short period and repaired everything at our own expense. The laundry room has been open since then on a regular basis.

As you were told before, this area is unsuitable for a laundry room. There is no proper ventilation and your installations cannot handle the removal of heat and steam.

Your "loss of income" is an invalid point since the laundry room has been open all the time and your machines are operable. All your statements are based on problems that are created by your company.

We hereby reiterate that this laundry room represents a big liability and fire hazard. It is located beneath and next to occupied apartments. You will be held responsible in case of any accident.

Sincerely,

Gabriel Naranjo
PARK PLACE LLC

1901 South Park Road, Kokomo, IN 46902



**BAYLIFF, HARRIGAN, CORD & MAUGANS, P.C.**
*TRIAL LAWYERS*

DANIEL J. HARRIGAN
CHARLES MICHAEL CORD*
J. CONRAD MAUGANS
DAVID A. COX

*REGISTERED CIVIL MEDIATOR

EDGAR W. BAYLIFF, RETIRED

123 NORTH BUCKEYE STREET
P.O. BOX 2249
KOKOMO, INDIANA 46904-2249

(765) 459-3941
FAX: (765) 459-3974
www.bhcmlaw.com

October 3, 2006

Russel G. Winick
Russel G. Winick & Associates, P.C.
1220 Iroquois Avenue, Ste. 100
Naperville, IL 60563

Re:    Our File No.:  06-389
       Laundry facilities at 1901 S. Park Road, Kokomo, Indiana
       Commercial Coin Laundry Systems

Dear Mr. Winick:

I wrote to you earlier alerting you that Gabriel Naranjo had contacted me regarding the lease dated February 24, 2000 with Commercial Coin Laundry Systems for Park Place Apartments located at 1901 S. Park Road in Kokomo, Indiana.

A copy of the 2000 lease that I have been furnished is enclosed.  You can see that it refers to an "attached rider" and also the possibility of a schedule "A".  Do you have the rider or schedule "A" to the lease?  If so, would you be so kind as to forward a copy to me?

Paragraph 3 of the lease refers to minimum compensation and payments made at least semi-annually.  I am not asking Commercial Coin Laundry to pay any compensation at this point to Mr. Naranjo but it has been at least 6 months and he hasn't received any accounting or report. Can your client furnish a report of gross receipts for the year 2006 at Park Place?

If you have any questions in this regard, please give me a call.

Sincerely yours,

David A. Cox

David A. Cox
/wh

cc:    John Shockney, Manager
       Gabriel Naranjo



at Kokomo

Coin Laundry Systems                                          11/1/06
3750 North Cicero Avenue
Chicago, Illinois

I am writing to confirm  a phone message I left on your voice mail complaint line about a
washing machine leaking out onto the floor during operation and some dryers that have
been reported to me as not working in our B building laundry facility.

John Shockney
Property Manager

cc: Gabriel Narnajo
    David Cox

1901 South Park Road   Kokomo, IN  46902
Tel : 765 455 2680  Fax : 765 455 2681



at Kokomo

**Commercial Coin Laundry Systems**
**Attn: Mr. Saul Silverstein**
**3750 North Cicero Avenue**
**Chicago, Illinois 60641**

**Dear Mr. Silverstein,**                                **May 22, 2007**

In your letter dated 5/9/07 you spoke of the closing of B Laundry. According to our records you had agreed to that closing to make it possible for us to remodel that facility. We were expecting your employees to come move the laundry equipment to make it possible for us to remodel that laundry properly. Your employees never came, and as we did not want to run the risk of any damage to your equipment, we did our best to improve the area without your help. The dates we show that laundry closed was from 5/18/05 to 7/15/05.

As you know, the main laundry was never closed.

Again, we recently asked that your company coordinate with us the moving of your equipment to comply with your request of remodeling the B Laundry. Once again we received no response from you. We used a local contractor to paint the laundry room and it looks considerably better however we were not able to get behind or under your equipment to do a complete job. The painting was done on April 22, 2007 and the B Laundry was reopened on April 25, 2007. This is a total of only three days. We wanted to make sure the paint was given adequate time to dry so there would be no chance of residents using the facility and damaging your equipment with wet paint. You are obviously unhappy that we took extra precautions to protect your equipment. It seems there is no way of pleasing you.

According to our records and to the best of our knowledge these are the only times that the B Laundry has been closed.

