UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COMMERCIAL COIN LAUNDRY SYSTEMS, )<br>An Illinois general partnership, )<br>  )<br>        Plaintiff, )<br>  )<br>   v.   )<br>  )<br>PARK P, LLC, an Indiana limited liability )<br>Company, d/b/a Park P Place Apartments, )<br>  )<br>        Defendants. ) | No. 08CV1853<br>Judge Dow<br>Magistrate Judge Denlow |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE,
TO DISMISS FOR PERSONAL JURISDICTION UNDER RULE 12(B) AND,
ALTERNATIVELY, TO TRANSFER VENUE**

The Defendant, PARK P, LLC (hereinafter "Park P"), by its attorney, Dayna Wheatley, LLC, in its reply to Plaintiff's Response to Defendant's Motion to Dismiss for Improper Venue, to Dismiss for Personal Jurisdiction Under Rule 12(B), and Alternatively, to Transfer Venue, states as follows:

## ARGUMENT

I. **THE STATE OF ILLINOIS LACKS PERSONAL JURISDICTION OVER THE DEFENDANT.**

   A. **There can be no derivative jurisdiction over the Defendant as a successor in interest, and Plaintiff is collaterally estopped from making this argument.**

In its response, the Plaintiff seeks to make the Defendant subject to jurisdiction by this Court not on the basis of a contract that it entered into with Defendant, but on the basis of a contract that was entered into by Defendant's predecessor. However, the Plaintiff does not cite to any case law to support the proposition that a corporate predecessor's contacts should govern

the issue of personal jurisdiction over the corporate successor, and this argument has been already been recently rejected against this same Plaintiff in state court. *Commercial Coin Laundry Systems v. Loon Investments, LLC,* 375 Ill. App.3d 26, 31, 871 N.E.2d 898, 313 Ill. Dec. 171 (2007)(citing to *Natural Gas Pipeline Co. of America v. Mobil Rocky Mountain, Inc.,* 155 Ill. App.3d 841, 846, 508 N.E.2d 211, 108 Ill. Dec. 50 (1986), holding that the argument of derivative jurisdiction was "specious" because defendant never dealt with plaintiff, but that defendant was merely the assignee of the original contract).  The Plaintiff is collaterally estopped from repeating this argument.

The general prerequisites for invoking the doctrine of collateral estoppel are:

(1) the party against whom collateral estoppel is asserted must have been fully represented in the prior litigation; (2) the issue sought to be precluded must be identical to an issue involved in the prior litigation; (3) the issue must have been actually litigated and decided on the merits in the prior litigation; and (4) the resolution of that issue must have been necessary to the court's judgment.

*Gray v. Lacke*, 885 F.2d 399, 405, 406 (7th Cir. Wis. 1989) (citing *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir. 1987).

"In federal actions, a judgment will not be given collateral estoppel effect if the party against whom a previous court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Haring v. Prosise,* 462 U.S. 306, 313, 76 L. Ed. 2d 595, 103 S. Ct. 2368 (1983).  As Plaintiff had filed an appeal in the *Loon* case, it had a full and fair opportunity to litigate its claim, and all other requirements for collateral are met. Therefore, its argument concerning successor liability should not be considered.

### B. There is no personal jurisdiction pursuant to the Illinois Long-Arm Statute

Plaintiff cited to 735 ILCS 5/2-209(a)(7) to allege existing jurisdiction over the Defendant under the Illinois Long-Arm statute.  According to this provision, jurisdiction may be

2

held over a person for a cause of action arising from actions of that person or those of his agent that constitute the making or performance of a contract or promise substantially connected with Illinois.  *Id.*  The factors generally used to determine whether a defendant transacted business in Illinois under this section of the statute are:  (1) who initiated the transaction; (2) where the contract was entered into; (3) where the performance of the contract was to take place, and (4) where the contract was negotiated.  *Presley v. P & S Grain Co., Inc.,* 289 Ill. App. 3d 453, 460, 683 N.E.2d 901, 225 Ill. Dec. 398 (1997); s*ee also Viktron Ltd., P'ship v. Program Data Inc.,* 326 Ill. App.3d 111, 117-18, 759 NE.2d 186, 259 Ill. Dec. 706 (2001).  Plaintiff has never alleged that the predecessor to the Defendant initiated their transactions, that Park P initiated any of their transactions, nor that the contract was negotiated in Illinois.  Furthermore, its primary argument is that the lease between the parties substantially connects the action to the State of Illinois, yet ignores that the lease is more inherently connected to the State of Indiana, since it is over property that it is located in Indiana.

