**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| COMMERCIAL COIN LAUNDRY SYSTEMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 08-CV-1853 |
| | ) | |
| PARK P, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Park P, LLC's motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer venue [6]. For the following reasons, the Court respectfully denies the motion [6] in its entirety.

**I.      Background[1]**

Plaintiff Commercial Coin Laundry Systems is an Illinois general partnership engaged in the business of installing and maintaining commercial laundry equipment in multiple-unit apartment buildings. Although Commercial Coin is headquartered in Illinois, it does business throughout the Midwest. Its collectors and maintenance personnel work substantially away from its Chicago offices. The majority of Commercial Coin's administrators, clerical staff, and sales representatives work at its Chicago offices.

On February 24, 2000, Commercial Coin, as lessee, entered into a lease agreement and rider with Cliff LeCleir, as agent for Home Apartment Development, for the purpose of

---

[1] The background facts of this case are drawn from the complaint and the affidavits and other materials submitted in support of and in opposition to Defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. See *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).

1

installing and maintaining laundry equipment on the premises of a 254-unit apartment rental property at 1901 S. Park, Kokomo, Indiana.[2] The lease provided for an initial term of ten years, commencing on March 6, 2000. On April 10, 2000, Commercial Coin recorded a Lease Memorandum against the property. Paragraph 4 of the lease states that it is binding upon the lessor and all future owners of the property. Paragraph 4 further provides: "Lessor further warrants that * * * this Agreement shall be governed by the laws of the State of Illinois, with the courts of Cook County having sole and exclusive jurisdiction."

Defendant Park P, LLC is an Indiana Limited Liability Company and the current owner of the apartment complex located at 1901 S. Park Road in Kokomo.[3] On April 28, 2005, Defendant purchased the property on Park Road ("the property") from the prior owner. According to Plaintiff, Defendant's purchase of the property triggered the termination of the rider pursuant to Paragraph 7 of the lease agreement, which states in pertinent part:

> Lessor * * * further acknowledges that any rider, addendum, or codicil to Lease shall terminate upon change of ownership or change of managing agent or change of management company or sale of property or transfer or assignment of this Lease * * * *

On May 2, 2005, Defendant notified Plaintiff that it intended to close one of the laundry rooms due to mold and wanted Plaintiff to remove the laundry machines. On May 4, 2005, Plaintiff sent Defendant the following letter:

> We have been told that you are the new owner or agent for the owner of [1901 S. Park Road in Kokomo, Indiana]. For the protection of our Lessors, we do not change our records or pay rent to new owners or agents unless we receive written confirmation of the change in ownership or management. Enclosed for this purpose are our standard New Lessor/Agent Verification and Tax Identification

---

[2] The property has two laundry rooms.

[3] Gabriel Naranjo, the owner of Park P, resides in New Jersey.

forms. Please take a moment to complete, sign, and return these forms to our office, so that we can direct all future rent payments to you.

Gabriel Naranjo filled out the attached "New Lessor/Agent Verification" and tax forms and returned both to Commercial Coin.

On June 1, 2005, Plaintiff sent Defendant a copy of the lease and stated that the "lease runs with the land and is binding upon all future owners of the property, regardless of whatever the previous owner may have informed you." On June 9, Gabriel Naranjo sent Plaintiff a letter complaining about the condition of the laundry rooms, especially the condition of the smaller laundry room. Specifically, Naranjo wrote,

> *It is our intention to honor the agreement that you made with the previous owner until the end of your contract.* However, our impression is that the previous owner * * * ignore[ed] safety, liability, well-being, renovations, contractors, workers and residents. Our style of management is totally different and our primary concerns are liability, safety and security. We truly believe that the small laundry is nothing but a hazard.

[11-7 at 2 (emphasis added).]