Sincerely,

**John Shockney**
**Property Manager**

1901 South Park Road   Kokomo, IN  46902
Tel : 765 455 2680   Fax : 765 455 2681

To          :    **Mr. Silverstein / Commercial Coin Laundry Systems**
Fax         :    773 283 0125
From        :    Gabriel Naranjo
Fax         :    973 227 8337
Date        :    July 5, 2007
Ref         :    Park Place Apartments



---

Dear Mr. Silverstein,

We are in receipt of your letter dated June 21, 2007 that was sent to Mr. David Cox. Mr. Cox no longer represents us in this case and we request that all correspondence be sent to:

Park P. LLC
1025 Bloomfield Ave, 2-A
West Caldwell, NJ 07006

Tel: 973 227 8227
Fax: 973 227 8337

In response to your letter we have to inform you that we have done nothing illegal in reference to your accusations. In your last letter you blamed us for closing a laundry. In the most recent letter your complaint is about washers and dryers in the apartments.

We can promise you that

- We have never authorized any machines to be installed anywhere in Park Place Apartments. We have bought hundreds of appliances for Park Place but not a single washer or dryer.
- We never closed a laundry without your knowledge and permission.
- The laundries are open uninterruptedly on a daily basis.

You state in your letter that we owe you an astronomical amount of money. You have never paid us a single dollar since April 2005. We deny any wrong doing with the intent of damaging your business. On the contrary, we have improved and renovated the complex and laundry areas. In the meantime, you are using excuses to not pay us.

During 25 years in the apartment management business, we have never had washers and dryers operated by us. We have never had issues that could not be resolved amicably with any laundry company.

You are hereby informed that in the case that you begin a baseless legal case against us, we will not only defend ourselves to the fullest extent of the law, but we will sue for the money that you owe us. You will also be held responsible for all legal expenses that we have to incur to defend ourselves from your accusations.

Sincerely,

Gabriel Naranjo
PARK P LLC



PARK PLACE
at Kokomo

Commercial Coin Laundry Systems
Attn: Saul Silverstein
3750 North Cicero Avenue
Chicago, Illinois 60641

July 31, 2007

Dear Mr. Silverstein,

We are in receipt of your letter dated July 17, 2007.

As we informed you many times, we vehemently deny your accusations of wrongdoing in Park Place Apartments. We never installed, operated, or manipulated any washer or dryer in Park Place Apartments. We were not aware of any washer or dryer installed in any apartments prior to our purchase. We never collected a single penny from any washer or dryer in Park Place Apartments. On the contrary, we are removing washers and dryers when we renovate apartments.

Your company is not complying with the contract. We have yet to receive a payment. We know that Commercial Coin Laundry Systems collect many thousands of dollars every month from Park Place Apartments. Despite the fact that your rates increased by 25%, you have never paid anything to us. Using your own numbers, your collection is over $4,000 per month.

As mentioned in previous letters, it is very odd that the previous owners were being paid on a regular basis even though the occupancy was much less than it is at present and your rates were 25% lower and the same amount of machines were present on the property. Since we have taken over and according to your letters, you have never reached the minimum amount. You are using all kinds of excuses to not pay us our rightful portion.

In your letter you stated that you are going to sue us in the State of Illinois. We have to inform you that we have never had, in the past or in the present, any kind of business or income from anywhere in the State of Illinois. The full interest, income, expenses and taxes and the legal registration of our company, Park P. LLC, are situated in the State of Indiana.

Sincerely,

Gabriel Naranjo
Park P. LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| COMMERCIAL COIN LAUNDRY SYSTEMS, an Illinois general partnership, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 08CV1853 |
| PARK P, LLC, an Indiana limited liability company, d/b/a Park P Place Apartments, | ) ) ) | Judge Dow Magistrate Judge Denlow |
| Defendant. | ) ) | |

### AFFIDAVIT OF KRISTIANNE TOMAZIN IN SUPPORT OF COMMERCIAL COIN'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE, TO DISMISS FOR PERSONAL JURISDICTION UNDER RULE 12(B) AND, ALTERNATIVELY, TO TRANSFER VENUE

KRISTIANNE TOMAZIN, being first duly sworn upon oath, hereby deposes and states as follows:

1.  I have been an administrative manager of the Plaintiff, COMMERCIAL COIN LAUNDRY SYSTEMS ("Commercial Coin"), for over fifteen (15) years.

2.  I have personal knowledge of the following facts, and if sworn as a witness, could testify competently thereto.

3.  Commercial Coin has a written lease (the "Lease") for the laundry facilities (the "Demised Premises") at the property commonly known as 1901 S. Park, Kokomo, Indiana (the "Property").