      The Plaintiff states that because the Defendant made initial efforts to honor and perform the contract, it had established additional connections to the State of Illinois, yet none of its actions were such that subjected it to personal jurisdiction in Illinois.  Finally, the Plaintiff argues that because it had recorded its lease and placed signs and labels in the laundry facilities listing its Illinois contact information, it had provided the Defendant with constructive notice of the forseeability of being sued in an Illinois court.  In other words, if the Defendant didn't want to be sued in Illinois, it should not have bought the apartment building because the washing machines were being maintained by an Illinois company.  These arguments are not persuasive.  The label shown in Plaintiff's Response Exhibit B, for example, shows a large toll-free number beginning

with the numbers 1-800.  The subsequent telephone number beginning with a 773 area code is in smaller print and is not identified anywhere within the label as being an Illinois area code.  Furthermore, it is no longer necessary to reside in a particular area in order to be assigned its area code.  Therefore, the label does not necessarily provide constructive notice of an Illinois connection.  What is more important, however, is that the court in *Loon* rejected this argument, as will be discussed in further detail below.

        C.      **<u>There are no minimum contacts to establish jurisdiction pursuant to the U.S. Constitution or the Illinois Constitution</u>**.

The Illinois long-arm statute authorizes jurisdiction on any basis permitted by the Illinois Constitution and the U.S. Constitution.  *735 ILCS 5/2-209(c)(2008)*.  The Illinois Constitution requires the court to decide whether it is "fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois."  *Rollins v. Ellwood,* 141 Ill.2d 244, 565 N.E.2d 1302, 1316, 152 Ill. Dec. 384 (Ill. 1990).  The defendant's connection with Illinois should not be merely "random, fortuitous, or attenuated"; rather, the connection should enable the defendant "to predict that it might be subject to the jurisdiction of this state."  *Autotech Controls Corp. v. K.J. Elec. Corp.* 256 Ill. App.3d 721, 628 N.E.2d 990, 995-96, 195 Ill. Dec. 526 (1993).

The federal due process clause of the Constitution requires minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).  Minimum contacts are defined as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus

4

invoking the benefits and protection of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed. 2d 528 (1985).

In the "Background" section and throughout its brief, as well as in its affidavit, the Plaintiff attempts to justify its jurisdictional position by describing how it has affixed labels on each of its forty-five (45) large laundry machines installed on the Defendant's premises to give constructive notice of its jurisdiction. *See Exhibit H,* Plaintiff's response. It then goes on to assert that the lease signed by the prior owner of the Defendant's property "runs with the land and buildings" and is binding upon all future owners of the buildings. It ends with a description of steps that the Defendant took to comply with the contract entered into between the prior owner of the buildings and the Plaintiff.

Once again, this is not the first time that Plaintiff has litigated and lost with such arguments, which were made in *Loon*. The facts of *Loon, supra,* were extremely similar to the case at hand:  Plaintiff sued the Defendant, an owner of an apartment building in Wisconsin, for breach of contract, damage to personal property, and conversion. As in the instant case, the Defendant in *Loon* was not the party that had originally signed the contract in question, but was the successor in interest to the contract. In its finding for the defendant, the court found that there was no basis in case law to support an argument that the first owner's acts submitting it to jurisdiction "ran with the land." *Loon*, 375 Ill. App.3d at 31. Furthermore, the labels that the Plaintiff had affixed, as it has in the instant case, to announce its maintenance of its washing machines were not relevant to the issue of jurisdiction because "[o]nly the acts of defendant can be considered in determining whether business was transacted in Illinois." *Id.* at 34. Once again, Plaintiff is collaterally stopped from making these minimum contact arguments.