For approximately two years after Defendant purchased the property, Plaintiff and Defendant exchanged at least forty-three letters regarding the laundry facilities. The substance of the correspondence was as follows: (1) Plaintiff ordering Defendant to make improvements to the property and comply with the terms of the lease; (2) Defendant requesting rent payments and maintenance from Plaintiff pursuant to the terms of the lease and rider; and (3) Plaintiff refusing to make any rent payments to Defendant, citing Paragraph 3 of the lease agreement, which states that rent need not be paid when the income from the washers and dryers has not exceeded the minimum compensation requirement. Plaintiff never made any rent payments to Defendant, and Defendant never executed a new lease with Plaintiff. Additionally, on August 17, 2005, Mr.

3

Naranjo sent a letter to Commercial Coin stating that he had "passed [the] case on to our legal department" [11-8 at 48] and then on January 23, 2006, requested that Commercial Coin direct all correspondence to Park P's legal advisor [11-8 at 56]. Finally, on July 5, 2007, Naranjo sent Commercial Coin a fax which stated, "During 25 years in the apartment management business, we have never had washers and dryers operated by us. We have never had issues that could not be resolved amicably with any laundry company." [11-8 at 62.]

On February 26, 2008, Plaintiff filed suit against Defendant for breach of contract in Cook County Circuit Court in Chicago, Illinois. That same day, Defendant filed suit against Plaintiff to quiet title and for declaratory judgment in Howard Superior Court in Howard County, Indiana. On March 31, 2008, Defendant removed the Illinois action to this Court. On April 30, 2008, Defendant filed another suit against Plaintiff in the United States District Court for the Southern District of Indiana.

## II. Analysis

### A. Jurisdiction Generally

When personal jurisdiction over a defendant is challenged by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists and must make a *prima facie* case of jurisdiction. See *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). When a court decides a motion on the basis of paper submissions, a court accepts as true the plaintiff's undisputed allegations, and disputes in the evidence are resolved in favor of jurisdiction. See, *e.g.*, *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). However, the Seventh Circuit has cautioned that "once the defendant has submitted affidavits or other evidence in opposition to the exercise

of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id*. at 783.

When a court's subject matter jurisdiction is based on diversity of citizenship – as in this matter – the court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. See *Hyatt Int'l*, 302 F.3d at 713. Accordingly, the district court looks to the Illinois long-arm statute, which contains a "catch-all" provision allowing Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. See 735 ILCS 5/2-209(c); see also *Hyatt Int'l*, 302 F.3d at 714. Although the United States and Illinois Constitutions do not contain identical due process guarantees, the Seventh Circuit has opined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l*, 302 F.3d at 715. Given this direction, the Court moves directly to the federal constitutional inquiry – whether exercising personal jurisdiction over Defendant Park P, LLC comports with federal due process protections. *Id.* at 714-15.

Under the Due Process Clause, before an out-of-state defendant may be required to defend a case in the forum state, it must have "minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful availment" standard ensures that a nonresident defendant will not be forced to

litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

There are two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984); see also *Hyatt Int'l*, 302 F.3d at 713. General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416; *Hyatt Int'l*, 302 F.3d at 713. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l*, 302 F.3d at 713. On the other hand, specific jurisdiction is more limited and exists for controversies that "arise out of" or "relate to" a defendant's forum contacts. *Id*. Plaintiff has not argued that the Court has general jurisdiction over Defendant, and therefore the Court moves directly to the specific jurisdiction inquiry.

A court may assert specific jurisdiction over an out-of-state defendant when the minimum contacts standard is met and the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state. *E.g., Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 (1984). The defendant's contacts with the forum state must be of a nature and quality such that the defendant has fair warning that it could be required to defend a suit there. *Burger King Corp. v. Rudziewicz,* 471 U.S. 462 (1985). This ensures that jurisdiction over a defendant is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue" and that "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue Research Found.,*

6

338 F.3d at 780. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id*.

      **B.**      **Forum Selection Clauses**

"[F]ederal courts are friendly to the use of forum selection clauses to determine which federal district court shall host a case." *IFC Credit Corp. v. Aliano Bros. General Contractors, Inc.*, 437 F.3d 606, 608 (7th Cir. 2006). The Seventh Circuit's approach "is to treat a forum selection clause basically like any other contractual provision and hence to enforce it unless it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract." *Id*. (quoting *Northwestern National Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990)); see also *Calanca v. D & S Mfg. Co.*, 157 Ill. App. 3d 85 (1987) ("A forum selection clause in a contract is prima facie valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances").