4.  Commercial Coin entered into the Lease on February 24, 2000 with an entity that was the Defendant's predecessor as owner and/or manager of the Property.

5.  True copies of the Lease and Rider are attached to Commercial Coin's Response to Defendants' Motion to Dismiss for Improper Venue, to Dismiss for Personal Jurisdiction under Rule


EXHIBIT
tabbies
H

12(b) and, Alternatively, to Transfer Venue (the "Response Brief") in this action as Group Exhibit "A."

6. Pursuant to the Lease, Commercial Coin installed its laundry equipment at the Demised Premises on March 8, 2000.

7. Since the installation of its laundry equipment at the Demised Premises on March 8, 2000, Commercial Coin had placed a large, conspicuous sign on the walls of both laundry rooms comprising the Demised Premises, and further affixed prominent labels on each of its large laundry machines installed therein.

8. Said sign and labels featured bright blue ink against a white background, and contained Commercial Coin's name and logo, and both its office telephone number, and its 24-hour toll-free service telephone number, and further stated that the laundry machines were operated by Commercial Coin "PURSUANT TO A WRITTEN LEASE FOR THESE PREMISES..." True copies of the labels, which is also a reduced copy of said sign, is attached to Commercial Coin's Response Brief as Exhibit "B."

9. Commercial Coin also recorded a Lease Memorandum against the Property on April 10, 2000. A true copy of the recorded Lease Memorandum is attached to Commercial Coin's Response Brief as Exhibit "C."

10. Paragraph 4 of the Lease provides that it runs with the land and buildings, and is binding upon all future owners, and all assigns of the original lessor.

11. The Lease remains in full force and effect until at least March 6, 2020.

12. Paragraph 4 of the Lease further provides as follows:

"Lessor further warrants that...this Agreement shall be governed

2

by the laws of the State of Illinois, with the courts of Cook County
having sole and exclusive jurisdiction."

13.  The forum selection clause in Commercial Coin's Lease is written on the front page of
the agreement, in the same font and size of print as 99% of the rest of the pre-printed portion of the
Lease.

14.  Defendant purchased the Property on April 29, 2005.

15.  On May 2, 2005, the Defendant's agent telephoned Commercial Coin and requested that
it remove its machines so that Defendant could close one of the laundry rooms due to mold.

16.  On May 4, 2005, Commercial Coin sent to Defendant a letter, which referred to the rent
that was to be paid to Defendant as Commercial Coin's "landlord" at the Property, and requested
certain information.  A true copy of said letter is attached to Commercial Coin's Response Brief as
Exhibit "E."

17.  Defendant filled out, executed, and returned the letter to Commercial Coin on May 4,
2005.

18.  On June 9, 2005, Defendant, through its owner, Gabriel Naranjo, sent to Commercial
Coin a letter, acknowledging that it was Defendant's **"intention to honor the agreement that you
made with the previous owner until the end of your contract."** A true copy of said letter is
attached to Commercial Coin's Response Brief as Exhibit "F."

19.  For more than two years after Defendant purchased the Property, Defendant accepted
the laundry services provided by Commercial Coin pursuant to the Lease. Defendant also furnished,
at its sole expense, all of the utilities required for the operation of Commercial Coin's laundry
equipment in one of the laundry rooms, as required by the Lease.

20. Commercial Coin is headquartered in Illinois, but does business throughout the Midwest. Only its collectors and repair persons work substantially outside of its Chicago offices. All of Commercial Coin's administrators, clerical staff, and sales representatives work at its Chicago offices. Commercial Coin's legal counsel is located near Chicago.

21. For over two (2) years after Defendant purchased the Property, Commercial Coin and Defendant exchanged at least forty three (43) letters in connection with Defendant's multiple breaches of the lease. True copies of the letters between Defendant and Commercial Coin are attached to Commercial Coin's Response Brief as Group Exhibit "G."

22. Commercial Coin mailed and received the letters at its offices located in Chicago, Illinois.

23. As of June 16, 2008, Commercial Coin has not be served a copy of the Complaint filed by the Defendant against Commercial Coin in the United States District Court for the Southern District of Indiana.

24. Further Affiant Sayeth Naught.

Kristianne Tomazin

SUBSCRIBED and SWORN to
before me this 16th day of June,
2008.

Notary Public

"OFFICIAL SEAL"
CAMILLE T. CAGGIANO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7/20/2011

4