Finally, the Court in *Loon* held that because the Defendant had not actively participated in the making of the contract entered into between the Plaintiff and the predecessor owner of the building, but had merely passively accepted the contract by accepting rent payments, the Defendant had not established minimum contacts significant enough to confer jurisdiction. *Id.* at 33. The court found that none of the Defendant's alleged acts of entering into a contract with an Illinois resident via its purchase of property, nor the mailing of rent payments, nor the leasing of Illinois equipment, was sufficient to confer jurisdiction. *Id.* In the present case, other than the above facts, the Plaintiff only alleges that the 43 letters of correspondence exchanged between the parties gives rise to jurisdiction. However, telephone calls and correspondence through the mail is insufficient to support a finding that business was transacted in the forum state to support a finding of personal jurisdiction. *Konicki v. Wirta,* 169 Ill. App.3d 21, 27, 523 N.E.2d 160, 119 Ill. Dec. 692, (1988); *Gordon v. Tow,* 148 Ill. App.3d 275, 281, 498 N.E.2d 718, Ill. Dec. 394 (1986).

### D. **The Choice of Law and Forum Selection Provisions in the Original Contract Are not Dispositive Regarding Personal Jurisdiction**

In its response, the Plaintiff relies heavily on choice of law and forum selection provisions in the contract at issue to and alleges that they are in themselves sufficient to confer jurisdiction over the Defendant. The Plaintiff cited two U.S. Supreme Court cases, *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S. Ct. 1907 (1971) and *Carnival Cruise Lines, Inc. v. Eulala Shute,* 499 U.S. 585, 111 S.Ct. 1522 (1991) in support of this argument. These two cases do not present the last word, however, on the subject of forum selection clauses. For example, *Bremen* and its "progeny" apply only to motions to dismiss for improper venue, not to issues of personal jurisdiction. *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.,*

685 A.2d 724, 733 (Del. Supr. 1996).  The *Carnival* case was also later overruled by Congress in the passenger context in its holding on forum selection clauses.  *46 U.S.C. App. § 183(c).*  In *Calanca v. D & S Mfg. Co.,* 157 Ill. App.3d 85, 510 N.E.2d 21, 23, 109 Ill. Dec. 400 (Ill. App. 1987), in discussing the *Bremen* decision, the court stated that forum selection clauses in a contract may not be enforced if the opposing party can show that enforcement would be unreasonable under the circumstances.  In IFC *Credit Corporation v. Aliano Brothers General Contractors, Inc.,* 437 F.3d 606, 613 (7th Cir. 2006), the court found that a forum selection clause may be disregarded if there is inconvenience to a third party or to the justice system itself.  Illinois law also is more lenient on this subject in cases where there is an inequality of the parties in terms of business sophistication, especially in smaller transactions where the less sophisticated party would not be as careful in reading boilerplate provisions.  *IFC Credit Corporation,* 437 F.3d at 611; *see also Mellon First United Leasing v. Hansen,* 301 Ill. App. 3d 1041, 1045, 705 N.E.2d 121, 235 Ill. Dec. 508 (1998)).

In *Stewart Organization, Inc. et al. v. Ricoh Corp. et al.,* 487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988), the Supreme Court held that the first question to consider a request to transfer venue in a diversity action is not whether there is a forum selection clause, but whether section 1404(a) (which allows the transfer of civil actions to other districts where it may have been brought for the convenience of parties and witnesses) itself controls a request to give effect to a contractual choice of venue.  *Id.* at 28.  Furthermore, the *Bremen* case was deemed only to be "instructive" in resolving venue disputes.  *Id.*  Later, the court stated that a forum-selection clause was just one of a number of case-specific factors of consideration, albeit a significant one.  *Id.* at 29.  The highest priority is the "interest of justice." *Id.* at 31.  "The forum selection clause,

which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration. . . but rather the consideration for which Congress provided in §1404(a)." *Id.* The bottom line is that while forum selection clauses are important, they remain as only one of several relevant factors of consideration in a motion to dismiss.