"At the black-letter level, Illinois law concerning the validity of forum selection clauses is materially the same as federal law." *IFC Credit Corp.*, 437 F.3d at 611; see also *Calanca*, 157 Ill. App. 3d at 87-88 (1st Dist. 1987). However, in practice, "the Illinois law on validity is more lenient toward the defendant than the federal law when there is a significant inequality of size or commercial sophistication between the parties, especially if the transaction is so small that the unsophisticated party might not be expected to be careful about reading boilerplate provisions that would come into play only in the event of a lawsuit, normally a remote possibility." *IFC Credit Corp.*, 437 F.3d at 611. "Illinois courts have not accepted the federal law trend of enforcing forum selection clauses in contracts involving unsophisticated consumers in small transactions in the marketplace without any real opportunity to consider the acceptance of a

7

forum selection clause." *Compass Environmental, Inc. v. Polu Kai Services*, LLC, 379 Ill. App. 3d 549, 557 (1st Dist. 2008) (internal citations omitted); see also *Mellon First United Leasing v. Hansen*, 301 Ill. App. 3d 1041, 1046 (2nd Dist. 1998) (finding forum selection clause unenforceable where "it [did] not appear that the clause was reached through arm's-length negotiation between experienced business persons of the same stature" and the claim at stake was "small").

### C.  Present Case

The facts in *Commercial Coin Laundry Systems v. Loon Investments, LLC*, 375 Ill. App. 3d 26 (2007), mirror the facts in this case in many respects, but with a few noteworthy variations. In *Commercial Coin*, Commercial Coin (Plaintiff here) entered into a contract with the owner of an apartment building to lease the laundry areas of a building located in Wisconsin. Years later, the defendant, a Wisconsin limited-liability company, acquired the building, and Commercial Coin filed a breach of contract action. On appeal, the Illinois Appellate Court found that the defendant did not have the requisite minimum contacts with the state. *Id*. at 34. Although the court found that the defendant had assumed the contract between Commercial Coin and the original building owner, the court found that the defendant had passively accepted the terms of the assumed contract instead of taking an "active role such as dictating or vigorously negotiating the contract terms or inspecting equipment in facilities in Illinois." *Id*. at 33. The court further stated that the defendant's "passive act" of "assum[ing] the contract through its acquisition of the building * * * alone [was] insufficient to confer jurisdiction." *Id*. The court further held that simply receiving rent payments from Illinois was not enough to confer jurisdiction on Illinois. *Id*. And although the defendant also possessed and controlled Illinois

machines, the court had previously held that possession and control by a nonresident of Illinois equipment for use in a foreign jurisdiction does not confer jurisdiction in Illinois. *Id.* Finally, the court found that although the Illinois choice-of-law clause in the assumed contract was a "relevant consideration" that "weigh[ed] in favor of finding jurisdiction," it concluded that a choice-of-law clause by itself does not confer personal jurisdiction. *Id.* at 33-34.