The Illinois state court in *Loon* did not find the mere fact of a choice of law provision designating Illinois as the choice of law to be sufficient to confer jurisdiction. "Although a relevant consideration, a choice-of-law clause 'by itself' does not confer personal jurisdiction." *Id.* (citing *Bolger v. Nautica International, Inc.,* 369 Ill. App.3d 947, 952, 861 N.E. 2d 666, 308 Ill. Dec. 335 (2007)(quoting *Morecambe Maritime, Inc. v. National Bank of Greece, S.A.,* 354 Ill. App.3d 707, 713, 821 N.E. 2d 780, 290 Ill. Dec. 468 (2004)). Rather, a choice of law clause is "merely 'one more arrow in [plaintiff's] quiver." *Id.* (citing *AM International Leasing Corp. v. National Council of Negro Women, Inc.,* 627 F. Supp. 1302, 1307 (N.D. Ill. 1986)). While the court in *Loon* did state that the case for jurisdiction would have been stronger if the subject contract had included a forum selection clause (as the subject contract in this case does), it did not give nearly the weight to such a clause that the Plaintiff does in its argument, but instead referred to another case in which the court gave little effect to a forum selection clause contained in "boilerplate" language. *Id.* (citing to *Mellon, supra*).

Like the Defendant in *Loon*, the Defendant herein did nothing to actively enter into a contract with the Plaintiff. It did not dictate the contract, or negotiate the contract, or inspect equipment, as was discussed in *Loon* as examples of actively participating in the contract. *Id.* Rather, the Defendant merely passively accepted the contract that it inherited. In the final

analysis, because it is so similar to the case at hand, and involves the same plaintiff, the *Loon* case provides a perfect example of how a state court would view the facts of the instant case: on nearly identical facts, the court did not find jurisdiction. "A federal district court sitting in Illinois has personal jurisdiction over a nonresident party only if an Illinois state court would have jurisdiction." *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir. 1997).

**(1) THE NORTHERN DISTRICT OF ILLINOIS IS NOT THE PROPER VENUE FOR THIS ACTION**

28 U.S.C. §1391(a), which governs venue, provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the situation is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Plaintiff states that venue is proper under 28 U.S.C. §1391(a)(2) because it contends that a substantial part of the events giving rise to the claim occurred in Illinois. It cites to *Schwarz v. National Van Lines, Inc.*, 317 F. Supp.2d 829, 834 (N.D. Ill. 2004) to state that a plaintiff doesn't need to show that a majority of events giving rise to the claim took place in a district for venue to be proper, as long as a substantial part of the events took place there. (It ignores the fact that the statute itself in section two states that venue is proper in the district where property is located.) The only "event" that the Plaintiff uses that occurred in Illinois to give rise to this claim, however, was the communications between the parties that took place in Illinois regarding their disputes. These communications in themselves should not be considered to be "substantial." In

sum, the Plaintiff asks this court to choose tenuous connections to Illinois over more significant ones to Indiana in designating the proper forum for this action.

In *Schwarz,* a parallel case between the parties had been filed in Arizona, and the Plaintiff had requested transfer of venue to Illinois on the basis of her phone calls to Illinois. *Schwarz* as a whole better suits the position of the Defendant. According to *Schwarz,* "[t]he test for venue. . . . focuses on the location of the events giving rise to the cause of action." *Id. (*citing *Master Tech Prods., Inc. v. Smith,* 181 F. Supp. 2d 910, 913 (N.D. Ill. 2002). In *Schwarz*, the court found that while venue was proper in both Illinois and Arizona, the more significant acts in the historical predicate of the case giving rise to the claim (e.g. entering into the contract, picking up the plaintiff's belongings) occurred in Arizona. While the court stated that telephone calls and correspondence could be used to support venue, the court found the telephone calls made to Illinois to be less significant in determining proper venue. *Id.* at 834.