Significantly, the Appellate Court stressed that the contract at issue only included a choice-of-law clause, "*not a stronger and enforceable forum-selection clause*." *Id.* at 34 (emphasis added). Here, by contrast, the contract at issue does contain both choice-of-law *and* forum selection clauses. If the instant lawsuit were between Plaintiff and Home Apartment Development, then the forum selection clause plainly would be prima facie valid under both Illinois and Seventh Circuit law, and the defendant would be presumed to have waived jurisdiction. See *IFC Credit Corp.*, 437 F.3d at 610 ("[S]ince a defendant is deemed to waive * * * objections to personal jurisdiction or venue simply by not making them in a timely fashion, a potential defendant can waive such objections in advance of suit by signing a forum selection clause."); *ETA Trust v. Recht*, 214 Ill. App. 3d 827, 834 (1st Dist. 1991) ("A forum selection clause in a given agreement has been held sufficient to constitute consent to personal jurisdiction in a foreign state. We find defendant cannot invoke the minimum contact protection of *International Shoe* because he consented by contract agreement to Massachusetts as the forum state.").

The issue here is complicated, however, by the fact that Defendant Park P, LLC was not a party to the original lease and did not have the opportunity to negotiate the terms, including the forum selection clause. Furthermore, Defendant and Commercial Coin never entered into a new

9

lease with a forum selection clause. In resolving whether the forum selection clause nevertheless supports personal jurisdiction over Defendant in an Illinois court, the Court notes as an initial matter its agreement with the Illinois Appellate Court that the actions of the prior lessor alone (*i.e.*, a "derivative jurisdiction" theory) will not suffice to support personal jurisdiction in this case. See *Commercial Coin*, 375 Ill. App. 3d at 32. The Court further agrees with the Illinois court that the "passive act" of merely assuming a contract through the acquisition of a building "alone is insufficient to confer jurisdiction." *Id.* at 33.[4] The Court therefore must consider whether the combination of (i) Naranjo's written statement on June 9, 2005, notifying Plaintiff of Defendant's "intention to honor the agreement that [Plaintiff] made with the previous owner until the end of [the] contract," (ii) the additional correspondence of the parties, (iii) Defendant's conduct, and (iv) any other pertinent factors, including the sophistication of the parties and the amount in controversy, support enforcement of the forum selection clause and the assertion of personal jurisdiction over Defendant in this Court.

Obviously, the statement on June 9 demonstrates that Defendant at least was aware of the prior agreement when it purchased the property and initially intended to be bound by it. On the other hand, subsequent statements by Defendant cloud the picture. Defendant repeatedly complained about the contract, calling it a "peculiar contract" that gives Defendant no rights [11-8], asserting on August 17, 2005, that it is "not bound to the terms of the lease created prior to

---

[4] The Court also rejects Plaintiff's arguments for jurisdiction on the basis of signs in the laundry areas directing consumers to call Plaintiff in case of problems with the laundry machines. While the signs establish that Plaintiff expected to have an on-site relationship with the Indiana property, Plaintiff's maintenance activities in Indiana cannot be used to establish personal jurisdiction in Illinois over Defendant. See also *Commercial Coin*, 375 Ill. App. 3d at 34; *Gordon v. Tow*, 148 Ill. App. 3d 275, 280 (1986) ("In assessing a non-resident's contacts with this State, only the acts of defendant can be considered in determining whether business was transacted in Illinois") (internal citations omitted). Rather, "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Purdue Research Found.,* 338 F.3d at 780.

the purchase of Park Place" [11-8], and later still, on January 23, 2006, referring to the contract as "draconian" and "illegal" [11-8]. Also problematic is the fact that, in contrast to the defendant in *Commercial Coin*, Defendant here never has received any rent payments from Plaintiff.