The Plaintiff also contends that venue is proper under section (a)(3) because this Court has personal jurisdiction over the Defendant. Based upon its foregoing analysis of personal jurisdiction, the Defendant asserts that this proposition is incorrect.

**(2)     IF THIS CLAIM IS NOT DISMISSED, VENUE SHOULD BE TRANSFERRED TO THE  SOUTHERN DISTRICT OF INDIANA**

According to 28 U.S.C. §1404(a), transfer of venue is appropriate when "the moving party demonstrates that (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice.

The court in *Schwarz* discussed five factors used to determine whether transfer of venue "will serve the convenience of the parties, the convenience of the witnesses, and the interests of

justice." 28 U.S.C. 1404(a)(3).  These factors are:  "(1) the plaintiff's choice of forum; (2) the location of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties, and (5) the convenience of the witnesses." *Id.* at 835.

The first thing the court noted was that "transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for another party." *Id.*  Second, while a plaintiff's choice of forum is entitled to substantial weight under section 1404(a), this is less true when it is not the location of the material events giving rise to the claim.  *Tingstol Co. v. Rainbow Sales, Inc.,* 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998).  As far as the second factor of the test is concerned, the location of the material events, nearly all of the significant acts complained of by the Plaintiff giving rise to the claim (e.g. mold and water leakages in the laundry room, vandalism of machines) occurred in Indiana, while the only thing the Plaintiff can cite to as occurring in the state of Illinois would be its own efforts to communicate with the Defendant.  Concerning the relative ease of the sources of proof, the laundry machines, it would be easier to access them in Indiana than Illinois.

The Plaintiff argues that it is no more inconvenient for the Defendant to come to Illinois than it is for it to come to Indiana, but this is not true.  He has established patterns for physical accommodations for himself in Indiana, he is familiar with the area, and he has many resources and relationships there with the people who would act as potential witnesses in his case – the residents of his buildings, employees and vendors.  The Defendant has already established by affidavit that he has never been to Illinois to transact business, and he has no comparable experience, knowledge or resource base from which to draw in Illinois.

According to *Schwarz,* the most important factor in the convenience test is the convenience of witnesses. *Id.* at 836. "To determine the convenience to the witnesses, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case. The court looks at the persons who will be required to take time away from their respective home bases and activities to deal with trial preparation and trial." *Id.* As the Plaintiff pointed out in its response, it selected Cook County as its forum choice because it is more convenient for itself. However, not many of its actual employees would be considered relevant witnesses in this case. The Plaintiff's employees with the most relevant knowledge of the issues in the Defendant's laundry facilities would be those "field representatives" referenced in its Response exhibits who travel to Indiana regularly in the course of their duties to inspect and collect from its washing machines in Indiana. In contrast, the Defendant does not have a single witness located within the state of Illinois, and it would not be able to subpoena witnesses in Indiana to testify on its behalf, while the Plaintiff can easily direct its employees to testify.

According to *Schwarz,* common factors considered to make an "interest of justice" analysis are determining where the litigants are most likely to receive a speedy trial, and having judges familiar with the applicable law to try the case. *Id.* at 837. The court in *Schwarz* cited to the Federal Court Management Statistics to show that the parties would have a speedier trial in Illinois, but the Plaintiff has not shown any such facts. While it is true that Illinois courts would have more familiarity with Illinois law, on balance, there is more to favor venue in Indiana.

## CONCLUSION

Since there is no personal jurisdiction over the Defendant, the Northern District of Illinois is not the proper venue for this action, and venue should be transferred to the Southern District of Indiana.

                                            Respectfully Submitted,

                                            _____

                                            s/ Dayna Wheatley

Dayna Wheatley, LLC  
201 W. Washington St.  
West Chicago, IL  60185  
Telephone:  630-639-5203  
Fax:  630-639-5207  
Attorney Number:  6281156