However, in addition to Defendant's statement that it intended to "honor" the agreement between Plaintiff and the previous owner, Defendant's actions also evince a desire to uphold the agreement. For instance, Defendant filled out, signed, and returned the forms that were sent to it as Commercial Coin's "landlord." Defendant also continuously requested rent payments from Plaintiff. Defendant's tenants used the laundry services provided by Commercial Coin. Defendant also furnished, at its own expense, all of the utilities required for the operation of the laundry equipment in one of the two laundry rooms on the property, per the terms of the agreement. And there is no evidence in the record before the Court that Defendant ever insisted that Plaintiff negotiate or sign a new agreement.[5]

Here, Defendant is not an individual consumer (like the plaintiff in *Carnival* or the solo accountant defendant in *Mellon*). Rather, by its own admission, Defendant is a corporation with "25 years in the apartment management business." While Defendant may not be as seasoned as Plaintiff, it is reasonable to infer that Defendant has considerable experience with contracts in general and, more specifically, with contracts pertaining to laundry services in its buildings. As summarized by the court in *Compass Environmental*, "the fact that [the party opposing the

---

[5] In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), the Supreme Court found that a forum selection clause printed on the reverse side of a cruise ticket was valid and enforceable in a personal injury action against a cruise line. The Court held that Shute had not met the "heavy burden" required to set aside such a provision. The Court also found that the cruise line had a legitimate interest in selecting Florida as its forum of choice, because it dealt with passengers from all over the country and its principal place of business was in Florida. The Court came to that conclusion despite the fact that Shute did not have an opportunity to negotiate the forum selection clause, stating that Shute could have rejected the

clause] did not object to or attempt to negotiate the clause is no reason to invalidate it. They were business entities as opposed to ordinary consumers, and this court is not persuaded that they were in need of protection when contracting for business services." 379 Ill. App. 3d at 556 (citing *IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill. App. 3d 77, 87 (1st Dist. 2007)).

To be sure, Defendant's contacts with Illinois are minimal. Aside from the correspondence between Plaintiff and Defendant, the only other viable contact is the contract for laundry services, to which Defendant was not even an original party. However, as pointed out above, both the Seventh Circuit and Illinois courts typically enforce forum selection clauses, and find jurisdictional challenges to have been waived, unless the opposing party shows that enforcement would be unreasonable given the circumstances. See *IFC Credit Corp.*, 437 F.3d at 610; *ETA Trust v. Recht*, 214 Ill. App. 3d 827, 834 (1st Dist. 1991). While this Court has rejected Plaintiff's suggestion that that the prior owner's actions alone could confer jurisdiction on the theory that jurisdiction "runs with the land," Defendant's own words and conduct show that enforcement would not be "unreasonable" in the circumstances present here. In particular, Defendant made statements and took actions with respect to the lease agreement that evinced an affirmative intention to honor it, rather than merely passively accepting it or disclaiming it. And although Defendant subsequently complained about the contract as well – thus perhaps calling into question its initial statement of intent to honor the contract – at this early stage of the case, all disputes in the affidavits and supporting materials must be resolved in favor of finding jurisdiction. See *Purdue Research Found.*, 338 F.3d at 783. In addition, the record before the Court at this time is devoid of any complaints by Defendant directed specifically at the forum selection clause.

---

ticket outright if she objected to the forum selection clause.

Another factor pointing in the same direction is the amount at stake in this litigation. In *Compass Environmental*, the court upheld a forum selection clause where the plaintiff alleged damages ranging from $168,000 to $184,800 for breach of contract. 379 Ill. App. 3d at 557. In so doing, the court noted that the amount at issue made the case distinguishable from *Mellon*, where a forum selection clause was not enforced in a case involving a "small claim" of $4,000. *Id*. Here, in its removal petition, Defendant contended that the amount in controversy for federal diversity jurisdiction was satisfied because Plaintiff cited losses of up to $274,446.02. That amount not only easily satisfies the requirements for removal, but also substantially exceeds the amount at issue in *Compass Environmental*. In short, this case does not involve a "small transaction" with so little at stake that a forum selection clause would be disregarded under Illinois law. See *IFC Credit Corp.*, 437 F.3d at 611; *Compass Environmental*, 379 Ill. App. 3d at 557.

On balance, accepting as true Plaintiff's undisputed allegations and resolving disputes in the evidence in the limited record before the Court at this time in favor of jurisdiction (see, *e.g.*, *Purdue Research Foundation,* 338 F.3d at 782), the Court concludes that the forum selection clause tips the scales in favor of jurisdiction. In particular, (i) the extensive correspondence between the parties, (ii) Defendant's assertion in that correspondence that it intended to honor the laundry services agreement "that was made with the previous owner until the end of [the] contract," (iii) Defendant's subsequent actions (specifically, allowing tenants to use the laundry services provided by Commercial Coin, furnishing the utilities required for the operation of laundry equipment per the terms of the agreement, and demanding payments allegedly due under the agreement), (iv) Defendant's status as a corporation with a "legal advisor" and twenty-five

years of experience in managing apartments, and (v) the substantial amount at stake under the contract and in this litigation all convince the Court that the factors that have led some Illinois courts not to enforce forum selection clauses are not present here. And because the clause is enforceable, the Court finds that Defendant has waived its challenge to this Court's jurisdiction. See *IFC Credit Corp.*, 437 F.3d at 610; *ETA Trust v. Recht*, 214 Ill. App. 3d 827, 834 (1st Dist. 1991).

### D. Motion to Transfer Venue

Alternatively, Defendant has moved to transfer venue to the Southern District of Indiana. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." District courts have substantial discretion in determining venue, "which is an inquiry focused on fairness and convenience of the parties as opposed to constitutional considerations." *Beveridge v. Mid-West Management, Inc.*, 78 F. Supp. 2d 739, 746 (N.D. Ill. 1999). Transfer under section 1404(a) is appropriate where the moving party demonstrates that (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir. 1986). The movant "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Id.* Motions to transfer are analyzed on a case-by-case, fact-intensive basis, and the weight given to each factor is committed to the sound discretion of the district court. *Id.*

When a forum selection clause is found to be valid, there is a strong presumption against transfer. See *IFC Credit Corp.*, 437 F.3d at 613. The presumption can be overcome "only if there is inconvenience to some third party * * * or to the judicial system itself, as distinct from inconvenience to the party seeking transfer." *Id*. While a party waives any objection based on inconvenience to it by agreeing to a forum selection clause, "it [cannot] waive rights of third parties, or the interest of the federal judiciary in the orderly allocation of judicial business, which is why a transfer motion can be granted even if there is a valid forum selection clause." *Id*.; see also *Heller Financial, Inc. v. Midwhey Powder, Co., Inc*., 883 F.2d 1286, 1293-94 (7th Cir. 1989). Thus, in determining whether transfer is appropriate in this case, the Court "must also weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Organization, Inc. v. Ricoh Corp*., 487 U.S. 22, 31 (1988). "The forum-selection clause, which represents the parties agreement as to the most proper forum, should receive neither dispositive consideration [as Plaintiff might have it] nor no consideration [as Defendant might have it], but rather the consideration for which Congress provided in § 1404(a)." *Id*.

Defendant has the burden of showing that the transferee forum is "clearly more convenient." *Coffey*, 796 F.2d at 219-20. Defendant argues at length that the significant acts giving rise to the claim occurred in Indiana and that defending a lawsuit in Illinois would be highly inconvenient. However, as the Court already has pointed out, once a court determines that a valid forum selection clause exists – as it has done in this case – it only can consider the

15

inconvenience to third parties or to the judicial system itself, alongside other public-interest factors, in assessing the merits of the transfer motion.

The convenience of witnesses often is viewed as the most important factor in the transfer of venue balance. *Schwarz*, 317 F. Supp. 2d at 836. In assessing inconvenience to potential witnesses, a court should look beyond the number of witnesses to be called and instead examine the nature and quality of the witnesses' anticipated testimony with respect to the issues of the case. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1168 (N.D. Ill. 1995). More attention should be given to the location of non-party witnesses and witnesses not within the control of the parties because they cannot be made to testify in person if they reside outside the subpoena power of the Court. See *Childress v. Ford Motor Co.*, 2003 WL 23518380, at *4 (N.D. Ill. Dec. 17, 2003); Fed. R. Civ. P. 45(b)(2) (" * * * a subpoena may be served at any place within the district of the issuing court [or] outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production or inspection * * *."). Although live witness testimony is generally thought to be "superior to either printed or taped depositions," it may be possible to secure the testimony of unavailable witnesses through deposition. *Household Fin. Servs., Inc. v. Prestige Fin. Servs. Corp.*, 1999 WL 608705, at *2 n.8 (N.D. Ill. Aug. 6, 1999). Finally, "the party seeking the transfer must clearly specify key witnesses to be called and make a general statement of their testimony." *Vandeveld*, 877 F. Supp. at 1168.

Potential witnesses in this case include representatives of both Plaintiff and Defendant, residents and employees of the apartment complex, and Plaintiff's employees (both administrative and "field representatives"). The parties reside in different states (Plaintiff in Illinois and Defendant in Indiana and New Jersey), so some anticipated witnesses will be forced

to travel regardless of the venue ultimately chosen. Because the apartment complex and laundry equipment are located in Indiana, many (if not most or nearly all) of Defendant's witnesses likely reside in Indiana. However, the Court only has vague generalizations from Defendant as to what witnesses it intends to call. Defendant has neither identified its key witnesses nor provided a statement of their anticipated testimony. Although it is early in the litigation, it is Defendant's burden to identify the key witnesses and the subjects of their anticipated testimony in support of a motion to transfer. See *Vandeveld*, 877 F. Supp. at 1168; see also *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293-94 (7th Cir. 1989) (denying motion to transfer where defendant "supplied nothing in the way of affidavits, depositions, stipulations, and any other types of document containing facts tending to establish who (specifically) it planned to call or the materiality of that testimony").

The "interest of justice" analysis focuses on the efficient administration of the judicial system, rather than on the private considerations of the litigants. See *Coffey*, 796 F.2d at 220-21. Pertinent considerations include "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller*, 883 F.2d at 1293. The lease agreement at issue states that it shall be governed by the laws of the State of Illinois. As a federal court sitting in the State of Illinois, this Court frequently is called upon to decide issues of Illinois law – and certainly more often that a federal court sitting in another state. In terms of "trying related litigation" together, on April 30, 2008, Defendant filed suit in the Southern District of Indiana; however, as of the second week in November 2008, Commercial Coin had not even been served in that case, and the Indiana court had issued an order to show cause why Park P had not yet effected service. Finally, as for "ensuring" a speedy trial, neither

17

side has cited to statistics comparing the pace at which cases are disposed of, or go to trial, in the two districts in question. This Court shares Judge Kennelly's recent thoughts on that topic: "General statistics of this sort are, in the Court's view, relatively meaningless, because they are averages for cases of all types and tell the reader nothing about cases of the particular type at issue. The Court does not regard this as tilting the balance one way or the other." *Bullard v. Burlington Northern Santa Fe Ry. Co.*, 2008 WL 4104355, at *7 (N.D. Ill. Aug. 29, 2008).

Given this Court's familiarity with the applicable law of Illinois and its expectation that it can provide a disposition of this case in a timely manner, the public interest appears to favor keeping the lawsuit in the Northern District of Illinois. At the very least, the considerations supporting a transfer are not so persuasive as to demonstrate that transfer would be "clearly more convenient." *Coffey*, 796 F.2d at 293. Additionally, Defendant has failed to provide evidence that enforcing the forum selection clause would significantly impact third party witnesses or inflict an undue burden on the system of justice itself. For all of those reasons, the Court declines to transfer this case to the Southern District of Indiana.

### III. Conclusion

For the reasons stated above, the Court denies Defendant Park P, LLC's motion to dismiss for lack of personal jurisdiction or, alternatively, motion to transfer venue [DE 6].

Dated: November 21, 2008

_____
Robert M. Dow, Jr.
United States District Judge